[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15548
_____

D.C. Docket No. 2:09-cv-01732-KOB

SANDRA SLATER,

Plaintiff - Appellant,

versus

U. S. STEEL CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 24, 2016)

Before TJOFLAT and WILLIAM PRYOR, Circuit Judges, and SCOLA,[*] District
Judge.

_____

*Honorable Robert N. Scola, Jr., United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

The equitable doctrine of judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, "precludes a party from asserting a . . . position that contradicts or is inconsistent with a prior position taken by the same party." 18 James Wm. Moore et al., Moore's Federal Practice ¶ 131.13[6][a] (3d ed. 2015). The doctrine differs from the doctrines of issue and claim preclusion in that the policy animating it "is not [primarily] concerned with preserving the finality of judgments" but is concerned, instead, with "the orderly administration of justice and regard for the dignity of court proceedings." *Id.* ¶ 131.13[6][c]. The doctrine may be invoked by a third party: that is, someone who was not a party in the adversary's prior proceeding and therefore would suffer no prejudice were the adversary permitted to go forward with the inconsistent position. *Id.* ¶ 134.33[1].[1]

This is so in our circuit. We do not require that the party invoking the doctrine have been a party in the prior proceeding. "The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, . . . [w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) (alteration in original) (quotation marks omitted) (quoting

---

[1] "The majority rule is that a party is not required to have been a party to the prior proceeding to be able to invoke judicial estoppel." 18 James Wm. Moore et al., Moore's Federal Practice, ¶ 134.33[1] (3d ed. 2015).

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 360 (3d Cir. 1996)).

## I.

## A.

The case at hand is an employment-discrimination action brought by Sandra Slater against United States Steel Corporation ("U.S. Steel"), her former employer.[2]  Slater raises two issues on appeal: (1) whether the District Court correctly granted summary judgment to U.S. Steel on her claim for "racial . . . discrimination*,*" and (2) whether the District Court correctly dismissed other employment-discrimination claims based on judicial estoppel that had proceeded past summary judgment and were set for trial.  We affirm the District Court on both issues.[3]

---

[2]  Slater's complaint contained three counts.  In Count One, Slater alleged that U.S. Steel discriminated against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* ("Title VII"), when U.S. Steel (1) refused to count the time Slater spent in its Gary, Indiana mill toward her seniority status at its Fairfield, Alabama mill; (2) assigned Slater to perform menial janitorial duties; and (3) refused to train Slater to operate heavy machinery.  In addition, the District Court interpreted Count One to make out a "claim for sex discrimination based on *quid pro quo* discrimination."

In Count Two, Slater alleged that U.S. Steel retaliated against her, in violation of Title VII and 42 U.S.C. § 1981, when it laid her off after she complained about (1) "racial and sexual discrimination" and (2) U.S. Steel's decision to retain a white woman with less than three years of service at U.S. Steel, while laying off more-senior African-American employees during a round of layoffs supposedly restricted to employees with three years of service or less.

In Count Three, Slater attempted to recast each of the previous allegations as "racial and sexual discrimination," in violation 42 U.S.C. § 1981.

[3] The District Court correctly granted U.S. Steel summary judgment on Slater's claim for racial discrimination based on disparate treatment "because . . . [Slater] failed to present evidence that . . . [U.S. Steel] treated similarly situated white employees more favorably and

Twenty-one months after bringing this lawsuit, Slater, represented by separate counsel, filed a Chapter 7 bankruptcy petition.[4]  In filling out the Statement of Financial Affairs part of her petition, Slater, under penalty of perjury, answered "none" to the Personal Property Schedule B question asking whether she had any "contingent and unliquidated claims" and "none" to the Statement of Financial Affairs question asking whether she was, or had been within one year immediately preceding the filing of her petition, "a party" to any "suits and administrative proceedings."

---

ha[d] failed to establish her *prima facie* case on th[e] claim."  We agree.  We review the District Court's grant of summary judgment de novo.  *Cook v. Bennett*, 792 F.3d 1294, 1298 (11th Cir. 2015).  As part of her prima facie case, Slater needed to prove: (1) she belonged to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the employer treated a similarly situated employee outside of her protected class more favorably. *Flowers v. Troup Cty. Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015); *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)).  Slater, who is black, contended that Carolyn Farless, a white woman, is a similarly situated employee outside of Slater's protected class who was treated more favorably because Farless had been allowed to transfer service time earned at a different worksite to Farless's current worksite to count toward her seniority status, while Slater was not able to transfer her service time.  Farless is not a proper comparator because, unlike Slater, she was not a transfer employee.  Similarly situated employees must be "nearly identical to the plaintiff in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1260 (11th Cir. 2001) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368–69 (11th Cir. 1999)).

　　Slater also argues that *Ricci v. DeStefano*, 557 U.S. 557, 577–78, 129 S. Ct. 2568, 2672–73, 174 L. Ed. 2d 490 (2009) (discussing the prohibition on disparate-impact discrimination), applies to her claim for racial discrimination.  Because this argument was raised for the first time on appeal, we decline to address it.  *See, e.g.*, *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015).

　　The other claims disposed of on summary judgment that Slater has not appealed are affirmed by operation of law.

　　[4]  Chapter 7 Voluntary Pet., *In re Slater*, No. 11-02865 (Bankr. N.D. Ala. June 2, 2011), ECF No. 1.

4

When U.S. Steel learned of the bankruptcy case—that Slater's Chapter 7 petition had not disclosed the employment-discrimination claims she was pursuing against it in the District Court and that the Chapter 7 Trustee was treating the bankruptcy as a "no asset" case[5] and had filed a Report of No Distribution with the Bankruptcy Court—it moved the District Court alternatively to dismiss the case or for summary judgment. U.S. Steel argued that the case should be dismissed because Slater lacked standing to prosecute it[6] or that summary judgment should be granted under the doctrine of judicial estoppel pursuant to *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), and its progeny.[7] *Burnes* was an employment-discrimination case like Slater's that was dismissed because the plaintiff, who was in bankruptcy, failed to disclose the pendency of federal-district-court litigation to the Bankruptcy Court.

---

[5] A no-asset bankruptcy case is one in which no non-exempt assets are sold to pay the debtor's creditors. *See Barger v. City of Cartersville,* 348 F.3d 1289, 1291 (11th Cir. 2003) ("Since it was a 'no asset discharge', no assets were distributed and the trustee was relieved of all further duties."); *In re Baitcher*, 781 F.2d 1529, 1530 (11th Cir. 1986) ("It had been a 'no assets' bankruptcy in which all the creditors got nothing.").

[6] Once Slater petitioned the Bankruptcy Court for Chapter 7 relief, all of her assets, including her claims against U.S. Steel, became assets of the bankruptcy estate by operation of law. *See* 11 U.S.C. § 541 (2012). Only the trustee of the bankruptcy estate would have standing to pursue her claims against U.S. Steel.

[7] *See* Br. of U.S. Steel in Supp. of Mot. to Dismiss Compl. or, in the alternative, for Summ. J. at 6*, Slater v. U.S. Steel Corp.*, No. 2:09-cv-01732-KOB (N.D. Ala. Aug. 16, 2011), ECF No. 67 (citing the following employment-discrimination cases: *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269,1272 (11th Cir. 2010); *Barger*, 348 F.3d at 1297; *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1292 (11th Cir. 2003); *Burnes*, 291 F.3d at 1289; *Pavlov v. Ingles Mkts., Inc.*, No. 06-16011, 2007 WL 1649099, at *1 (11th Cir. June 6, 2007); *Casanova v. Pre Sols., Inc.*, No. 06-12417, 2007 WL 934424, at *2 (11th Cir. Mar. 28, 2007); *Hands v. Winn-Dixie Stores, Inc.*, No. 09-0619-WS-N, 2010 WL 4496798, at *5 (S.D. Ala. Nov. 1, 2010)).

On receiving U.S. Steel's alternative motions, Slater immediately amended her bankruptcy petition to identify her lawsuit against U.S. Steel and the claims being litigated.[8]  Slater also filed with the District Court a memorandum in opposition to U.S. Steel's motions and an affidavit stating that she did not intentionally withhold mention of her lawsuit in her bankruptcy petition and that when she realized what she had done, she had her bankruptcy attorney amend her answers to the Statement of Financial Affairs questions to reveal the current litigation.

In her memorandum, Slater argued that invoking the doctrine of judicial estoppel would be inappropriate for three reasons, two based on the United States Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001), the third based on the Fourth Circuit's decision in *Folio v. City of Clarksburg*, 134 F.3d 1211 (4th Cir. 1998).  First, Slater argued that judicial estoppel would be inappropriate under *New Hampshire* because she had not "'succeeded in persuading [the bankruptcy] court to accept [her] position'" that she had no claims pending against U.S. Steel, because she had not yet received a discharge of her debts by the Bankruptcy Court, and therefore had created "'no risk of inconsistent court determinations'" that could pose a "threat to judicial integrity."  Second, Slater contended that judicial estoppel should not be invoked

---

[8]  Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.").

because allowing her employment-discrimination case to go forward would not give her an "'unfair advantage or impose an unfair detriment on'" U.S. Steel. And third, to be estopped, Slater argued that she "must have acted intentionally, not inadvertently" in failing to disclose the litigation against U.S. Steel in her Chapter 7 petition and, as indicated in her affidavit, her failure to disclose her claims and the litigation was inadvertent.

While U.S. Steel's alternative motions were pending, the following occurred. First, the Bankruptcy Court approved the application of the trustee of Slater's bankruptcy estate to employ the lawyers representing Slater in her case against U.S. Steel as special counsel for the bankruptcy estate and, in that capacity, continue to pursue the claims being litigated. Second, a short time later, Slater, through counsel, petitioned the court to convert her Chapter 7 case to a Chapter 13 case. The court granted her motion, and Slater promptly filed a Chapter 13 petition and an Amended Personal Property Schedule B. Three months later, the Bankruptcy Court affirmed the plan Slater proposed for the payment of her debts over a period of forty-two months.

The District Court ruled on U.S. Steel's alternative motions while Slater's plan was being carried out. The court declared moot U.S. Steel's motion to dismiss the case on the ground that Slater lacked standing. A Chapter 13 debtor

has standing to prosecute a claim of the bankruptcy estate as the debtor in possession,[9] and the court found that Slater was appearing in that capacity.

B.

The District Court concluded that the doctrine of judicial estoppel as formulated in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), and *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010), controlled its decision.  In *Burnes,* we observed that

> [i]n the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case.  First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.

291 F.3d at 1285 (quotation marks and citation omitted) (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001), *vacated on other grounds*, 537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002)).  In *Robinson*, we observed that "[w]hen considering a party's intent [under the second prong of our test] . . . the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the

---

[9] "The Chapter 13 debtor remains in possession of all property of the estate, both exempt and non-exempt."  David S. Kennedy, *Chapter 13 Under the Bankruptcy Code*, 19 Mem. St. U. L. Rev. 137, 139 (1989) (citing 11 U.S.C. § 1306(b) (2012)).  The debtor in possession has many of the rights and powers of a trustee.  *See* 11 U.S.C. § 1303 (2012).  The debtor in possession also retains standing to pursue a claim of the bankruptcy estate.  *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004) (citing 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009; *In re Mosley*, 260 B.R. 590, 595 (Bankr. S.D. Ga. 2000)).

undisclosed claims or has no motive for their concealment." 595 F.3d at 1275 (quotation marks omitted) (quoting *Barger*, 348 F.3d at 1295–96).

U.S. Steel was entitled to summary judgment, the District Court held, because it established both *Burnes* factors as a matter of law. The court summarily dispatched Slater's argument that U.S. Steel failed to establish the two *New Hampshire* factors she had cited in her memorandum in opposition to U.S. Steel's alternative motions with the statement that *Burnes* "[i]ncorporat[ed] those considerations" in "outlin[ing] [the] two factors whose presence call for the imposition of judicial estoppel."

The District Court viewed *Burnes* and *Robinson* as controlling its decision because, like Slater's case, they

> involved the plaintiff's inconsistent sworn testimony in two separate proceedings, a bankruptcy proceeding and a federal employment discrimination case. In both cases, the plaintiff failed to disclose the existence of the pending lawsuit seeking monetary compensation as an asset in the bankruptcy proceeding. The Eleventh Circuit found in both cases that the plaintiff had a duty to disclose the federal lawsuit as an asset; that the failure to reflect the lawsuit in the bankruptcy case was a breach of that duty resulting in inconsistent positions under oath; that the district court, in its discretion, could infer from the record the requisite intent to make a mockery of the judicial system; and thus, that the court's application of the doctrine of judicial estoppel to grant summary judgment was not clear error. [10]

---

[10] The District Court observed that Slater failed to address *Burnes*, *Robinson*, and the similar decisions U.S. Steel cited in its Brief in Support of Motion to Dismiss Complaint or, in the alternative, for Summary Judgment. Slater chose, instead, to rely on the fact that her failure to disclose the claims against U.S. Steel was "inadvertent and has . . . been rectified," that the Bankruptcy Court took "no final action" on the failure, and that U.S. Steel had suffered no harm.

Just like the plaintiffs in *Burnes* and *Robinson,* Slater took inconsistent positions under oath when she breached the duty to disclose her ongoing employment discrimination claims in her bankruptcy petition.  So the question the District Court had to decide, in order to grant U.S. Steel summary judgment, was whether Slater's inconsistencies were "calculated to make a mockery of the judicial system."  *See Burnes*, 291 F.3d at 1285 (quotation marks omitted) (quoting *Salomon*, 260 F.3d at 1308).  In the District Court's words, in answering that question, it had to "analyze [Slater's] intent, because the Eleventh Circuit requires intentional contradictions, not simple error or inadvertence."  The District Court noted that, in *Robinson*,

> the Eleventh Circuit explained that 'the relevant inquiry is intent at the time of non-disclosure'– the motive to conceal is measured prior to the time the adversary discovers and reveals the concealment.  It further explained that . . . 'the motive to conceal stems from the *possibility* of defrauding the courts and not from any actual fraudulent *result*.'

The District Court stated, "The Eleventh Circuit emphasized, not only in *Robinson* but also in *Burnes*, that waiting until after being caught to rectify the omission is too little, too late."  In *Burnes*, the District Court noted,

> the Eleventh Circuit . . . explain[ed] that allowing a plaintiff to amend his bankruptcy petition 'only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.  The so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.'

10

Because Slater amended her Chapter 7 petition "only after U.S. Steel caught and exposed her omission," the District Court concluded that "allowing her to do so without penalty would encourage rather than discourage debtors like her to conceal their assets unless or until they are caught."  To avoid this consequence, and because it inferred that Slater's concealment of her claims against U.S. Steel when she filed her Chapter 7 petition was intentional and not inadvertent, the District Court concluded that she intended "to make a mockery of the judicial system" and granted U.S. Steel a final judgment dismissing her case.

Slater appeals the District Court's judgment.  For the reasons that follow, we affirm.

## II.

Slater seeks the vacation of the District Court's judgment and a remand of the case for further proceedings on two alternative grounds.[11]  First, Slater argues that the District Court failed to give appropriate weight to two of the three factors the Supreme Court deemed critical in *New Hampshire* in considering whether to apply the doctrine of judicial estoppel.  Second, she contends, the *New Hampshire* factors aside, that the District Court erred in applying Eleventh Circuit precedent.[12]

---

[11]  Slater's opening brief on appeal does not frame the argument alternatively.  We do so because, giving the brief a fair reading, we sense that Slater is contending that the District Court misapplied *New Hampshire* and Eleventh Circuit precedent.

[12]  Slater also argues that judicial estoppel is not applicable here because the bankruptcy trustee is the real party in interest, and the bankruptcy trustee has not made any inconsistent

Judicial estoppel is an equitable doctrine. We review a trial court's decision whether to apply the doctrine for abuse of discretion. *Robinson v. Tyson Foods, Inc.*, 595 F.3d. 1269, 1273 (11th Cir. 2010). An abuse of discretion occurs when the court bases its ruling on an incorrect legal standard. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) (citing *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336 (11th Cir. 2002)).

III.

The overriding purpose of the doctrine of judicial estoppel as stated in *New Hampshire* and by the federal circuits is "to prevent the perversion of the judicial process," indeed "the essential integrity of [that] . . . process, by prohibiting parties from changing positions according to the exigencies of the moment." *See New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S. Ct. 1808, 1814–15, 149 L. Ed. 2d 968 (2001) (quotation marks and citations omitted) (citing the doctrine's purpose as expressed in various federal courts of appeal). The doctrine has been applied broadly to legal proceedings in various contexts before a variety of

---

statements. This argument fails per our precedent in *Barger*, where we attributed the debtor's inconsistent statements to the bankruptcy trustee. *See Barger v. City of Cartersville*, 348 F.3d 1289, 1292–93, 1296–97 (11th Cir. 2003). Furthermore, Slater's bankruptcy case was converted to a Chapter 13 case by the time the motion for summary judgment was filed, meaning that she was, in fact, a real party in interest as the debtor in possession. 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009; *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).

Additionally, Slater argues that judicial estoppel is inapplicable to a claim for injunctive relief. Because this argument was raised for the first time on appeal, we decline to address it. *See, e.g.*, *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015).

tribunals, including administrative forums.  18 James Wm. Moore et al., Moore's

Federal Practice ¶ 134.30, at 69–70 (3d ed. 2015).

The doctrine is ordinarily applied in two scenarios.  The first is where the

party asserting the doctrine was a party in the earlier proceeding in which the

party's adversary took a position inconsistent with the position the adversary is

currently advancing.  *New Hampshire* presents this scenario.  The second scenario

is where the party asserting the doctrine was not a party in the earlier proceeding

and thus did not have to deal with the position its adversary took in that

proceeding.  *Burnes* presents this scenario.[13]

---

[13]  The Supreme Court has implied that the doctrine of judicial estoppel applies in the *Burnes* scenario.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807, 119 S. Ct. 1597, 1604, 143 L. Ed. 2d 966 (1999).  In that case, the Fifth Circuit had affirmed the District Court's application of judicial estoppel to bar summary judgment on the plaintiff's claim against her former employer under the Americans with Disabilities Act of 1990 that "'with . . . reasonable accommodation' she could 'perform the essential functions' of her job," *id.* at 797, 119 S. Ct. at 1599–1600, because in an earlier case she had obtained Social Security disability benefits by taking the position that she was unable to perform her job.  The Supreme Court granted certiorari, vacated the Fifth Circuit's judgment, and remanded the case for further proceedings because

> [w]hen faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim.  To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807, 119 S. Ct. at 1604.

We note that the Supreme Court did not cite *Cleveland* in its *New Hampshire* decision.  In *New Hampshire*, the Court recognized that judicial estoppel applies in a variety of contexts and then went on to articulate factors particularly relevant to cases involving the same parties in two proceedings.  *New Hampshire,* 532 U.S. at 749–51, 121 S. Ct. at 1814–15.  From this, one might infer that the Supreme Court considers the *New Hampshire* scenario and the *Burnes* scenario to involve entirely different settings.

13

In this part of our opinion, we consider whether, as Slater contends, the District Court erred, and thus abused its discretion, in failing to give appropriate weight to two of the three factors that led the Supreme Court to rest its *New Hampshire* decision on judicial estoppel. When we compare the factual predicate that prompted the Court to apply the doctrine in that case with the factual predicate that prompted the District Court to apply the doctrine we articulated in *Burnes*, we find that the factual predicates are materially dissimilar. This being so, we conclude that *New Hampshire* did not govern the District Court's application of judicial estoppel in Slater's case.

### A.

*New Hampshire v. Maine* involved a boundary dispute. New Hampshire brought an original action in the Supreme Court in 2000 seeking a decree fixing the New Hampshire–Maine boundary that follows the Piscataqua River. *New Hampshire*, 532 U.S. at 745, 121 S. Ct. at 1812. New Hampshire "contend[ed] that the inland river boundary 'run[s] along the low water mark on the Maine shore,' . . . and assert[ed] sovereignty over the entire river." *Id.* at 747, 121 S. Ct. at 1813 (second alteration in the original). Maine moved the Court to dismiss New Hampshire's complaint on the ground that "two prior proceedings—a 1740 boundary determination by King George II and a 1977 consent judgment entered by th[e] Court—definitively fixed the Piscataqua River boundary at the middle of

14

the river's main channel of navigation" and thus should be given preclusive effect. *Id.* at 745, 121 S. Ct. at 1812. Maine argued that three distinct doctrines—claim preclusion, issue preclusion, and judicial estoppel—required the complaint's dismissal. Def.'s Mot. to Dismiss and Br. in Supp. of Mot. to Dismiss, *New Hampshire*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (No. 130), 2000 WL 35258927, at *20–30.

The Court granted Maine's motion. In doing so, it "pretermit[ted] the States' competing historical claims along with their arguments on the application *vel non* of the res judicata doctrines commonly called claim and issue preclusion." *New Hampshire*, 532 U.S. at 748, 121 S. Ct. at 1814. Instead, the Court concluded that "a discrete doctrine, judicial estoppel, best fit[ ] the controversy." *Id.* at 749, 121 S. Ct. at 1814.

After noting that "[c]ourts have observed that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *id.* at 750, 121 S. Ct. at 1815 (alterations and quotation marks omitted) (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)), the Court identified the three factors that "typically inform the decision whether to apply the doctrine in a particular case":

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, . . . whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding

15

would create "the perception that either the first or the second court was misled."  Absent success in a prior proceeding, a party's later inconsistent position introduces "no risk of inconsistent court determinations," and thus poses little threat to judicial integrity. . . . [T]hird[,] . . . whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51, 121 S. Ct. at 1815 (quotation marks and citations omitted).

The Court found the second and third factors dispositive, as the following passage of its opinion indicates:

[C]onsiderations of equity persuade us that application of judicial estoppel is appropriate in this case.  Having convinced this Court to accept one interpretation of "Middle of the River," and having benefited from that interpretation, New Hampshire now urges an inconsistent interpretation to gain an additional advantage at Maine's expense.  Were we to accept New Hampshire's latest view, the "risk of inconsistent court determinations" would become a reality.  We cannot interpret "Middle of the River" in the 1740 decree to mean two different things along the same boundary line without undermining the integrity of the judicial process.

*Id.* at 755, 121 S. Ct. at 1817 (citation omitted) (quoting *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991)).

The factual predicate that prompted the Court to apply the doctrine was this: permitting New Hampshire to go forward would be unfair to Maine.  New Hampshire got what it wanted in the 1977 consent decree.  Now it wanted the Court to effectively undo that decree and afford it an additional advantage at Maine's expense.  The Court dismissed New Hampshire's complaint because it

16

could not give New Hampshire what it wanted without undermining the integrity

of the judicial process.

B.

*Burnes v. Pemco Aeroplex, Inc.* involved inconsistent positions taken by a

debtor in a Chapter 7 bankruptcy case and in an employment-discrimination case.[14]

291 F.3d 1282, 1284 (11th Cir. 2002).  The salient facts were these.

In July 1997, Levi Billups petitioned the Bankruptcy Court for the Northern

District of Alabama for Chapter 13 relief.  *Id.*  On January 30, 1998, "Billups filed

a charge of discrimination with the EEOC against Pemco."  *Id.*  In December 1999,

he and thirty-five other Pemco employees brought a lawsuit against Pemco

alleging discrimination in the workplace in violation of Title VII of the Civil

Rights Act of 1964.  *Id.*  Billups, however, did not amend his Chapter 13 schedule

of assets to reflect the lawsuit.  *Id.*

In October 2000, the Bankruptcy Court converted Billups's Chapter 13 case

to a Chapter 7 case and "ordered Billups to [submit] amended or updated schedules

to the Chapter 7 trustee reflecting any financial changes since he first filed

schedules with the bankruptcy court."  *Id.*  Billups filed the amended schedules,

---

[14] We pause here to state that the instant case and *Burnes* differ in one respect.  In *Burnes*, the bankruptcy case in which the debtor, Billups, asserted the inconsistent position was no longer pending when the District Court applied judicial estoppel to bar his employment-discrimination claims.  In the instant case, by contrast, Slater's bankruptcy case was still pending when the District Court applied the doctrine.  As we indicate *infra* Part IV., this difference is not material.

17

but he failed to update them to reflect the lawsuit. *Id.* In January 2001, after the bankruptcy trustee filed a "no asset" report, the Bankruptcy Court, acting on the report, ordered Billups's debts discharged. *Id.* Pemco learned of Billups's bankruptcy after his Chapter 7 case had closed. *See id.* After it discovered that Billups failed to disclose the Title VII litigation in his bankruptcy filings, it moved the District Court for summary judgment, asserting judicial estoppel.

The District Court granted the motion because the material facts before it fit hand in glove with the facts in *Chandler v. Samford University*, 35 F. Supp. 2d 861 (N.D. Ala. 1999). Mem. Op. at 5, *Burnes v. Pemco Aeroplex, Inc.*, No. 2:99-cv-03280-WMA (N.D. Ala. June 4, 2001), ECF No. 53. In that case, the plaintiff, Joycealyn Chandler, filed a Title VII race-discrimination suit against Samford University, her former employer. *Chandler*, 35 F. Supp. 2d at 862. After her Chapter 13 bankruptcy case had been converted to a Chapter 7 case, she failed to inform the Bankruptcy Court of the lawsuit. *Id.* at 862–63. The Bankruptcy Court, finding that she had no reachable assets, ordered Chandler's debts discharged. *Id.* at 863. Samford University, having learned of the bankruptcy and Chandler's failure to reveal her lawsuit during the bankruptcy proceedings, moved the District Court for summary judgment, asserting judicial estoppel. *Id.*

The District Court in *Chandler* considered the application of judicial estoppel "to be one of first impression for . . . the Eleventh Circuit," but

18

> join[ed] the multitude of courts recognizing the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding. In doing so, th[e] court accept[ed] the two-pronged analysis requiring a demonstration that the assertion of the claim is inconsistent with the earlier non-disclosure and that the assertion of inconsistent positions is an attempt to deliberately manipulate the judicial system.

*Id.* at 864. Finding that Chandler had been well aware of her duty to inform the Bankruptcy Court of her pending Title VII suit[15] and had "an obvious motive for concealing her claims against Samford," the court applied the doctrine and refused to entertain her claims. *Id.* at 865.

The District Court granted Pemco's motion for summary judgment on June 4, 2001, six days after the opinion in *New Hampshire* came down.[16] Mem. Op. at 1, *Burnes v. Pemco Aeroplex, Inc.*, No. 2:99-cv-03280-WMA (N.D. Ala. June 4, 2001), ECF No. 53. One of the issues Billups presented to this court on appeal was whether *New Hampshire* effectively overruled *Chandler*'s judicial-estoppel analysis, which the District Court had applied in reaching its decision. We addressed the issue after restating the *Chandler* analysis to conform to Eleventh Circuit precedent. *Burnes*, 291 F.3d at 1285–86. Citing *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001), *vacated on other grounds*,

---

[15] Chandler had attended law school and testified that bankruptcy law was one of her favorite classes. *Chandler*, 35 F. Supp. 2d at 865.

[16] The opinion in *New Hampshire* issued on May 29, 2001. Rehearing was denied on August 6, 2001. *New Hampshire v. Maine*, 533 U.S. 968, 122 S. Ct. 10, 150 L. Ed. 2d 793 (2001) (Mem.).

537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002), we said that in deciding

whether to apply judicial estoppel, two factors are considered: (1) whether the

party against whom the doctrine is invoked is asserting a position that is

inconsistent with a position the party took in a prior proceeding under oath; and (2)

whether the party is asserting the inconsistent position with the intent to make a

mockery of the judicial system.[17]  *Burnes*, 291 F.3d at 1285.  We then

acknowledged the three factors that informed the *New Hampshire* decision:

_____

[17]  *Salomon Smith Barney, Inc.* involved a dispute over the arbitrability of certain claims. Salomon Smith Barney ("Smith Barney"), an investment firm, recommended that Harvey and others purchase limited partnerships that were unsuitable for their investment objectives.  260 F.3d at 1304–05.  The case did not present a *Burnes* scenario.  Rather, it presented a *New Hampshire* scenario in that the party asserting judicial estoppel, Harvey, was a party in the prior proceeding, which was an appeal taken by Smith Barney to the Florida District Court of Appeal. *Id.* at 1305.  Nor did the case before the District Court involve a false statement made under oath in that case or the state-court case on appeal.  The allegedly inconsistent statement was in the form of an argument Smith Barney made in that appeal, an argument the panel held was not inconsistent with the position Smith Barney was taking in the District Court.  *Id.* at 1308 ("Smith Barney did not maintain inconsistent positions, but rather it continuously argued that Florida was an inconvenient forum.").  The *Salomon* Court therefore rejected Harvey's argument that the District Court should have estopped Smith Barney from pursuing the position it was taking, i.e., that the District Court should exercise jurisdiction over the case it had filed.  *Id.*

Although the panel did not estop Smith Barney—because it had not pursued inconsistent positions in the two cases—it described judicial estoppel thusly:

> Judicial estoppel "is applied to the calculated assertion of divergent sworn positions . . . [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings."  *McKinnon v. Blue Cross & Blue Shield of Ala.,* 935 F.2d 1187, 1192 (11th Cir. 1991) (citation omitted).  This circuit's approach contemplates two elements.  First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.

*Id.*  *Salomon* was decided on August 9, 2001, three days after the Supreme Court denied rehearing in *New Hampshire*, and thus, quite understandably, did not cite the *New Hampshire* decision.

By way of historical background, the quotation attributed to *McKinnon* was taken from *American National Bank v. Federal Deposit Insurance Corporation,* 710 F.2d 1528, 1536 (11th

(1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.* (citing *New Hampshire*, 532 U.S. at 750-51, 121 S. Ct. at 1815). We noted that

the Supreme Court had been quick to say that these factors did not constitute

"'inflexible prerequisites or an exhaustive formula for determining the applicability

---

Cir. 1983). *American National Bank* cited *Johnson Service Co. v. TransAmerica Insurance Co.,* 485 F.2d 164, 174 (5th Cir. 1973), a diversity case based on Texas common law, as the authority for the doctrine. "Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *Am. Nat'l Bank*, 710 F.2d at 1536 (citing *Johnson Serv.*, 485 F.2d at 174).

The *Salomon* Court relied specifically on two cases in articulating the elements of judicial estoppel. The first case was *Taylor v. Food World, Inc.*, 133 F.3d 1419 (11th Cir. 1998). *Taylor* presented a *Burnes* scenario. Gary Taylor's guardian sued Taylor's employer claiming that the employer had terminated Taylor in violation of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and seeking reinstatement. *Id.* at 1421. While the suit was pending, the guardian obtained supplemental security income benefits on Taylor's behalf. *Id.* The District Court, applying the doctrine of judicial estoppel, dismissed the ADA claim. On appeal, we described judicial estoppel in the words the court in *McKinnon* used: "Judicial estoppel 'is applied to the calculated assertion of divergent sworn positions . . . [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings.'" *Id.* at 1422 (quoting *McKinnon*, 935 F.2d at 1192). We reversed the dismissal on the ground that "[t]he medical records [Taylor] submitted to the SSA do not clearly contradict his assertion that he is 'qualified' under the ADA." *Id.* at 1423.

The second case was *Johnson Service.* In that case, the former Fifth Circuit applied the doctrine of judicial estoppel as formulated by Texas common law. 485 F.2d at 174. In *Chrysler Credit Corporation v. Rebhan*, which presented a *New Hampshire* scenario, this court cited *Johnson Service* in formulating for the first time in the Eleventh Circuit the doctrine of judicial estoppel as a matter of federal law. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991) ("The policy interests [which gave rise to the doctrine] are simply stated by the doctrine itself. The doctrine of judicial estoppel 'is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings.'" (quoting *Johnson Serv.*, 485 F.2d at 174)).

21

of judicial estoppel,'" as "'[a]dditional considerations may inform the doctrine's application in specific factual contexts.'"  *Id.* (quoting *New Hampshire,* 532 U.S. at 750–51, 121 S. Ct. at 1815).  We accordingly concluded that "the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions [in *New Hampshire*], and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case."  *Id.* at 1285–86.

We then held that each of the two judicial-estoppel factors spelled out in *Salomon* had been met.  *Id.* at 1286–88.  First, Billups took an inconsistent position under oath when he represented that he had no assets in the form of pending legal claims despite the fact that he was in the process of pursuing a Title VII claim against Pemco.[18]  *Id.* at 1286.  Second, the District Court did not err when it

_____

[18]  The Chapter 13 schedule-of-assets form Billups filed with his Chapter 13 petition "specifically asked [him] to report any contingent or unliquidated claims of any kind."  *Burnes*, 291 F.3d at 1284.  We held that Billups's duty to disclose all of his assets was a "continuing one" that did not end with his submission of the form.  *Id.* at 1286.  Rather, he was required to amend the form to reveal the lawsuit against Pemco.  The Bankruptcy Court reinforced this continuing duty to disclose when, as part of its conversion of his Chapter 13 case to a Chapter 7 case, the court ordered Billups to submit "amended or updated schedules . . . [to] reflect[] any financial changes" that had occurred since the filing of his Chapter 13 petition.  *Id.* at 1284.  Billups amended his schedules, but he failed to list his Title VII claim and the pending litigation.  We treated the failure as a false statement under oath that he had no Title VII claim.

In *Ajaka v. BrooksAmerica Mortgage Corporation*, 453 F.3d 1339 (11th Cir. 2006), we considered the debtor's failure to "amend his Chapter 13 reorganization plan to reflect his contingent [Truth in Lending Act] claim" as taking an "inconsistent position[ ] . . . under oath in a prior proceeding."  453 F.3d at 1344 (quoting *Burnes*, 291 F.3d at 1285).  "Because . . . Ajaka failed to assert his TILA claim as an asset in the bankruptcy proceeding, the first [factor] of our judicial estoppel test is satisfied.  *See* [*Burnes,* 291 F.3d] at 1285 (finding similar failure to disclose in bankruptcy proceeding to satisfy the first factor)."  *Id.*; *see also Robinson v. Tyson*

22

inferred from the record that Billups intended to make a mockery of the judicial system because he had knowledge of his undisclosed claims and a motive to conceal them.[19]  *Id.* at 1286–88.  That Billups stood to gain an advantage by concealing the claims from the Bankruptcy Court was undisputed.  *Id.* at 1288.  "It is unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages."  *Id.*

In an attempt to avoid the dismissal of his claims, Billups argued that he should be permitted to re-open his bankruptcy case to comply with the Bankruptcy Court's order that he inform the Chapter 7 trustee of his lawsuit against Pemco.  *Id.* We rejected the argument and affirmed the District Court's judgment.  Allowing Billups to re-open his case and amend his bankruptcy filings to reveal his lawsuit

---

*Foods, Inc.,* 595 F.3d 1269, 1275 (11th Cir. 2010) ("By failing to update her bankruptcy schedule to reflect her pending claim, Robinson represented that she had no legal claims to the bankruptcy court while simultaneously pursuing her legal claim against Tyson in the district court.  These actions, both taken under oath, are clearly inconsistent.  Therefore, in accordance with *Ajaka,* Robinson took inconsistent positions under oath and the issue of judicial estoppel centers on her intent.").

[19]  Billups argued that he did not have "the requisite intent to mislead the bankruptcy court."  *Burnes,* 291 F.3d at 1286.  He claimed that an "inadvertent error resulted in the continued omission of his discrimination claim from his bankruptcy schedules."  *Id.*  But, as we indicate *supra* Part I.B., Billups's failure to inform the Bankruptcy Court of his discrimination claim was not inadvertent.  Such failure is "inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."  *Id.* at 1287 (quotation marks omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)); *see also Robinson*, 595 F.3d at 1275.  In *Burnes*, the "undisputed facts ma[d]e it clear that Billups had knowledge of his claims during the bankruptcy proceedings . . . . [and] stood to gain an advantage by concealing the claims from the bankruptcy court."  *Burnes*, 291 F.3d at 1288.

against Pemco, "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets." *Id.*

The factual predicate that prompted this court to apply the doctrine was this: Billups intentionally concealed from the Bankruptcy Court his claim against Pemco thereby depriving the Chapter 7 trustee of the ability to intervene and prosecute his claim for the benefit of the bankruptcy estate and his creditors. If this court permitted Billups to re-open his bankruptcy case, it would be condoning his behavior, and, to the extent that such behavior would be noised about, it would be encouraging future debtors to follow suit. In short, we would be undermining the administration of the bankruptcy law and the integrity of the judicial process.

We reiterated this concern in *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003). The City of Cartersville demoted Barger from her position as Personnel Director to customer-sales representative on January 8, 2001. *Id.* at 1291. On July 18, 2001, Barger sued the City in the District Court claiming that her demotion violated the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Family Medical Leave Act. *Id.* For relief, she sought reinstatement to her Personnel Director position. *Id.* On September 4, 2001, Barger, represented by a bankruptcy attorney, petitioned the Bankruptcy Court for Chapter 7 protection. *Id.* The lawsuit with the City was not disclosed in the

24

Statement of Financial Affairs and Personal Property Schedule B, which the attorney prepared and she signed under penalty of perjury. *Id.*

On November 7, 2001, after negotiations with the City failed, her employment attorney amended her complaint against the City to add claims for compensatory and punitive damages. *Id.* The next day, at a meeting of creditors, Barger told her bankruptcy attorney, and in turn, the trustee, about her case against the City. *Id.* She told them that she was seeking reinstatement to her former position, as Personnel Director, but omitted to say that she was also seeking damages. *Id.* Despite this, no amendment was made to the Statement of Financial Affairs and Personal Property Schedule B to reflect the pending lawsuit. *See id.*

The Bankruptcy Court subsequently granted Barger a complete discharge of her debts; it was a "no asset discharge." *Id.* When the City learned that Barger had been in bankruptcy and had concealed her case against the City from the Bankruptcy Court, it moved the District Court for summary judgment, asserting that the doctrine of judicial estoppel barred Barger's claims. *Id.* Barger responded by moving the Bankruptcy Court to reopen her Chapter 7 case, so that the trustee of her bankruptcy estate could prosecute the pending lawsuit in her stead. *Id.* at 1291–92. The Bankruptcy Court, over the City's objection, granted her motion and reopened the case for that purpose, finding that Barger "'did not conceal the [discrimination] claim or attempt to obtain a financial advantage for herself'. In

25

the Bankruptcy Court's estimation, the failure to list the discrimination suit in Barger's Statement of Financial Affairs was caused by her bankruptcy attorney's 'inadvertence' and had no substantive effect on the bankruptcy petition." *Id.* at 1292 (alteration in original).  Despite these findings, the District Court granted the City's motion for summary judgment. *Id.*

On appeal, we considered the trustee of Barger's bankruptcy estate the appellant since Barger's claims constituted property of the estate. *Id.* at 1292–93. But we attributed to the trustee Barger's conduct in determining whether the District Court had abused its discretion in invoking judicial estoppel to bar the claims. *Id.* at 1295.

In seeking the reversal of the District Court's judgment, the trustee focused on the District Court's rejection of the Bankruptcy Court's findings and its substitution for such findings the determination that Barger intended to manipulate the judicial system. *Id.*  The trustee cited the following undisputed facts: (1) Barger's attorney failed to list her lawsuit against the City in the Statement of Financial Affairs despite the fact that she specifically told him about the suit; (2) Barger informed the trustee about her suit against the City during the creditors' meeting; and (3) the Bankruptcy Court reopened Barger's Chapter 7 case so that the trustee could prosecute the suit against the City. *Id.*

We upheld the District Court's determination notwithstanding those undisputed facts. As for the first fact, we attributed to Barger her attorney's failure to list the lawsuit against the City as an asset of the bankruptcy estate because she voluntarily hired the attorney and could not avoid the consequences of his acts or omissions. *Id.* Her "remedy is against the attorney in a suit for malpractice." *Id.* (quotation marks omitted) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10, 82 S. Ct. 1386, 1390 n.10, 8 L. Ed. 2d 734 (1962)). But "[e]ven if [her] failure to disclose could be blamed on her attorney, the nondisclosure could not in any event be considered inadvertent" and thus excusable for judicial-estoppel purposes. *Id.* A "debtor's failure to satisfy [her] statutory disclosure duty is 'inadvertent' only when . . . the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* at 1296 (quotation marks omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)). Barger obviously had knowledge of the undisclosed claims against the City and she had a motive to conceal the claims because "by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, [her] knowledge of her discrimination claims and motive to conceal them [were] sufficient evidence from which to infer her intentional manipulation." *Id.* (citing *Burnes*, 291 F.3d at 1287).

27

We discounted the second fact for the reason that when asked by the trustee for "the monetary value of the lawsuit, [Barger] informed him that she only sought reinstatement of her previous position with the City of Cartersville. Barger did not tell the trustee that she was also seeking backpay, liquidated damages, compensatory damages, and punitive damages." *Id.* As for the third fact, we said this:

> Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds. "Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor.

*Id.* at 1297 (alteration in original and citation omitted) (quoting *Burnes*, 291 F.3d at 1288).[20]

---

[20] We note in passing that *Parker v. Wendy's International, Inc.*, 365 F.3d 1268 (11th Cir. 2004), is factually on all fours with *Barger*, but reached the opposite result. In that case, the District Court attributed to the trustee of Parker's bankruptcy estate Parker's failure to disclose a Title VII claim of racial discrimination she had brought against Wendy's and then applied the doctrine of judicial estoppel to bar the trustee's prosecution of the claim. *Id.* at 1270–71. The trustee appealed. We reversed, observing that "the claim against Wendy's belong[ed] to the bankruptcy estate and its representative, the trustee[,]" not Parker, the debtor. *Id.* at 1273. "The trustee made no false or inconsistent statement under oath in a prior proceeding and [was] not tainted or burdened by the debtor's misconduct." *Id.*

In contrast, *Barger* held that the trustee was bound by the debtor's failure to disclose in her bankruptcy filings that the claims she was prosecuting were assets of the bankruptcy estate.

28

C.

The policy the Supreme Court implemented in *New Hampshire* and this court implemented in *Burnes* was the same: the protection of "the integrity of the judicial process" by preventing "the perversion" of that process by parties who would "deliberately chang[e] positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50, 121 S. Ct. at 1814 (quotation marks omitted). While the policy was the same, the factual contexts of the two cases were as different as night and day. In *Burnes*, the issue was whether the debtor intentionally concealed the claims he was prosecuting against his employer from the Bankruptcy Court, and if so, whether in prosecuting those same claims in District Court, he intended to make a mockery of the judicial system. The fact that Pemco had established *New Hampshire*'s second factor—that Billups had "succeeded in persuading [that] court to accept" his position—was not dispositive. The concealment of his claims against Pemco had already performed its odious service, undermining the orderly administration of justice in his bankruptcy case. The concealment continued to do that until he was caught. In short, to give dispositive weight to *New Hampshire*'s second factor would be to hold that judicial

---

Under our prior-panel-precedent rule, *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1287 (11th Cir. 2015), we are bound to follow *Barger* and to disregard *Parker's* holding to the contrary.

estoppel is inapplicable in the *Burnes* scenario until after the bankruptcy case has run its course and plaintiff's debts have been discharged.

*New Hampshire*'s third factor is also not dispositive. That factor applies in the *New Hampshire* scenario but not the *Burnes* scenario, as is presented in the instant case. Allowing Slater's claims to go forward could not—in *New Hampshire*'s sense of the words—give Slater an "unfair advantage" or impose on U.S. Steel an "unfair detriment" because U.S. Steel had not been burdened with opposing Slater's claims in the Bankruptcy Court. These words apply only in a two-case setting, where the party asserting the doctrine was a party in the earlier proceeding.

In sum, Slater's argument that the District Court erred in failing to give these *New Hampshire* factors appropriate weight, and thus abused its discretion in barring her claims on the judicial estoppel ground, fails.[21]

---

[21] This court has applied the three *New Hampshire* factors in cases presenting the *New Hampshire* scenario. *See*, *e.g., Tampa Bay Water v. HDR Eng'g, Inc.,* 731 F.3d 1171 (11th Cir. 2013); *Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259 (11th Cir. 2011), *rev'd on other grounds sub nom. Lozman v. City of Riviera Beach*, 568 U.S. ___, 133 S. Ct. 735, 184 L. Ed. 2d 604 (2013). Both of these decisions involved straightforward applications of *New Hampshire* and *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006), which applied *New Hampshire's* three dispositive factors. Neither Eleventh Circuit decision cites the two judicial-estoppel factors *Burnes* relied on, (1) the party against whom the doctrine is invoked is asserting a position that is inconsistent with a position the party took in a prior proceeding under oath and (2) the party is asserting the inconsistent position with the intent to make a mockery of the judicial system. And neither decision refers to the prior inconsistent position as being under oath. The impression is thus created that the oath requirement applies only in cases presenting the *Burnes* scenario, with its focus on false statements made in the Bankruptcy Court under penalty of perjury.

IV.

Slater argues alternatively that the District Court erred in applying Eleventh Circuit precedent, namely *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), and *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010). In both of those cases, the Bankruptcy Court had accepted, albeit tacitly, the debtor's failure to disclose as property of the bankruptcy estate claims the debtor was litigating in federal district court. That is, in each case, the bankruptcy proceeding had run its course. We find no merit in Slater's argument for two reasons.

First, this court's precedent in cases involving the non-disclosure in bankruptcy of claims the debtor is simultaneously prosecuting in federal district court does not require, as a condition precedent to the application of judicial estoppel, the termination of the bankruptcy proceedings. Whether the bankruptcy proceeding has ended is not dispositive. The factors that trigger the application of the doctrine are (1) an inconsistent position taken under oath in the Bankruptcy Court, and (2) advancing an inconsistent position in the District Court with the intent to make a mockery of justice.

Second, to condition the invocation of judicial estoppel on what transpires in the bankruptcy case after the debtor's failure to list the claim being litigated in the District Court has been discovered would, as the *Burnes* Court explained, "only

31

diminish the necessary incentive to provide the bankruptcy court with a truthful

disclosure of the debtors' assets." *Burnes*, 291 F.3d at 1288.

V.

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I concur in the court's judgment because the result is dictated by Eleventh Circuit precedent. I write separately because that precedent, the doctrine of judicial estoppel as laid out in *Burnes v. Pemco Aeroplex, Inc.*[1] and *Barger v. City of Cartersville*,[2] was wrongly decided. The consequences of today's decision make the problem clear: U.S. Steel is granted a windfall, Slater's creditors are deprived of an asset, and the Bankruptcy Court is stripped of its discretion.

Sandra Slater filed a Chapter 7 bankruptcy petition twenty-one months after bringing suit for employment discrimination against her former employer, U.S. Steel.[3] Under oath, she failed to list that suit as a contingent asset on her bankruptcy petition. Upon discovery, U.S. Steel moved the District Court to bar the suit on judicial-estoppel grounds. According to U.S. Steel, Slater's inconsistent positions would "make a mockery of the judicial system."[4]

While U.S. Steel's motion was pending, the Bankruptcy Court first learned of Slater's nondisclosed suit during a hearing on a related matter.[5] The bankruptcy

---

[1] *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002).
[2] *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003).
[3] *See In re Slater*, No. 11-02865 (Bankr. N.D. Ala. June 2, 2011).
[4] *See Burnes*, 291 F.3d at 1285 (quotation marks omitted) (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001), *vacated on other grounds*, 537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002)).
[5] Slater amended her petition to reflect her suit against U.S. Steel only after U.S. Steel submitted to the District Court its motion for summary judgment based on judicial estoppel. Per Rule 1009(a) of the Federal Rules of Bankruptcy Procedure, Slater was allowed to amend her petition as a matter of course since the case was still open. *See* Fed. R. Bankr. P. 1009(a). The

33

judge noted that he "normally . . . g[ot] [motions based on nondisclosed lawsuits] after they've settled them."[6]  The Bankruptcy Judge's statement suggests that he hears about contingent assets, like lawsuits, somewhat regularly and usually only after their values become fixed.  Having Slater's employment-discrimination claims go undisclosed, then, did not appear particularly troubling from the judge's perspective.  He was willing to let Slater pursue her claims.

The District Court then granted summary judgment to U.S. Steel.  The District Judge, concluding—correctly—that *Burnes* and *Barger* eliminated the Bankruptcy Judge's reasoned discretion in such circumstances, found that judicial estoppel barred Slater's claim.  Judicial estoppel requires the court to consider two factors: "First, it must be shown that the allegedly inconsistent positions were

---

hearing at which Slater's suit was discovered by the Bankruptcy Court concerned a motion to convert the case from Chapter 7 bankruptcy to Chapter 13 bankruptcy and an application to employ counsel.  Both the motion and the application were eventually granted.  U.S. Steel had also moved the District Court to bar Slater's claim for lack of standing because the trustee of the bankruptcy estate, not Slater, was the only party who could properly maintain the employment-discrimination suit when it was in Chapter 7 bankruptcy.  The District Court ultimately declared the standing question moot because, once she became a Chapter 13 debtor in possession, Slater had standing herself to sue on behalf of the bankruptcy estate.

[6] Hr'g on Mot. to Convert to Chapter 13 Bankruptcy and Trustee Appl. to Employ Roderick Graham and Charles Tatum at 8:35–8:38,  *In re Slater*, No. 11-02865 (Bankr. N.D. Ala. Sept. 27, 2011).  Nondisclosed lawsuits and settlements would normally come to the Bankruptcy Judge's attention on a motion to reopen the case pursuant to 11 U.S.C. § 350.  If a case were still open, the debtor would not need to bring the matter to the court's attention because Rule 1009 of the Federal Rules of Bankruptcy Procedure gives the debtor the right to amend his schedules "as a matter of course at any time" while the case is open, without obtaining leave of court.  *See infra* note 85.  The reason why the Judge commented on the matter was because the trustee was requesting the court's approval to employ counsel to pursue Slater's claims against U.S. Steel.

34

made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."[7]  That Slater took inconsistent positions was uncontested and the District Court inferred the requisite intent to "make a mockery of the judicial system" from Slater's failure to list her claims on the bankruptcy petition.  It granted summary judgment based on judicial estoppel in part to protect the integrity of the Bankruptcy Court.  Today we affirm that decision.

The results of today's decision speak for themselves.  U.S. Steel no longer faces a set of potentially meritorious employment-discrimination claims.  Judicial estoppel disposes of Slater's claims, without examination on the merits; indeed, the doctrine blocks them altogether.  U.S. Steel is free and clear from any liability it may have owed to Slater.  Conversely, for Slater's creditors, there will be no recovery on the claims, which belonged, by operation of law, to the bankruptcy estate the moment Slater filed her bankruptcy petition.  And, the Bankruptcy Court, despite expressing no concern about the late-arriving claim, receives no "protection" through the doctrine.  Instead, its experience and discretion are disregarded in favor of the District Court's judgment.

---

[7] *Burnes*, 291 F.3d at 1285 (quotation marks omitted) (quoting *Salomon*, 260 F.3d at 1308).

This special concurrence proceeds in three parts.[8]  In Part I., I provide a brief overview of how the bankruptcy process is designed to work in the absence of judicial estoppel, with particular emphasis placed on the roles played by the trustee and the bankruptcy judge.  In Part II., I trace the doctrine of judicial estoppel's historical development in the Eleventh Circuit.  In Part III., I turn to the stark implications that stem from the continued application of judicial estoppel as required by *Burnes* and *Barger*.  I conclude by calling for en banc review to set straight the doctrine of judicial estoppel.

I.

The Eleventh Circuit's judicial-estoppel precedent to be applied by Article III courts in bankruptcy proceedings, which works instead against the structure and purpose of the bankruptcy system, fails to accord the broad deference to the bankruptcy courts that Congress intended.  Before explaining why this is so, I begin with an overview of the relevant dynamics present in these proceedings for the those not already familiar.

The federal bankruptcy laws are designed to "give[] . . . the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort,

---

[8]  Also included in two appendices to this opinion, in order to assist the reader to make out the development of the doctrine of judicial estoppel in the Eleventh Circuit, are a chart and timeline laying out the relevant case law and a compendium of the hundreds of cases invoking *Burnes* and *Barger* in the Eleventh Circuit.

unhampered by the pressure and discouragement of pre-existing debt."[9]  In

exchange for the discharge of his debts, the debtor is required, to the extent

possible, to make his creditors whole with the property he owns at the time of

bankruptcy.[10]  Because the debtor's property is self-reported, "the importance of

full and honest disclosure [in a bankruptcy case] cannot be overstated."[11]  Candor

is unquestionably "crucial to the effective functioning of the federal bankruptcy

system."[12]

The role of the bankruptcy judge is, of course, to resolve disputes that arise.

But the bankruptcy judge's time is also often occupied in a broad supervisory

manner, generally ensuring that the case is administered in a "just, speedy, and

inexpensive" manner.[13]  "[T]he bankruptcy court is the ultimate custodian of the

estate."[14]

---

[9] *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934).

[10] *Id.*

[11] *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) (quotation marks omitted).

[12] *Id.* (quotation marks omitted).

[13] Fed. R. Bankr. P. 1001; *see* Hon. Stephen A. Stripp, *An Analysis of the Role of the Bankruptcy Judge and the Use of Judicial Time*, 23 Seton Hall L. Rev. 1329, 1336–37 (1993) ("The bankruptcy judge . . . has traditionally had other, nonadjudicative duties which are unique to the bankruptcy process." (citing H.R. Rep. No. 95-595, at 88 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6050)).

H.R. Rep. No. 95-595, at 88 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6050 provides:

> Bankruptcy is an area where there exists a significant potential for fraud, for self-dealing, and for diversion of funds.  In contrast to general civil litigation, where cases affect only two or a few parties at most, bankruptcy cases may affect hundreds of scattered and ill-represented creditors. . . . In bankruptcy cases, . . .

Filing a petition "creates an estate [that is] comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case," regardless of where such property is located or who holds it.[15]  Thus, as a matter of law, the estate—not the debtor—owns all assets the moment the debtor files his bankruptcy petition.  Additionally, an automatic stay protects all assets of the estate, also as a matter of law, as soon as the petition is filed.[16]  The stay protects against, as relevant here, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[17]

A bankruptcy trustee[18] is appointed to represent the estate and guide the bankruptcy case through the process to its conclusion.[19]  The trustee is an

---

active supervision is essential.  Bankruptcy affects too many people to allow it to proceed untended by a[n] impartial supervisor.

(footnotes omitted).  As a caveat, the above language is in reference to the Bankruptcy Act of 1898, which was superseded by the Bankruptcy Act of 1978, which in turn was held unconstitutional.  *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87–88, 102 S. Ct. 2858, 2880, 73 L. Ed. 2d 598 (1982) (plurality opinion); *see also Stern v. Marshall*, 564 U.S. __, 131 S. Ct. 2594, 2620, 180 L. Ed. 2d 475 (2011).  The sentiment still holds generally true.

[14]  *United States v. Dennis*, 237 F.3d 1295, 1299 (11th Cir. 2001) (quotation marks omitted).

[15]  11 U.S.C. § 541(a).

[16]  11 U.S.C. § 362.

[17]  *Id.* § 362(a)(3).

[18]  In a Chapter 7 bankruptcy, the trustee and the debtor are two separate individuals, whereas in Chapter 13 proceedings, the debtor may step into the shoes of a trustee, and in this capacity is named the "debtor in possession."  *See* 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009.  In Chapter 7 proceedings, only the trustee has standing to pursue claims on behalf of the estate, 11 U.S.C. § 323(a); *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003), whereas in Chapter 13 proceedings, when the debtor is acting as the debtor in possession, she retains standing to pursue claims on behalf of the estate.  11 U.S.C. § 1303; Fed. R. Bankr. P. 6009; *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).

indispensable party to the bankruptcy because the bankruptcy process is complex, is not self-executing, and requires the good faith of all involved. The trustee is a fiduciary to the estate.[20] The Bankruptcy Court and the trustee work together supervising the case, marshalling all of the debtor's assets for distribution to the creditors.

The district courts have jurisdiction over bankruptcy cases,[21] though the district courts may provide in their local rules that bankruptcy cases be referred to the bankruptcy courts.[22] If an order of the Bankruptcy Court is appealed, the District Court sits as an appellate court in reviewing the Bankruptcy Court's order.[23] The District Court is bound to a clear-error standard for the Bankruptcy Court's factual findings and an abuse-of-discretion standard for the Bankruptcy Court's discretionary decisions, such as the decision whether to reopen a case.[24] Orders resulting from the District Court's review may then move through the normal federal appellate process.[25]

I now turn to the evolution of judicial estoppel, a supposedly equitable doctrine overlaying this intricately designed bankruptcy system, which has

---

[19]  *See* 11 U.S.C. § 323(a).
[20]  *See Mosser v. Darrow*, 341 U.S. 267, 271, 71 S. Ct. 680, 682, 95 L. Ed. 927 (1951).
[21]  28 U.S.C. § 1334.
[22]  *Id.* § 157(a).
[23]  *Id.* § 158(a).
[24]  Fed. R. Bankr. P. 7052; Fed. R. Bankr. P. 9014(c); Fed. R. Civ. P. 52; *e.g.*, *In re Herman*, 737 F.3d 449, 452 (7th Cir. 2013).
[25]  28 U.S.C. §§ 158(d)(1), 1254(1), 1291.

managed to strip the Bankruptcy Court of its broad discretion as the "ultimate custodian of the estate."[26]

## II.

As Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4477 observes, "[T]he number of federal appellate decisions grappling with [the doctrine of judicial estoppel] has grown dramatically."

> The cases tend to cluster around a few salient points, leaving uncertainty in between. Some sense of order can be found by focusing on three major approaches. The *narrowest approach* precludes inconsistent positons only on a theory akin to equitable estoppel, requiring reliance by a party who would be injured by permitting a change of position. A *more open approach*, which has become dominant in the federal courts, looks for reliance by an adjudicating tribunal. This approach in turn blends into a *still more open-ended approach* that, by seeking to prevent a party from "playing fast and loose" with the courts, implies distinctions between seemly and unseemly adversary behavior. All of these approaches must come to terms with the well-entrenched principle that modern procedure welcomes inconsistent positions in the course of a single litigation.[27]

Each of these approaches is solicitous of one or more discrete interests. The "narrowest approach" protects a party who has relied on its adversary's former position from the injury it would suffer if the court allowed the adversary to abandon its former position and pursue a contrary position. This approach also protects the court's integrity, which may be called into question if it issues a

---

[26] *United States v. Dennis*, 237 F.3d 1295, 1299 (11th Cir. 2001) (quotation marks omitted)

[27] 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4477 (2d ed. 2002) (emphasis added).

decision that appears to be unjust. The "more open approach" protects the previous court's appearance of competence by not issuing a ruling the previous court should have made but did not. The "still more open-ended approach" protects the court from inconsistent pleadings that are not barred by the doctrines of issue and claim preclusion but are disrespectful of the judicial process. This Circuit's doctrine best resembles the "still more open-ended approach."[28]

In the remainder of Part II., I trace the evolution of judicial estoppel in this circuit. In its first iteration, the doctrine required that the inconsistent positions at issue be taken under oath in separate judicial proceedings. To invoke the doctrine, a party had to show that its adversary was advancing a position in the District Court that was inconsistent with a position it took in an earlier judicial proceeding.

---

[28] There are two exceptions: *City of Riviera Beach v. That Certain Unnamed Gray, Two-story Vessel Approximately Fifty-seven Feet in Length*, 649 F.3d 1259 (11th Cir. 2011), *rev'd on other grounds sub nom. Lozman v. City of Riviera Beach*, 568 U.S. ___, 133 S. Ct. 735, 184 L. Ed. 2d 604 (2013) and *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171 (11th Cir. 2013). *See ante* at 31 n.21. The party asserting the doctrine in *Riviera Beach* was a party in the earlier proceeding in which its adversary took the allegedly inconsistent position—the *New Hampshire* scenario. *Ante* at 13. *Tampa Bay Water* presented a one-case scenario, in which a party took the allegedly inconsistent positions in the same suit. *See infra* note 129. The doctrine of judicial estoppel the court considered in these two cases resembled a combination of the "narrowest approach" and the "more open approach" Wright, Miller & Cooper describe because in each case, the court considered whether there was reliance by a party, in accordance with the "narrowest approach," and whether there was reliance by a court, in accordance with the "more open approach." Specifically, the court considered the following factors in each of the two cases:

> (1) whether there is a clear inconsistency between the earlier position and the later position; (2) a party's success in convincing a court of the earlier position, so that judicial acceptance of the inconsistent later position would create the perception that either the earlier or later court was misled; and (3) whether the inconsistent later position would unfairly prejudice the opposing party.

*Tampa Bay Water*, 731 F.3d at 1182; *Riviera Beach*, 649 F.3d at 1273.

The doctrine assumed that the adversary's first position was true, and its second position false. The District Court invoked the doctrine and estopped the adversary from asserting the second position to protect the judicial system's integrity. Allowing the adversary to go forward with a false claim would be to tolerate the perversion of the judicial process and that, obviously, would undermine the integrity of the judicial process.

Over time, this formulation of the doctrine changed. The requirement of an oath in both the prior proceeding and the District Court was modified to exclude the oath in the District Court.[29] Moreover, the "prior proceeding" requirement was also changed such that the "prior" proceeding no longer needs to come first in time. If, for example, the adversary's position under oath is that the claim he is litigating in the District Court does not exist, the District Court must dismiss the claim on the merits. That is, the doctrine assumes that the position stated under oath is true, and that the position in the District Court is therefore false. The District Court therefore invokes the doctrine and estops the adversary's position to vindicate the integrity of the prior proceeding.

---

[29] *Burnes* cited both the two-oath and the one-oath requirement. *Burnes*, 291 F.3d at 1285. *Burnes* applied judicial estoppel when only one oath was present thereby making clear that it was modifying the doctrine to only require one oath. *Id.* at 1286. The development in *Burnes* dropping the second-oath requirement likely occurred in recognition that the Federal Rules of Civil Procedure do not require verified pleadings.

A.[30]

The doctrine of judicial estoppel first appeared in Eleventh Circuit

precedent[31] in 1953, in *Livesay Industries, Inc. v. Livesay Window Co.*[32]  For our

purposes, however, the doctrine expressed in *Burnes* and *Barger* sprouts from a

1973 decision, *Johnson Service Co. v. Transamerica Insurance Co.*[33]  In *Johnson*

*Service*, the party asserting the doctrine was not a party in the prior proceeding—

the *Burnes* scenario.[34]  Sitting in diversity and therefore bound to apply the

---

[30] As mentioned above, a timeline and chart tracking the progress of these cases is included in Appendix I.

[31] Eleventh Circuit precedent includes the decisions of the former U.S. Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, the effective date of the division of the Fifth Judicial Circuit into the current Fifth Judicial Circuit and the Eleventh Judicial Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[32] *Livesay Indus., Inc. v. Livesay Window Co.*, 202 F.2d 378 (5th Cir. 1953).  *Livesay* was a patent infringement action.  The District Court held that on the basis of the judgment in *Livesay v. Drolet,* 38 F. Supp. 885 (S.D. Fla. 1941), which upheld the validity of the plaintiff's patent, the defendant was barred "on the grounds of res adjudicata and estoppel" from contesting the validity of the plaintiff's patent.  The Fifth Circuit affirmed, holding that the judgment in *Livesay v. Drolet* estopped the defendant on the validity issue: "where one in whose favor a judgment is rendered accepts the benefits, he is estopped from questioning the validity, of the judgment in any subsequent litigation." *Livesay Indus.*, 202 F.2d at 382. After so holding, the court added this statement about the doctrine:  "[I]t ought to be, we think it is, clear that, upon every principle of judicial estoppel, including the estoppel arising out of inconsistent positions in legal proceedings, defendant may not, as it attempts to do here, so trifle with the judicial process." *Id.* (footnote omitted).

As the late Judge Robert M. Hill subsequently observed in *USLIFE Corp. v. U.S. Life Insurance Co.*,

> The law of the Fifth Circuit . . . is scant on the subject of judicial estoppel. . . . It may be observed that in each of the cases that this Court has discovered where the doctrine was applied, the party to be estopped was, in fact, previously successful in its urging of its inconsistent position. However, in none of these cases did the Fifth Circuit undertake an elaboration of the requisites for the application of judicial estoppel.

560 F. Supp. 1302, 1305–06 (N.D. Tex. 1983) (footnote omitted).

[33] *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164 (5th Cir. 1973).

[34] *See ante* 13–14.

43

relevant state law, the *Johnson Service* Court looked to the Supreme Court of

Texas's pronouncement in *Long v. Knox*,[35] which provided that

> "[t]he doctrine of judicial estoppel is not strictly speaking estoppel at
> all but arises from positive rules of procedure based on justice and
> sound public policy. It is to be distinguished from equitable estoppel
> based on inconsistency in judicial proceedings because the elements
> of reliance and injury essential to equitable estoppel need not be
> present. Under the doctrine of judicial estoppel . . . a party is estopped
> merely by the fact of having alleged or admitted in his pleadings in a
> former proceeding under oath the contrary to the assertion sought to
> be made.  It . . . is not necessary that the party invoking this doctrine
> have been a party to the former proceeding."[36]

The *Johnson Service* Court then explained that,

> *Judicial estoppel* is a technical rule designed to meet needs of broad
> public policy. It *is directed against those who would attempt to
> manipulate the court system through the calculated assertion of
> divergent sworn positions in judicial proceedings*.  Because the rule
> looks toward cold manipulation and not an unthinking or confused
> blunder, it has never been applied where plaintiff's assertions were
> based on . . . inadvertence[] or mistake.[37]

Thus, Wright, Miller & Cooper's "still more open-ended approach" gained its first

foothold.

Having already been applied when the party asserting judicial estoppel was

not a party to the prior proceeding, the next appearance of the doctrine involved the

---

[35] *Long v. Knox*, 291 S.W.2d 292 (Tex. 1956).

[36] *Johnson Serv.*, 485 F.2d at 174 (quotation marks omitted) (citations omitted) (quoting *Long*, 291 S.W.2d at 295).

[37] *Id.* at 175 (emphasis added).  The *Johnson Service* Court ultimately held the doctrine inapplicable.  *See id.* at 175.

*New Hampshire* scenario[38] in which the party asserting estoppel was a party to the prior proceeding.  Like *Johnson Service*, *American National Bank of Jacksonville v. Federal Deposit Insurance Corp.*[39] was a diversity case in which the court was tasked with applying state law.[40]  The *American National Bank* Court cited *Johnson Service* for the proposition that "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions."[41]  It also noted that "[t]he doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings."[42]

---

[38]  *Ante* at 13.

[39]  *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528 (11th Cir. 1983).

[40]  This court's opinion does not indicate the state-law source of the doctrine the court applied.  The opinion cites *Johnson Service*'s formulation of judicial estoppel, so I assume that the parties' briefs cited *Johnson Service* for the state-law source of the doctrine.  As it turned out, the court held the doctrine inapplicable.

[41]  *See Am. Nat'l Bank*,  485 F.2d at 1536 (citing *Johnson Serv.*, 485 F.2d at 174).

[42]  *Id. American National Bank* was this court's initial use of the phrase "mockery of justice" and "making a mockery of justice by inconsistent pleadings."  *Id.*  Webster's defines "mockery" variously as "insulting or contemptuous action or speech: derision"; "a subject of laughter, derision, or sport"; "a counterfeit appearance: imitation"; "something ridiculously or imprudently unsuitable"; and "an insincere, contemptible, or impertinent imitation."  *Mockery*, Webster's Third New International Dictionary (3d ed. 1993).  Under this last definition, the usage "arbitrary methods that made a mockery of justice" is given as an example.  *Id.*

The former Fifth Circuit had used the phrase "mockery of justice" but only in habeas cases.  *Williams v. Beto*, the seminal case for the phrase, expressed it in these words:

It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, *or a mockery of justice*, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.

354 F.2d 698, 704–05 (5th Cir. 1965) (emphasis added) (citations omitted).

B.

In 1988, this court, in *Chrysler Credit Corp. v. Rebhan*,[43] considered for the

first time whether to recognize judicial estoppel as a federal rule and thus part of

the law of the Eleventh Circuit.  *Chrysler Credit* presented the *New Hampshire*

scenario and involved the application of the Bankruptcy Code.[44]  The debtor,[45]

Rebhan, was attempting to maintain a factual position under oath in an adversary

proceeding initiated by Chrysler Credit that was directly contrary to the factual

position he had pursued under oath against Chrysler Credit in a state court.[46]

Chrysler Credit objected, arguing that judicial estoppel barred Rebhan's position.

The Bankruptcy Court agreed, the District Court affirmed, and Rebhan appealed to

---

[43] *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir. 1988), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

[44] The issue was whether a debt was dischargeable under 11 U.S.C. §§ 523(a)(4) and (6). *See Chrysler Credit*, 842 F.2d at 1258.

[45] For consistency, brevity, and clarity, I use the terms "debtor," "trustee," and "defendant" to the extent practicable.  The "debtor" is, of course, the debtor in bankruptcy.  The "trustee" is the appointed trustee in the bankruptcy proceeding.  The "defendant" is the party against which the debtor or trustee is asserting a claim in District Court.  This claim is typically the claim that has not been listed as an asset in the bankruptcy proceeding.

[46] Chrysler Credit sued Rebhan in a North Carolina court, and Rebhan counterclaimed, asserting a position contrary to the position he was advancing in the Bankruptcy Court.  Unlike the situation in *New Hampshire,* where New Hampshire *prevailed* against Maine in the prior proceeding and Maine pled judicial estoppel as a defense in the second proceeding, Rebhan *did not prevail* in the prior proceeding on his counterclaim against Chrysler Credit.  The Bankruptcy Court applied the doctrine merely because Rebhan made inconsistent statements under oath in each of the two proceedings.  *In re Rebhan*, 45 B.R. 609, 612 (Bankr. S.D. Fla. 1985).  In doing so, the Bankruptcy Court, and this court on appeal, effectively reiterated what the *Johnson Service* Court, referring to Texas common law, had said: "[Judicial estoppel] is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present." *Johnson Serv.*, 485 F.2d at 174.  In brief, Rebhan was estopped solely because the position he was asserting under oath in the Bankruptcy Court was contrary to the position he had previously asserted before the North Carolina court.

this court.  In that this court was "not bound . . . to apply any rigid formulation of the doctrine," having previously applied judicial estoppel only as state law, it looked to "common law or to the policies supporting the doctrine itself for guidance," and specifically to the Texas law that had informed the *Johnson Service* Court's decision.[47]  Importantly, the court commented on the purpose of judicial estoppel.  It found that the doctrine's purpose was to prevent parties from "attempt[ing] to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings,"[48] and affirmed the lower courts' rejection of Rebhan's position because he was attempting to manipulate the Bankruptcy Court's decision.[49]

Three years later, this court once again applied the doctrine of judicial estoppel as federal law in a case presenting the *New Hampshire* scenario.  In *McKinnon v. Blue Cross & Blue Shield of Alabama*,[50] we adopted the state-law formulation articulated in *American National Bank*:  "Judicial estoppel is applied

[47]  *Chrysler Credit,* 842 F.2d at 1261.

[48]  *Id.* (quoting *Johnson Serv.*, 485 F.2d at 174 (quotation marks omitted)).  The same language the court took from *Johnson Service* appears in the *American National Bank* opinion, which the *Chrysler Credit* opinion does not cite.

[49]  The *Chrysler Credit* opinion does not mention the *Johnson Service* opinion's statement that "[b]ecause [judicial estoppel] looks toward cold manipulation and not an unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake."  *See Johnson Serv.*, 485 F.2d at 175.  A statement by this court to the effect that judicial estoppel does not apply where the plaintiff's position in the prior proceeding was inadvertent or mistaken next appeared in *Burnes*, 291 F.3d at 1286–87.

[50]  *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187 (11th Cir. 1999).  The lawsuit was a private cause of action brought under 29 U.S.C. § 1132 for an alleged violation of 29 U.S.C. § 1140, the anti-retaliation provision of the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq. McKinnon*, 935 F.2d at 1189–90.

to the calculated assertion of divergent sworn positions.  The doctrine is designed

to prevent parties from making a mockery of justice by inconsistent pleadings"[51]

(collectively the "divergent-sworn-positions-and-mockery-of-justice rule").[52]  The

divergent-sworn-positions requirement had previously been adopted into federal

law through *Chrysler Credit*, and *McKinnon* added the "mockery of justice"

language to federal law.  This divergent-sworn-positions-and-mockery-of-justice

rule was then applied verbatim in *Talavera v. School Board of Palm Beach

County*[53] and *Taylor v. Food World, Inc.*[54]

---

[51] *Id.* at 1192 (quotation marks omitted) (quoting *Am. Nat'l Bank*, 710 F.2d at 1536).
The *McKinnon* opinion does not cite *Chrysler Credit,* which had adopted judicial estoppel as
federal law and constituted precedent that bound the *McKinnon* Court.  But *McKinnon,* in citing
*American National Bank,* repeated the *Chrysler Credit* expression that judicial estoppel is
applied to "the calculated assertion of divergent sworn positions." *Id.  McKinnon* added a gloss
to that *Chrysler Credit* expression, a gloss that, in my view, *Chrysler Credit* precedent did not
foreclose: "The doctrine is designed to prevent parties from making a mockery of justice by
inconsistent pleadings." *Id.* (quotation marks omitted) (quoting *Am. Nat'l Bank*,710 F.2d at
1536). This "gloss" came from the state-law decision *American National Bank*, and *McKinnon*
adopted it into federal law.

[52] The doctrine of judicial estoppel had no bearing on the *McKinnon* decision because
McKinnon failed to establish that the position Blue Cross and Blue Shield of Alabama was
asserting was inconsistent with a position it had asserted in a prior proceeding.  *Id.* at 1192–93.

[53] *Talavera v. Sch. Bd. of Palm Beach Cty.*, 129 F.3d 1214 (11th Cir. 1997).  Talavera
presented a *Burnes* scenario.  Talavera, a secretary working for the School Board of Palm Beach
County, became unable to perform her job, and her one-year renewable contract was not
renewed.  *Id.* at 1215.  Claiming that she was totally disabled, she applied for and received
disability benefits from the Social Security Administration ("SSA"), then sued the School Board
under the Americans with Disability Act ("ADA"), alleging that the Board had violated her
rights under the ADA by failing to accommodate her disability and refusing to renew her
contract because of it.  *Id.* at 1216.

The District Court granted the School Board summary judgment on the ground that
Talavera was "judicially estopped from claiming she was a 'qualified' individual with a
disability under the ADA, having certified to the SSA that she was totally disabled."  *Id.*
Applying the divergent-sworn-positions-and-mockery-of-justice rule, we reversed the District
Court's judgment and remanded the case for further proceedings because the statements Talavera

In *Salomon Smith Barney*, *Inc. v. Harvey*,[55] a diversity case, the court looked

to *federal* law instead of *state* law for the elements of judicial estoppel.[56]  After

---

made in support of her SSA application "d[id] not rule out the possibility that she could perform the essential functions of her job with reasonable accommodation."  *Id.* at 1221.

We said, in the words of *McKinnon*, "Judicial estoppel 'is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.'" *Talavera*, 129 F.3d at 1217 (quoting *McKinnon*, 935 F.2d at 1192).

[54]  *Taylor v. Food World, Inc.*, 133 F.3d 1419 (11th Cir. 1998). *Taylor* presented a *Burnes* scenario with facts similar to those in *Talavera*.  The case involved statements by Gary Taylor's guardian, Patricia Taylor, made in an ADA lawsuit that were allegedly inconsistent with statements she had previously made in the application she submitted on Gary's behalf to the SSA for disability benefits.  *Id.* at 1421.  After referring to the *Talavera* decision, in which "this court addressed the issue of whether a plaintiff who applies for and receives disability benefits is *per se* judicially estopped from later bringing a claim under the ADA," *id.* at 1423 (citing *Talavera*, 129 F.3d at 1214), we said:

> [T]his court determined that a certification of total disability on a disability benefits application is not inherently inconsistent with being 'qualified' under the ADA.   This court reasoned that the SSA, in determining whether an individual is entitled to disability benefits, does not take account of the effect of reasonable accommodation on an individual's ability to work. Accordingly, the determination of whether an individual who has certified total disability to the SSA is judicially estopped from later bringing a claim under the ADA will depend upon the specific statements made in the application and other relevant evidence in the record.

*Id.* (citations omitted).  On the record before us, we found that the statements Gary Taylor made in the application to the SSA did not rule out the possibility that he was a "'qualified' individual . . . who can perform [his] job 'with or without accommodation.'" *Id.* at 1425.

The court quoted *McKinnon* in describing the doctrine:  "Judicial estoppel 'is applied to the calculated assertion of divergent sworn positions ... [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings.'"  *Id.* at 1422 (alteration in original) (quoting *McKinnon,* 935 F.2d at 1192).

[55]  *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302 (11th Cir. 2001), *vacated on other grounds*, 537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002).  *Salomon,* like *Chrysler Credit* and *McKinnon*, presented a *New Hampshire* scenario.

[56]  In diversity cases, judicial estoppel is governed by state law under the *Erie* doctrine. *See, e.g.*, *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995) (per curiam) (citing *Chrysler Credit*, 842 F.2d at 1261).  The *Salomon* Court therefore erred by looking to the federal divergent-sworn-positions-and-mockery-of-justice rule rather than the relevant judicial-estoppel rule under the applicable state law.

quoting the federal divergent-sworn-positions-and-mockery-of-justice rule the court explained what the party asserting judicial estoppel must establish in order to prevail. "This circuit's approach contemplates two elements. First, it must be shown that the allegedly inconsistent positions were made under oath in *a prior proceeding*. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system"[57] (collectively the "two-element statement").[58]

_____

[57] *Salomon*, 260 F.3d at 1308. (emphasis added). The *Salomon* opinion cites three cases in support of the quoted statement. *See id.* (citing *McKinnon*, 935 F.2d at 1192; *Taylor,* 133 F.3d at 1422*; Johnson Serv.,* 485 F.2d at 174–75). *McKinnon* includes a statement—judicial estoppel is "designed to prevent parties from making a mockery of justice by inconsistent pleadings," *McKinnon*, 935 F.2d at 1192— relating to the second element espoused by the *Salomon* Court, without affirmatively requiring proof that the inconsistencies be calculated to make a mockery of the judicial system. As to the second element, *McKinnon* contains a statement mandating an assertion of "divergent sworn positions," rather than inconsistent positions made under oath in a prior proceeding. *Id. Taylor* contains no statement resembling the quoted statement. The *Johnson Service* citation refers to the requirement that the first of the divergent positions must be made under oath in a prior proceeding, but does not mention the second element:

> Long v. Knox specifically applies the estoppel only in the event that *pleadings* have been made *under oath* in a prior proceeding. The December 16 letter [which contained the prior inconsistent statement], however, was not included in plaintiff's pleadings in the state court suit. Moreover, the original petition filed in state court was not made under oath, nor was it required to be by the Texas Rules of Civil Procedure..

*Johnson Serv.*, 485 F.2d at 175 (footnote omitted). *Johnson Service* also says that there must be "divergent sworn positions." *Id.* It does not describe the second of the divergent sworn positions, which is the statement that triggers application of judicial estoppel. *See id.*

[58] *Salomon* is the first of the then-newly established Eleventh Circuit's judicial-estoppel decisions to use the term "a prior proceeding" in articulating the burden of proof a party asserting judicial estoppel assumes. The party invoking the doctrine, Harvey, argued that the position Salomon Smith Barney had taken in the Florida District Court of Appeal during an earlier proceeding was inconsistent with the position it was asserting in the District Court and therefore should be estopped. *Salomon*, 260 F.3d at 1308; *ante* at 21, n.17. *Salomon* presumably cites the former Fifth Circuit's opinion in *Johnson Service* for the "prior proceeding" language. *Id. Johnson Service* also used an apparently equivalent term, "a former proceeding," in explaining that "[u]nder the doctrine of judicial estoppel . . . a party is estopped merely by the fact of having

Although the *Salomon* Court was applying a state-law formulation of judicial estoppel, in referring to "[t]his circuit's approach" the court created the impression that it was dealing with the doctrine as a federal, not a state, rule. This made the Court's quotation of the divergent-sworn-positions-and-mockery-of-justice rule problematic. The question was whether the juxtaposition of the divergent-sworn-positions-and-mockery-of-justice rule's description of "inconsistent pleadings" as "divergent sworn positions" with the two-element statement that the "inconsistent positions [must be] made under oath in a prior proceeding" merely reinforced the divergent-sworn-positions-and-mockery-of-justice rule's requirement that the first, as well as the second, of the "divergent sworn positions" be under oath, or instead whether it meant that only the first of the divergent positions needed to be under oath.

Without elaboration, the *Burnes* and *Barger* Courts would subsequently conclude, by implication and in the context here, that the two-element statement amounted to a proper interpretation of the divergent-sworn-positions-and-mockery-of-justice rule that only the position taken in "a prior proceeding" needed to be

---

alleged or admitted in his pleadings in *a former proceeding* under oath the contrary to the assertion sought to be made." *Johnson Serv.*, 485 F.2d at 174 (emphasis added) (quotation marks omitted).

51

under oath.[59]  Moreover, the "prior" proceeding could actually be a subsequent

proceeding.[60]  In *Burnes,* the first proceeding was the lawsuit the debtor filed in the

---

[59]  In *Burnes* and *Barger*, the "prior proceeding" is the proceeding in which the debtor made the false statement under oath that triggered the application of judicial estoppel (after the debtor was caught).  As indicated in the following text, that proceeding could be a proceeding that, despite its label, occurs later in time.  My use of the term "a prior proceeding" throughout this special concurrence should be read as incorporating this use of the term and as referring to another proceeding.

[60]  For example, in *Barger*, the debtor brought the District Court action first, then filed a Chapter 7 petition in the Bankruptcy Court.  *Barger*, 348 F.3d at 1291.  The proceeding in which the debtor made the false sworn statement that triggered the application of judicial estoppel, that is, her failure to amend her schedules to disclose the District Court litigation, was the Chapter 7 case, the so-called "prior proceeding."  *See id.*  In *Burnes*, the debtor petitioned the Bankruptcy Court for Chapter 13 relief first, then brought suit in the District Court.  *Burnes*, 291 F.3d at 1284.  The proceeding in which the debtor made the false sworn statement that triggered the application of judicial estoppel—that is, his failure to list the District Court litigation in amending his schedules pursuant to an order the Bankruptcy Court issued when it converted his Chapter 13 case to a Chapter 7 case—was the Chapter 7 case.  *See id.*  In this case, Slater brought suit in the District Court first, then 21 months later filed a Chapter 7 petition in the Bankruptcy Court.  The false statement that triggered the application of judicial estoppel occurred in the Bankruptcy Court, in the "prior proceeding," when she failed to list the lawsuit at the time she filed her Chapter 7 petition.

Under *Burnes* and *Barger*, it is always the case that judicial estoppel is triggered in a situation where the debtor files for bankruptcy, omits to list an actionable claim as an asset either in his initial bankruptcy filings (if the claim is then cognizable) or in an amendment to the filings (when the claim becomes cognizable or he sues on the claim in the District Court), *and* his adversary discovers the omission.  If, as is the situation here, the debtor pursues the claim in the District Court before filing for bankruptcy, the application of judicial estoppel depends on when he lists the lawsuit in his bankruptcy filings.  If he lists the lawsuit in conjunction with the filing of his petition, the doctrine does not apply.  If he lists the lawsuit after his adversary discovers that it has not been listed, the doctrine applies.

In *United States v. Campa*, 459 F.3d 1121 (11th Cir. 2006) (en banc), a criminal prosecution, one of the defendants' arguments was that "the government's *subsequent* legal position in the *Ramirez* case constituted prosecutorial misconduct that warrant[ed] a new trial." *Id.* at 1152 (emphasis added).  We thought the argument was essentially a claim of judicial estoppel and said this, citing *Burnes*:

> Judicial estoppel bars a party from asserting a position in a legal proceeding that is inconsistent with its position in *a previous*, related *proceeding*. It "is designed to prevent parties from making a mockery of justice by inconsistent pleadings." Courts consider two factors in determining whether to apply the doctrine: whether the "allegedly inconsistent positions were made under oath in *a prior proceeding*" and whether such inconsistencies were "calculated to make a mockery of the judicial system."

52

District Court; the second proceeding was the debtor's Chapter 7 case.  Similarly,

in *Barger,* the first proceeding was the District Court action; the second proceeding

was the Chapter 7 case.  In both situations, the second proceeding became the

"prior proceeding" because it was the only proceeding in which the debtor asserted

the positon under oath that triggered the application of judicial estoppel.  The

debtor's position in the District Court was not asserted under oath because verified

pleadings are no longer required by the Federal Rules of Civil Procedure.[61]  The

---

*Campa*, 459 F.3d at 1152 (footnotes omitted) (quoting *Burnes*, 291 F.3d at 1285).  We then held that judicial estoppel was inapplicable

> because *Ramirez* was not a related proceeding, but rather an employment discrimination lawsuit. Moreover, the position that the government took in *Ramirez* occurred *subsequent to—not before—*its position in this case. The government filed its motion for change of venue in *Ramirez* on June 25, 2002, more than one year after the defendants were convicted. Therefore, the defendants' argument that the government should have been estopped from opposing its change of venue motions in a prior proceeding is chronologically unsound, and the court did not abuse its discretion in denying the defendants' motion for new trial based on newly discovered evidence.

*Id.* (emphasis added) (footnotes omitted).  The fact that *Burnes* and *Barger*, which the court did not cite, treated a subsequent proceeding as "a prior proceeding"—because the subsequent proceeding was the only proceeding in which a position was taken under oath—was not mentioned.  Given the court's silence on the point and the Supreme Court's statements in *New Hampshire* that "Courts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,'" and that it was "not establish[ing] inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," *New Hampshire*, 532 U.S. at 750–51, 121 S. Ct. at 1815 (alteration in original) (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)), I do not view *Campa* as having overruled by implication any aspect of the holdings of *Burnes* or *Barger*.  Rather *Campa* confirms that the *Burnes–Barger* formulation of judicial estoppel extends beyond the bankruptcy context.

[61]  In fact, the *Burnes* and *Barger* opinions contain not a word about the inconsistent position stated by the debtor under oath in the District Court.

divergent-sworn-positions-and-mockery-of-justice rule's "divergent sworn positions" element thus fell by the wayside.[62]

## C.

## 1.

Judicial estoppel's next doctrinal development, in *Burnes*, occurred when this court changed its focus from protecting the integrity of the judicial system to punishing debtors who do not fully disclose their assets.   Because *Burnes* followed directly on the heels of the Supreme Court's decision in *New Hampshire v. Maine*,[63] the court first had to consider that case's impact on the Circuit's own precedent.   In *New Hampshire*, the Supreme Court identified three factors that guided its judicial-estoppel analysis—the degree to which the two statements at issue were inconsistent; whether a judicial tribunal accepted the earlier position so that it would appear, if a later court adopts a contrary position, that either court had been misled; and whether the party advancing the inconsistent position would

---

[62]  In effectively eliminating the divergent-sworn-positions-and-mockery-of-justice rule's requirement of "divergent sworn positions," *Burnes* expanded judicial estoppel's reach far beyond that contemplated by this court when, in *Chrysler Credit* and *McKinnon*, it incorporated the doctrine (as articulated in *American National Bank*) into the law of the Eleventh Circuit for application in cases presenting the *New Hampshire* scenario and then, in *Talavera* and *Taylor*, for application in cases presenting the *Burnes* scenario.   Absent the divergent-sworn-positions requirement endorsed in those decisions, a plaintiff could file suit in the District Court and litigate the case to final judgment on a claim the existence of which the plaintiff denied under oath in a "prior proceeding."   The District Court's entertainment of such a claim would not result in a mockery of justice for two reasons.   First, Rule 8(d)(3) of the Federal Rules of Civil Procedure permits the pleading of inconsistent claims (and defenses).   Second, the plaintiff's adversary would impeach him with his prior inconsistent sworn statement.   *See infra* notes 161–163 and accompanying text.

[63]  *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).

derive an "unfair advantage or impose an unfair detriment on the opposing party if not estopped"[64]—but went on to conclude that these factors were not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel."[65]  Against this uncertain backdrop, the *Burnes* Court recited verbatim the divergent-sworn-positions-and-mockery-of-justice rule[66] and followed it with the two-element statement:

> In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case.  "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."[67]

The court then considered whether basing the application of judicial estoppel on these two factors would comport with the Supreme Court's "instructions" in *New Hampshire*, and concluded that the two factors "provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case."[68]

Addressing the first factor, the *Burnes* Court focused solely on the debtor's position before the Bankruptcy Court,[69] stating that there was "no

---

[64]  *See id.* at 750–51, 121 S. Ct. at 1815.

[65]  *Id.* at 751, 121 S. Ct. at 1815.

[66]  *See Burnes*, 291 F.3d at 1285.

[67]  *Id.* (citation omitted) (quoting *Salomon*, 260 F.3d at 1308).

[68]  *Id.* at 1285–86.

[69]  The court made no mention of the position the debtor took under oath in the District Court.  The fact that the debtor brought suit on a claim he did not disclose to the Bankruptcy Court apparently constituted a "position" that rendered inconsistent the "position" the debtor

55

debate that [the debtor's] financial disclosure forms were submitted under oath to the bankruptcy court; therefore, the issue bec[ame] one of intent."[70] That is, were the inconsistent positions the debtor had taken "calculated to make a mockery of the judicial system"? Specifically, when he amended his bankruptcy schedules pursuant to the Bankruptcy Court's order but failed to disclose his Title VII claim and the lawsuit against his employer, was the nondisclosure inadvertent or mistaken?

Appearing to equate the phrase "calculated to make a mockery of the judicial system" with the phrase "intentional manipulation" of the system, the court observed that "several circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record."[71] Then, citing decisions of other circuits, the court reasoned that whether an intent to manipulate the system can be inferred turns on whether the debtor, *at the time* he breached the duty to disclose the claim, either lacked knowledge of the claim or

---

took under oath in the Bankruptcy Court and thus established the first element of the two-element statement. *Id.* at 1286.

[70] *Id.* Implicit in the court's statement was the notion that the debtor's failure to disclose the lawsuit against his employer in amending the schedules in his Chapter 7 case was the functional equivalent of a false statement under oath that the claim did not exist. *See ante* at 23 & n.18.

[71] *Burnes*, 291 F.3d at 1287.

had no motive for concealing it.[72]  If the debtor knew of the claim or had a motive

for concealing it, the failure to disclose the claim could not have been inadvertent

or a mistake.[73]

The court concluded that the record before it contained "sufficient evidence

from which to infer intentional manipulation by [the debtor]"[74] as a matter of law,

and thus affirmed the District Court's grant of summary judgment to the defendant.

The debtor obviously knew about the Title VII litigation pending against the

---

[72]  *Id.*  The *Burnes* Court cited, among other cases, *PaylessWholesale Distribs. Inc. v. Alberto Culver (P.R.), Inc.*, 989 F.2d 570 (1st Cir. 1993), which the court characterized as "holding that judicial estoppel barred a former debtor from asserting racketeering, antitrust and fraud claims because the debtor intentionally failed to disclose the claims in a prior bankruptcy proceeding, even though [the debtor] knew about the claims and had the motive to conceal them."  *Burnes*, 291 F.3d at 1287.  The *Burnes* Court also turned its focus to *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417–18 (3d Cir. 1988), in which the Third Circuit held, "Oneida had knowledge of its claim *when it completed the schedule of assets* in the bankruptcy, and . . . it also had the motive to conceal the claims because creditors may have voted against the reorganization had they known about the potential offset."  *Burnes*, 291 F.3d at 1287.

Judicial estoppel is triggered when the debtor breaches the duty of disclosure (and his adversary in the district-court action discovers the breach).  The time of the breach is critical.  *See ante* at 23 & n.18; *see also Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (observing that "whether Love had a financial motive to conceal his claims against Tyson *at the time Love failed to meet his disclosure obligations* . . . is the relevant time frame for the judicial estoppel analysis."); *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276 (11th Cir. 2010) ("When reviewing potential motive, the relevant inquiry is intent at the *time of non-disclosure.*" (emphasis added)).

[73]  *Burnes*, 291 F.3d at 1287 ("'[T]he debtor's failure to satisfy its statutory disclosure duty is "inadvertent" only when, in general, the debtor either lacks knowledge or the undisclosed claims or has no motive for their concealment.'"  (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999))).

[74]  *Id.*  The court does not identify the "judicial system"—whether the Bankruptcy Court or the District Court—the debtor intended to manipulate.  *See infra* note 153.  I suggest that it was the Bankruptcy Court's because the intent to manipulate occurred at the moment the debtor amended his bankruptcy schedules but omitted to disclose his Title VII claim and the litigation against his employer.

defendant when he amended his schedule of assets but failed to disclose the

litigation, and he had a motive for concealing it:

> As to motive, it is undisputed that [the debtor] stood to gain an advantage by concealing the claims from the bankruptcy court. It is unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages.[75]

That the debtor's failure to disclose the claim could be remedied if his

Chapter 7 case were reopened was, in the court's view, irrelevant because

> [t]he success of our bankruptcy laws requires a debtor's full and honest disclosure. Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.[76]

Shifting the focus of the judicial-estoppel inquiry from preserving the integrity of

the judicial system to punishing the debtor for failing to fully disclose his assets,

the *Burnes* Court set the stage for the doctrine's final extension in *Barger*.

---

[75] *Burnes*, 291 F.3d at 1288.

[76] *Id.*

58

2.

a.

*Barger v. City of Cartersville*[77] further weakened the intent requirement by reinforcing *Burnes*'s conclusion that it would diminish debtors' "necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets" if a noncompliant debtor were "allow[ed] to back up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary."[78]  In *Barger*, the debtor, Donna Barger, sued the City of Cartersville after a demotion, seeking reinstatement.[79]  Shortly thereafter, she also sought Chapter 7 bankruptcy relief.[80]  While her bankruptcy estate was being administered, she amended her complaint against the City to seek compensatory and punitive damages in addition to reinstatement.[81]  Because she was now seeking damages, she was required to amend her bankruptcy filings but failed to do so.[82]

---

[77]  *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003).

[78]  *Id.* at 1297 (quoting *Burnes*, 291 F.3d at 1288).

[79]  *Id.* at 1291.

[80]  *Id.*

[81]  *Id.*

[82]  *Id.*  In *Burnes,* the court held that the debtor's "undisclosed claim for *injunctive relief* offered nothing of value to the estate and was of no consequence to the trustee or the creditors." *Burnes*, 291 F.3d at 1289 (emphasis added).  Thus, the debtor's failure to schedule that claim did not constitute a breach of the disclosure requirements of 11 U.S.C. § 521(a)(1)(B)(i) and (iii), and Rule 1007 of the Federal Rules of Bankruptcy Procedure.  *See infra* notes 171–175 and accompanying text.  Relying on *Burnes*, the *Barger* Court came to the same conclusion regarding

When the City discovered this it moved the District Court for summary judgment based on judicial estoppel, and the bankruptcy trustee intervened.[83] The debtor responded by moving the Bankruptcy Court to reopen her case[84] so she could disclose the litigation.[85] Although the City objected to reopening the case[86] the court exercised its discretion and granted Barger's motion.[87]

---

"Barger's claim for injunctive relief (*i.e.* her request for reinstatement)." *See Barger*, 348 F.3d at 1297.

[83] Without elaboration, this court attributed to the trustee the debtor's conduct in concealing her claims against the City and the pending District Court litigation even though "it seem[ed] clear that Barger [had] deceived the trustee." *Barger*, 348 F.3d at 1296.

> Barger did not tell the trustee that she was . . . seeking . . . liquidated damages, compensatory damages, and punitive damages. She did not inform the trustee about these additional damages even though she added them to her prayer for relief [in the District Court litigation] a mere two days before the creditors meeting [conducted by the trustee].

*Id.*

[84] There appears to be an additional wrinkle not dealt with by the courts in the *Barger* litigation that is worth mentioning. It relates to the automatic stay created by 11 U.S.C. § 362. Section 362 provides, in pertinent part, that the filing of a voluntary petition for bankruptcy relief "operates as a stay . . . of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and that "the stay of an act against property of the estate . . . continues until such property is no longer property of the estate," *id.* § 362(c)(1).

When the City opposed the debtor's, Barger's, motion to reopen her Chapter 7 case on the ground that the trustee would be estopped to pursue the claims that she had been litigating in the District Court, the City was engaging in an "act to obtain possession of property of the estate." That act was a nullity. *See United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) ("It is the law of this Circuit that '[a]ctions taken in violation of the automatic stay are void and without effect.'" (quoting *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982)). In the same vein, if the City initiated an adversary proceeding in the Chapter 7 case to obtain a declaration that the claims at issue belonged to the City via the operation of judicial estoppel, that proceeding would be a nullity as well.

[85] *In re Barger,* 279 B.R. 900, 901 (Bankr. N.D. Ga. 2002). Rule 5010 of the Federal Rules of Bankruptcy Procedure, which governs reopenings, provides:

> A case may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee

60

As indicated in the order, the court first decided that it had the authority to reopen the Chapter 7 case.[88]  Under 11 U.S.C. § 350(b), the case could be "reopened . . . to administer assets, to accord relief to the debtor, or for other cause."[89]  The claims against the City, which became assets of the debtor's estate on the filing of the Chapter 7 petition but were not scheduled, remained assets of the estate after the case closed since the claims had not been abandoned by the trustee[90] or otherwise administered.  "It would ordinarily follow," the court

---

is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

Fed. R. Bankr. P. 5010.

The Bankruptcy Court "has broad discretion to reopen to permit administration of assets."  9 Collier on Bankruptcy, ¶ 5010.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re Faden*, 96 F.3d 792, 796 (5th Cir. 1996); *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993); *see also In re Upshur*, 317 B.R. 446, 451 (Bankr. N.D. Ga. 2004) ("Although a motion to reopen is addressed to the sound discretion of the bankruptcy court, the court in fact has a duty to reopen the estate whenever there is proof that it has not been fully administered. The proper focus is on the benefit to the creditors, so that if the action has any value, the case should be reopened.").

If the Bankruptcy Court granted the debtor's motion to reopen, the debtor could amend her schedules as a matter of right under Rule 1009 of the Federal Rules of Bankruptcy Procedure, "Amendments of Voluntary Petitions, Lists, Schedules and Statements."  Rule 1009, "General Right to Amend," states, in pertinent part: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.  The debtor shall give notice of the amendment to the trustee and to any entity affected thereby."  Fed. R. Bankr. P. 1009(a).

[86]  The City had standing to object to the debtor's motion to reopen.  *In re Lewis*, 273 B.R. 739, 749 (Bankr. N.D. Ga. 2001).

[87]  *In re Barger,* 279 B.R. at 909.

[88]  *Id.*

[89]  11 U.S.C. § 350(b).

[90]  *In re Barger*, 279 B.R. at 905.  "Abandonment of property of the estate," 11 U.S.C. § 554, states, in pertinent part:

61

concluded, "that the case should be reopened to administer the claim[s] for the benefit of creditors."[91] The Bankruptcy Court did, however, address the question of whether the doctrine of judicial estoppel, as applied in *Burnes,* should foreclose Barger's motion. In the court's mind, the question turned on whether the debtor, in failing to amend her schedules, "operate[d] with an intentional or manipulative disregard of the legal system or the bankruptcy processes in this Court."[92] The court found that she had not.

> She truthfully and voluntarily disclosed the existence of the Litigation to the Trustee, the person responsible for pursuing it, whether or not it had been scheduled. Her counsel's failure to amend her schedules could not, and did not, gain any advantage for her and, indeed, that failure was actually adverse to her interests. Her counsel has admitted that this failure was inadvertent oversight and there is nothing in the record or this Court's experience that would indicate otherwise.

---

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> . . . .
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554. "*[P]roperly scheduled assets* that are not administered at the time the case is closed are deemed abandoned." 3 Collier on Bankruptcy, ¶ 350.03 (emphasis added). While the Chapter 7 case was ongoing, the trustee was unaware of the claims against the City and, thus, could not have abandoned them.

[91] *In re Barger,* 279 at 904. The court added that "[w]hether that administration would also benefit [the debtor] remains to be seen. . . . Unless [the debtor] is entitled to exempt the claim, creditors will receive the benefit of any recovery, after payment of fees and expenses [of the litigation], under the distributive provisions of 11 U.S.C. § 726." *Id.*

[92] *Id.* at 908.

> The Federal Rules of Bankruptcy Procedure are to be construed ''to secure the just, speedy, and inexpensive determination of every case and proceeding.'' FED. R. BANKR. P. 1001. It would not serve the objectives of those Rules to hold that, in these circumstances, Debtor's failure to amend schedules to list a claim that had been voluntarily disclosed to the Chapter 7 Trustee at the § 341(a) meeting of creditors should preclude reopening of the case to correct that failure. To the contrary, because the voluntary disclosure to the trustee served the same substantive purpose as an amendment, because Debtor did not and could not benefit by the failure to amend, and because the failure is due to inadvertence, the just determination of this case requires reopening so that the claim can be administered.[93]

Assuming, however, that the debtor was at fault for failing to amend her schedules, the court noted that the bankruptcy law provided "punishments other than judicial estoppel that can be directed at a debtor, rather than the estate and creditors," to deter debtors from concealing their assets, including sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure,[94] revocation of the discharge,[95] or

---

[93] *Id.*

[94] If a debtor were to make a false statement in his schedule of assets, Rule 9011 of the Federal Rules of Bankruptcy Procedure provides authority for the Bankruptcy Court to sanction him. Fed. R. Bankr. P. 9011. Rule 9011(b) provides that "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief" that "the allegations and other factual contentions have evidentiary support" and that "the denials of factual contentions are warranted on the evidence or, if so identified, are reasonably based on a lack of information or belief." Fed. R. Bankr. P. 9011(b). If a party violates Rule 9011(b) by filing a schedule denying that he has any claims when he does, in fact, have claims such that that statement is a "denial . . . [not] warranted on the evidence," then "the court may . . . impose an appropriate sanction" on the debtor. Fed. R. Bankr. P. 9011(c).

[95] Under 11 U.S.C. § 727, "Discharge," the Bankruptcy Court may deny a debtor a discharge for concealing property of the estate or the trustee or a creditor may request the revocation of a discharge obtained through fraud. Section 727 states, in pertinent part:
    (a) The court shall grant the debtor a discharge, unless—

denial of any exemption in the claim and its proceeds.[96]    Recognizing that judicial

estoppel was a discretionary doctrine,[97] the court concluded that the "important

interests of creditors, militate[d] against its application."[98]

---

. . . .
   (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has . . .
concealed—
     (A) property of the debtor, within one year before the date of the filing of the
     petition; or
     (B) property of the estate, after the date of the filing of the petition;
  . . .
(c) (1) The trustee, a creditor, or the United States trustee may object to the
granting of a discharge under subsection (a) of this section.
    (2) On request of a party in interest, the court may order the trustee to examine
    the acts and conduct of the debtor to determine whether a ground exists for
    denial of discharge.
 (d) On request of the trustee, a creditor, or the United States trustee, and after
 notice and a hearing, the court shall revoke a discharge granted under subsection
 (a) of this section if—
    (1) such discharge was obtained through the fraud of the debtor, and the
    requesting party did not know of such fraud until after the granting of such
    discharge;
    (2) the debtor acquired property that is property of the estate, or became
    entitled to acquire property that would be property of the estate, and
    knowingly and fraudulently failed to report the acquisition of or entitlement to
    such property, or to deliver or surrender such property to the trustee;
    . . . .
 (e) The trustee, a creditor, or the United States trustee may request a revocation
 of a discharge—
    (1) under subsection (d)(1) of this section within one year after such discharge
    is granted; or
    (2) under subsection (d)(2) or (d)(3) of this section before the later of—
      (A) one year after the granting of such discharge; and
      (B) the date the case is closed.
11 U.S.C. § 727.
   [96] *In re Barger*, 279 B.R. at 908 (citing *In re Lewis*, 273 B.R. 739, 748 (Bankr. N.D. Ga.
2001)).
   [97] The Bankruptcy Appellant Panel of the Ninth Circuit, in reversing the Bankruptcy
Court's denial of a motion to reopen filed by a debtor, who, like Barger, had failed to schedule a
lawsuit she had filed against her employer, stated that there are methods other than judicial
estoppel for punishing a contumacious debtor:

It [would be] incongruous to punish Debtor's creditors and impair their prospects for a potential recovery in the bankruptcy case in order to improve the City's judicial estoppel argument in District Court.  In *In re Daniel,* 205 B.R. 346 (Bankr. N.D. Ga. 1997) (Murphy, J.), the court observed that reopening a bankruptcy case in order for a debtor to disclose an asset is appropriate even if it deprives a defendant of a judicial estoppel defense.[99]

Moreover, "[a]ny advantage which Debtor may have gained by omitting the asset from her schedules is eliminated by reopening, amending the schedules and allowing the Chapter 7 Trustee to administer the asset."[100]  The court concluded that "the interests of Debtor's creditors override any detriment that the City may sustain as a result of reopening the case and that the Debtor's conduct does not preclude such reopening."[101]

---

[A]ny legitimate concerns about a former debtor's misconduct can be addressed by other methods, rather than refusing to reopen a bankruptcy case. In appropriate situations a debtor can be subject to prosecution and penalties. *See, e.g.*, 18 U.S.C. §§ 152 and 3571. If a debtor shows bad faith, or if third parties are prejudiced by nondisclosure of an asset, then the bankruptcy court can exercise its discretion to disallow any claimed exemption in the asset, in whole or in part. In the circumstances of this appeal, where all creditors might get paid in full, Lopez still might receive a substantial portion of any recovery in the Action (11 U.S.C. § 726(a)(6)), but presumably that recovery would be because the Action had merit, not because Lopez gained any advantage by failing to list the Action.

*In re Lopez*, 283 B.R. 22, 30 (B.A.P. 9th Cir. 2002) (citation omitted).

[98]  *In re Barger*, 279 B.R. at 908.

[99]  *Id.* at 909.

[100]  *Id.* (quoting *In re Daniel*, 205 B.R. at 349).

[101]  *Id.*

65

The District Court then applied judicial estoppel and granted the City's

motion for summary judgment.[102]  In doing so, the court effectively rejected the

Bankruptcy Court's findings and conclusions, and substituted its own, to-wit: the

debtor, in failing to list the claims and her lawsuit against the City in her schedules,

intended to manipulate the judicial system.[103]

b.

On appeal, this court applied the two-element statement in determining

whether the City had established the defense of judicial estoppel.[104]  This meant

the City's task was two-fold:  "First, . . . [Barger]'s allegedly inconsistent positions

must have been 'made under oath in a prior proceeding.'  Second, the

---

[102] *See Barger*, 348 F.3d at 1292. Before it entered its final judgment in the case, the District Court was aware that the debtor's claims were assets of her bankruptcy estate and that the trustee could succeed to her position pursuant to Rule 25(c) of the Federal Rules of Civil Procedure. *Id.*  The District Court did not order the substitution, but this court did on appeal: "Since the district court never directed the Trustee to substitute for Barger or join in her in this suit, the Trustee simply takes Barger's place from hereon." *Id.* at 1293.

[103] In substituting its own findings and conclusions for the Bankruptcy Court's, the District Court was not exercising its role as an appellate court reviewing an interlocutory order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(3). *See In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 725 (11th Cir. 1995) ("[A] district court, at its discretion, may review interlocutory judgments and orders of a bankruptcy court . . . ."). Rather, the District Court was ruling on the question of whether to grant the City summary judgment based on its affirmative judicial estoppel defense. *See Barger*, 348 F.3d at 1292.

[104] At this point, the trustee had intervened, as this court recognized that the debtor lacked standing. *Id.*  Without elaboration, this court attributed to the trustee the debtor's conduct in concealing her claims against the City and the pending District Court litigation even though "it seem[ed] clear that Barger [had] deceived the trustee," *id.* at 1296:
> [She] did not tell the trustee that she was . . . seeking . . . liquidated damages, compensatory damages, and punitive damages.  She did not inform the trustee about these additional damages even though she added them to her prayer for relief [in the District Court litigation] a mere two days before the creditors meeting [conducted by the trustee].

*Id.*

66

'inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'"[105]

The City, of course, could show that the claims Barger was asserting in the District Court were inconsistent with the claims she had presented to the Bankruptcy Court and that her Statement of Financial Affairs to the Bankruptcy Court was, by its very nature, under oath.[106]

Having satisfied the first prong, the City still had to show that Barger filed the false statement with the intent to manipulate the judicial system:

> [T]he issue here is intent. For purposes of judicial estoppel, intent is a purposeful contradiction—not simple error or inadvertence. "[D]eliberate or intentional manipulation can be inferred from the record," where the debtor has knowledge of the undisclosed claims and has motive for concealment.[107]

Because the court accepted that Barger's intent to manipulate the judicial system was inferable as a matter of law, the City was able to make this showing and thus satisfy both prongs of the test.[108]  The court noted that Barger had knowledge of the claims she was pursuing against the City at the time she failed to disclose the claims, and found that she had a motive for concealing them.[109]

> Barger appeared to gain an advantage when she failed to list her discrimination claims on her schedule of assets. Omitting the

---

[105]  *Id.* at 1293–94 (citation omitted) (quoting *Salomon,* 260 F.3d at 1308).

[106]  *See supra* note 70.

[107]  *Barger*, 348 F.3d at 1294 (quoting *Burnes*, 291 F.3d at 1287).

[108]  *Id.* at 1294–97.

[109]  *Id.*  The intent to manipulate the bankruptcy system occurred at the moment Barger was under a duty to disclose her pending claims but did not do so.  *See supra* note 60.

discrimination claims from the schedule of assets appeared to benefit her because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate. Thus, Barger's knowledge of her discrimination claims and motive to conceal them are sufficient evidence from which to infer her intentional manipulation.[110]

The court affirmed the District Court's application of judicial estoppel because the City had satisfied the two-element statement's requirements.

3.

Though the doctrine of judicial estoppel as expressed by *Burnes* and *Barger* continues to be binding precedent in this circuit,[111] a subsequent panel reached a directly contrary decision in *Parker v. Wendy's International, Inc.*,[112] a case presenting a set of facts materially indistinguishable from those in *Barger*.[113] The *Parker* Court concluded that "[t]he correct analysis here compels the conclusion that judicial estoppel should not be applied at all" to bar the trustee of the

---

[110] *Id.* at 1296 (citing *Burnes*, 291 F.3d at 1287).

[111] Under this court's prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (per curiam) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)).

[112] *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004).

[113] I must confess that I sat on the panel that decided *Parker*, whose decision inadvertently violated this circuit's prior-panel-precedent rule and reached a result opposite to the one compelled by *Burnes* and *Barger*, as well as the panel that decided *Salomon*, which actually turned on an unspecified state-law source of the doctrine but relied on the Eleventh Circuit's formulation then in effect. Therefore, I bear part of the responsibility for allowing the current state of judicial estoppel to persist unresolved for as long as it has. Mea culpa, mea maxima culpa. "Under these circumstances, except for any personal humiliation involved in admitting that I do not always understand the opinions of this Court, I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday." *See Massachusetts v. United States*, 333 U.S. 611, 639–40, 68 S. Ct. 747, 763, 92 L. Ed. 968 (1948) (Jackson, J., dissenting).

bankruptcy estate from pursuing an undeclared lawsuit.[114]  Because the trustee had

not been "tainted or burdened by the debtor's misconduct"—the post-petition

inconsistent statements in the Bankruptcy Court and in the District Court—it

would be inappropriate to punish the trustee in the debtor's stead, and by extension

deprive the debtor's creditors of property that belonged, by operation of law, to the

estate.[115]

Notably, though the *Parker* panel cited each *New Hampshire*, *Burnes*, and

*Barger* multiple times, it never explained why *Barger* did not dictate the result.[116]

Many courts and commentators have cited *Parker* favorably, often mistakenly

referring to *Parker* as the Eleventh Circuit's controlling statement of judicial

estoppel.[117]  Indeed, the Fifth Circuit, sitting en banc, relied extensively on

*Parker*'s logic to overturn a panel decision applying judicial estoppel to bar an

innocent trustee from pursuing an undisclosed claim.[118]  As the decision in *Parker*

demonstrates, the current state of our judicial-estoppel jurisprudence is both

---

[114]  *Parker*, 365 F.3d at 1272.

[115]  *Id.* at 1271–73.

[116]  Disagreement with the reasoning of prior precedent is not alone a basis for disregarding that precedent.  *See In re Lambrix*, 776 F.3d at 794.  The *Parker* Court did question whether the debtor in *Burnes* lacked standing but said nothing as to the propriety of the controlling *Barger* decision.  *See Parker*, 365 F.3d at 1272.

[117]  *See, e.g.*, *Stephenson v. Malloy*, 700 F.3d 265, 271 (6th Cir. 2012); *Reed v. City of Arlington*, 650 F.3d 571, 578 (5th Cir. 2011) (en banc); *Perry v. Blum*, 629 F.3d 1, 9 (1st Cir. 2010); George Klidonas & Regina L. Griffin, *Estoppel Does Not Extend to Innocent Trustees*, 30 Am. Bankr. Inst. J. 44, 44 n.6 (Nov. 2011).

[118]  *See Reed*, 650 F.3d at 578–79.

confused and confusing, calling to mind the old saw that justice ought not be dispensed under a rule that varies by the length of the presiding judge's foot.[119]

### D.

In sum then, trying to reconcile this court's decisions applying judicial estoppel as a uniform doctrine proves problematic, to say the least. The vast majority of the decisions discussed above fall in the category Wright, Miller & Cooper labels the "still more open-ended approach."[120] And with minimal exception, all focus on and penalize the same "unseemly adversarial behavior"— taking false positions under oath.[121]

Judicial estoppel first became this court's law in *Chrysler Credit,* which involved statements under oath in two forums, a North Carolina court and the Bankruptcy Court, and held that the doctrine's purpose was to prevent parties from "attempt[ing] to manipulate the court system through the calculated assertion of

---

[119] As then–Lord Chancellor John Scott, who later became the first Earl of Eldon, admonished,

> The doctrines of this Court ought to be as well settled, and made as uniform almost as those of the common law, laying down fixed principles, but taking care that they are to be applied according to the circumstances of each case. . . . Nothing would inflict on me greater pain, in quitting this place, than the recollection that I had done anything to justify the reproach that the equity of this court varies like the Chancellor's foot.

*Gee v. Pritchard*, (1818) 2 Swans. 402, 414.

[120] 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4477 (2d ed. 2002). As far as I can tell, this is so with the exception of *Riviera Beach* and *Tampa Bay Water. See supra* note 28.

[121] The exceptions are again *Riviera Beach* and *Tampa Bay Water. See also infra* note 129.

70

divergent sworn positions in judicial proceedings."[122]  In so many words, we said that permitting a party to assert under oath a position directly contrary to a position he had taken under oath in a former judicial proceeding would pervert the judicial process.[123]  Judicial estoppel, in barring the asserted position, protects that process.

In *McKinnon,* the court adhered to the *Chrysler Credit* formulation of the doctrine and said, in effect, that in attempting to manipulate the court system through the assertion of divergent sworn positions, a party was "making a mockery of justice by inconsistent pleadings."[124]  In *Salomon,* a diversity case,[125] after reiterating verbatim the divergent-sworn-positions-and-mockery-of-justice rule, the court stated that: "[t]his circuit's approach contemplates two elements.  First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system,"[126] the two-element statement.  Because the court was applying a state-law version of judicial estoppel, the added sentence had no effect on the federal version of the doctrine this court had adopted in *Chrysler Credit* and applied foursquare in *McKinnon.*

---

[122]  *Chrysler Credit*, 842 F.2d at 1261 (quoting *Johnson Serv.*, 585 F.2d at 174).  In that case, Rebhan was actually attempting to manipulate the system in the Bankruptcy Court by asserting under oath a position directly contrary to the position he had taken in a North Carolina court also under oath.  *See id.*

[123]  *Id.*

[124]  *McKinnon*, 935 F.2d at 1192 (quoting *Am. Nat'l Bank*, 710 F.2d at 1536).

[125]  *See* 28 U.S.C. § 1332.

[126]  *Salomon*, 260 F.3d at 1308.

71

Nine months later, in *Burnes*, a federal-question case, the court treated

*Salomon* as if it were a federal-question case rather than a diversity case and

adopted the two-element statement as expressing the burden of proof a party must

satisfy to invoke judicial estoppel before the District Court.[127]  A party need only

show that the debtor is prosecuting a claim that he had not disclosed to the

Bankruptcy Court as required by 11 U.S.C. § 521(a).

The *Burnes* Court would have realized, of course, that there is a difference

between the requirements of the divergent-sworn-positions-and-mockery-of-justice

rule and the two-element statement in terms of what a party must prove to establish

the judicial-estoppel defense and that it was bound to apply the divergent-sworn-

positions-and-mockery-of-justice rule, if applicable.  I assume that the court

considered the divergent-sworn-positions-and-mockery-of-justice rule inapplicable

in the sense that *Chrysler Credit* (which *McKinnon* followed) set an example by

formulating a version of judicial estoppel appropriate for the specific factual

situation presented in that case.[128]  *Chrysler Credit* gave the court leeway to do the

same thing, to fashion a rule for the specific situation at hand.[129]  Moreover, as the

---

[127]  *See Burnes*, 291 F.3d at 1285–86 (adopting the two-element statement).

[128]  *Chrysler Credit*, 842 F.2d at 1261 ("Because this is a bankruptcy case, involving . . . issues of dischargeability, we are . . . free to apply a formulation of the judicial estoppel doctrine as we think proper.").

[129]  "We conclude that the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions [in *New Hampshire*], and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." *Burnes*, 291 F.3d at 1285–86.

court noted, the Supreme Court in *New Hampshire* acknowledged that "the

---

I posit that this is what this court did first in *City of Riviera Beach v. That Certain Unnamed Gray, Two-Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259 (11th Cir. 2011), *rev'd on other grounds sub nom. Lozman v. City of Riviera Beach*, 568 U.S. ___, 133 S. Ct. 735, 184 L. Ed. 2d 604 (2013), and then in *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171 (11th Cir. 2013); it formulated a version of judicial estoppel appropriate for the circumstances at hand, although in neither case did it invoke doctrine. *Riviera Beach* was an *in rem* proceeding in admiralty. *Riviera Beach*, 649 F.3d at 1262. The appellant, Lozman, argued that Riviera Beach was judicially estopped from bringing a maritime claim against the defendant vessel because its position was allegedly inconsistent with its position (neither of which was under oath) in *an earlier lawsuit between the same parties*. *Id.* at 1265. In rejecting the estoppel argument, the court cited *McKinnon*, with the exception of the "divergent sworn positions" element of the divergent-sworn-positions-and-mockery-of-justice rule, *id.* at 1275, and *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006), which adhered to the elements of the doctrine *New Hampshire* invoked:

> Judicial estoppel is "designed to prevent parties from making a mockery of justice by inconsistent pleadings." *McKinnon*[, 935 F.3d at 1192]. While judicial estoppel "cannot be reduced to a precise formula or test," *Zedner*[, 547 U.S. at 504, 126 S. Ct. at 1976], three factors typically inform the inquiry: (1) whether there is a clear inconsistency between the earlier position and the later position; (2) a party's success in convincing a court of the earlier position, so that judicial acceptance of the inconsistent later position would create the perception that either the earlier or later court was misled; and (3) whether the inconsistent later position would unfairly prejudice the opposing party if not estopped.

*Riviera Beach*, 649 F.3d at 1273. In *Tampa Bay Water*, Tampa Bay argued that HDR Engineering was estopped because of an inconsistent position it had taken in an earlier phase of *the same case* (not under oath). 731 F.3d at 1177. The court did not apply the doctrine because the positions were not inconsistent. *Id.* at 1182. Though it did not cite *Riviera Beach* for the version of the doctrine it considered, the court repeated *Riviera Beach*'s version verbatim. The *Tampa Bay Water* Court also cited this Circuit's earlier recitation of the three *New Hampshire* elements (which *Zedner* reiterated) in *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010), but not the *Burnes* formulation, which the *Robinson* Court actually applied in these words:

> The seminal case in the Eleventh Circuit on the theory of judicial estoppel is *Burnes* . . . . Incorporating the standards enumerated by the Supreme Court, *Burnes* outlined two primary factors for establishing the bar of judicial estoppel. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes* recognized that these factors are not exhaustive; rather, courts must always give due consideration to the circumstances of the particular case.

*See id.* at 1273 (citation omitted) (quoting *Burnes*, 291 F.3d at 1285). Neither *Riviera Beach* nor *Tampa Bay Water* has been cited in any of our reported opinions in cases presenting the *Burnes–Barger* context and the situation here.

73

circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle."[130]

So, the *Burnes* Court formulated a different version of judicial estoppel, one appropriate for the situation before it. Judicial estoppel can apply even though the debtor's inconsistent position in the District Court is not under oath. This no doubt explains why the *Burnes* opinion does not identify the position the debtor took under oath in that court.[131] All that matters is that the debtor got caught prosecuting a lawsuit he had concealed from the Bankruptcy Court. The *Barger* Court thereafter applied *Burnes*'s formulation of the doctrine to estop a bankruptcy trustee who had been substituted as plaintiff for the debtor, who lacked standing to sue.[132]

Under *Barger*, a trustee will be able to avoid summary judgment only if, on the evidence presented,[133] it could reasonably be inferred that at the time the debtor failed to disclose the claim and the litigation to the Bankruptcy Court, the debtor

---

[130] *Burnes*, 291 F.3d at 1285 (quoting *New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815).

[131] Like the *Burnes* opinion, the *Barger* opinion does not identify the position the debtor took under oath in the District Court.

[132] This is the scenario the instant case presents, except that, at the time the District Court granted U.S. Steel summary judgment, Slater was proceeding as the debtor in possession of her Chapter 13 bankruptcy estate and not as the trustee of the estate.

[133] The court would consider the evidence in the light most favorable to the trustee.

either lacked knowledge of the claim or a motive for concealing it or, conversely, that the nondisclosure was inadvertent or a mistake.[134]

As a practical matter, the evidence will yield neither inference.[135] Moreover, that the trustee lacked knowledge of the debtor's nondisclosure or the nondisclosure was the debtor's lawyer's fault is irrelevant.[136] In truth, to say that a trustee could avoid summary judgment if he established that the debtor's nondisclosure was inadvertent or a mistake is to say that the trustee could not establish either fact. The words inadvertent and mistake are meaningless.

Given this reality, a bankruptcy trustee has two options. The first assumes that the value of the debtor's previously undisclosed claim is such that it would be prudent to expend the funds necessary to seek en banc review of the *Barger* precedent. Two alternative routes to the en banc court would be available. The first would begin in the District Court. The trustee would intervene in the case the debtor brought in the District Court and suffer an adverse judgment there and in

---

[134] *See supra* Part II.C.2.

[135] This is essentially what the Fifth Circuit observed in *Love v. Tyson Foods, Inc.*:
As one court has stated, "the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." Similarly, this court has found that debtors had a motivation to conceal where they stood to "reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors."
677 F.3d 258, 262 (5th Cir. 2012) (citations omitted).

[136] *See Barger*, 348 F.3d at 1295–96; *supra* notes 71–76 and accompanying text.

this court on appeal.[137]  The second would begin in the Bankruptcy Court.  The trustee would commence an adversary proceeding and suffer an adverse judgment there, in the District Court,[138] and in this court on appeal.[139]

The second option, which the trustee would take if the value of the claim did not counsel taking the first option, would be to abandon the claim pursuant to 11 U.S.C. § 554,[140] in which event the claim would revert to the debtor.  The claim would be worthless.  The party potentially liable on the claim would not honor the claim because, if the debtor sued, judicial estoppel would bar the claim.[141]

In sum, as long as the *Barger* decision continues to be binding precedent, the trustee of the bankruptcy estate will be unable to step in for the debtor and prosecute the claim he tried to conceal from the Bankruptcy Court.  By operation

---

[137]  *See* 28 U.S.C. § 1291.

[138]  *Id.* § 158(a)(3).

[139]  *Id.* § 158(d).

[140]  Section 554, "Abandonment of property of the estate," states, in pertinent part:
(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
. . . .
 (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
11 U.S.C. § 554.  After the District Court issued an order dismissing the debtor's claim for lack of standing, the trustee would inform the District Court that he was opting not to intervene, in which event the court would enter a final judgment dismissing the case without prejudice.  At this point, the claim would be sitting in the bankruptcy estate subject to administration by the trustee.

[141]  The debtor could file the lawsuit because the District Court would have dismissed the earlier suit without prejudice for the debtor's lack of standing.

of law, due to a judgment based on judicial estoppel, the claim will be conveyed from the bankruptcy estate to the party potentially liable to the estate, or the claim will be abandoned to the debtor as a worthless asset.

Allowing the first of these two outcomes by continuing to apply a precedent that has long been detached from its moorings in equity only guarantees the very mockery of justice the doctrine of judicial estoppel was designed to avoid.

### III.

In Part III., having discussed the doctrine's historical underpinnings at some length, I begin unpacking the effect of the judicial estoppel mandated by *Burnes v. Pemco Aeroplex, Inc.*[142] and *Barger v. City of Cartersville*[143] by explaining how their continued application fails both to preserve the integrity of the judicial system and to punish and deter oath-breaking. Then, I turn to the impropriety of fashioning such an equitable remedy in the face of the perfectly adequate range of criminal and civil legal remedies designed by Congress to apply across proceedings in the bankruptcy system, which are in clear tension with the invocation of judicial estoppel. I conclude my analysis with the observation that this state of affairs, which cannot be justified as an exercise of this or any court's equitable power and works to impugn, rather than preserve, the judicial system's integrity, must be set straight by the en banc court.

---

[142] *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002).
[143] *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003).

A.

1.

Before explaining why applying judicial estoppel as required by *Burnes* and *Barger* fails to achieve that doctrine's purpose, it is first necessary to flush out exactly what that purpose is and what it is not.  Judicial estoppel, properly understood, is concerned with the "integrity of the judicial system, not the litigants."[144]  It focuses on the "'judicial process'"[145]—specifically, the intentional use of "'inconsistent positions'"[146] or "'inconsistent pleadings'"[147] to "manipulate the judicial system"[148] or to "'make a mockery of the judicial system.'"[149]  What might constitute "a mockery of justice" is elusive.  Our cases don't define the phrase.[150]  I assume that the intentional manipulation of a judicial system would constitute a mockery of justice.

---

[144]  *Burnes*, 291 F.3d at 1286.

[145]  *Id.* at 1285 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001)).

[146]  *Id.* (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001), *cert. granted and vacated on other grounds*, 537 U.S. 1085, 123 S. Ct. 718, 154 L. Ed. 2d 629 (2002)).

[147]  *Id.* (quoting *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983)).

[148]  *Id.*

[149]  *Id.* (quoting *Salomon*, 260 F.3d at 1308).

[150]  I do not include the habeas cases decided by the former Fifth Circuit that are discussed in note 42 *supra*.

The doctrine's *sine qua non* in the context we're dealing with here is that the debtor's position in the Bankruptcy Court is under oath and is false.[151]  It is false because his position in the District Court is inconsistent with that position.[152]  If the debtor's position in the Bankruptcy Court is not under oath, the doctrine does not apply—even if the debtor intends to manipulate the judicial system.

*Burnes* and *Barger* involved two judicial systems,[153] the District Court's and the Bankruptcy Court's.[154]  Did the District Court apply the doctrine of judicial estoppel and bar the claims in those cases to protect the integrity of both judicial systems or only one?  I posit that the District Court applied the doctrine to protect

---

[151]  During the debtor's prosecution of his claim in the District Court, his position in the Bankruptcy Court is essentially a statement that he is not prosecuting the claim in the District Court—that he possesses no such claim.  That he is prosecuting the claim proves that such statement is false.

[152]  The opposite conclusion was reached in *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir. 1988), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).  There, the debtor made inconsistent statements under oath in a North Carolina court and subsequently in the Bankruptcy Court.  *Id.* at 1261.  In applying the doctrine, the Bankruptcy Court considered the first statement as true and the later statement as false.  *Id.* at 1260.

[153]  The doctrine of judicial estoppel appears to have been originally understood by this court as protecting a unitary "judicial system" against calculating litigants who would take different positions under oath in different courts, causing harm to the system as a whole.  *See, e.g.*, *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973) (describing judicial estoppel as protecting against "those who would attempt to manipulate *the court system* through the calculated assertion of divergent sworn positions in judicial proceedings" (emphasis added)).  But this understanding has given way as the doctrine has been extended so that Article III courts may now invoke judicial estoppel to vindicate the interests of bankruptcy and state courts as well.  *See, e.g.*, *Burnes*, 291 F.3d at 1282 (applying judicial estoppel to a prior inconsistent position taken in bankruptcy court); *Chrysler Credit*, 842 F.2d at 1257 (same for a prior inconsistent position taken in state court).  For purposes of this opinion, I refer to the Bankruptcy Court and the District Court, which serve discrete interests, as separate "judicial systems."

[154]  The same is of course true about the instant case and the *Burnes* and *Barger* progeny.

the system in the Bankruptcy Court only,[155] to cause future debtors to make a full

disclosure of their assets—here, assets in the form of actionable claims for

damages.[156]

The opinions in *Burnes* and *Barger* all but say this explicitly.  The opinions

emphasize at length the need for debtors to disclose their assets and potential assets

to the Bankruptcy Court as required by 11 U.S.C. §§ 521(a)(1)(B)(i) and (iii).

Moreover,

> [t]he duty to disclose is a continuing one that does not end once the
> forms are submitted to the bankruptcy court; rather, a debtor must
> amend his financial statements if circumstances change. Full and
> honest disclosure in a bankruptcy case is crucial to the effective
> functioning of the federal bankruptcy system.  For example, creditors
> rely on a debtor's disclosure statements in determining whether to
> contest or consent to a no asset discharge. Bankruptcy courts also rely
> on the accuracy of the disclosure statements when considering

---

[155] The Fifth Circuit agreed in *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc), a case on all fours with *Barger* in that the debtors' lawsuit was filed prior to the filing of the debtors' Chapter 7 petition and the debtors failed to schedule the judgment as an asset of the bankruptcy estate. *Id.* at 573; *Barger*, 348 F.3d at 1291.  In refusing to invoke the doctrine of judicial estoppel against the bankruptcy trustee, who had intervened in the case after the nondisclosure of the judgment, the court stated:  "This result upholds the purpose of judicial estoppel, which in this context is to *protect the integrity of the bankruptcy process*, by adhering to basic tenets of bankruptcy law and by preserving the assets of the bankruptcy estate for equitable distribution to the estate's innocent creditors." *Reed*, 650 F.3d at 572–73 (emphasis added).

[156] Although bankruptcy courts are not Article III courts, it is not surprising, given their overlapping but distinct spheres of authority, that the district courts would be especially solicitous of the bankruptcy courts' interests. *See Stern v. Marshall*, 564 U.S. ___, ___, 131 S. Ct. 2594, 2609–11, 180 L. Ed. 2d 475 (2011) (explaining the constitutional limits of bankruptcy courts' decisionmaking authority); *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60–76, 102 S. Ct. 2858, 2866–74, 73 L. Ed. 2d 598 (1982) (plurality opinion).

whether to approve a no asset discharge. Accordingly, the importance of full and honest disclosure cannot be overstated.[157]

The *Burnes* and *Barger* debtors failed to disclose the claims they were pursuing, so the dispositive question became whether they intended to mislead the Bankruptcy Court.  In both cases, the District Court found the intent to mislead as a matter of law and, applying the doctrine, granted summary judgment.[158]  In affirming the judgments, this court made it clear that the invocation of judicial estoppel was necessary to protect the bankruptcy system, not the processing of litigation in the District Court.[159] Indeed, the opinions in *Burnes* and *Barger* have nothing to say about the judicial process in the District Court except to state, or imply, that the debtor took an inconsistent position in that court.[160]  The inconsistent position made false the debtor's position in the Bankruptcy Court and thus set the stage for judicial estoppel to perform its service—the protection of the integrity of the bankruptcy system.

The District Court does not need protection from a litigant's assertion of an inconsistent claim (or defense), even where, in another proceeding, the litigant denied under oath the existence of the claim or defense.  In fact, the assertion of inconsistent claims (or defenses) is commonplace in district court litigation.  The

---

157  *Burnes,* 291 F.3d at 1286 (quotations marks and citations omitted).
158  *See Barger*, 348 F.3d at 1292; *Burnes*, 291 F.3d at 1284.
159  *Barger*, 348 F.3d at 1294–97; *Burnes*, 291 F.3d at 1286.
160  *See Barger*, 348 F.3d at 1293–94; *Burnes*, 291 F.3d at 1286.

Federal Rules of Civil Procedure permit their assertion.  As Rule 8(d)(3) provides, "A party may state as many separate claims or defenses as it has, regardless of consistency."[161]

The *Burnes* and *Barger* opinions contain no mention of Rule 8(d)(3)*, much less an explain why it is inoperative when the previous statement was under oath, but operative when the previous statement was not under oath.  I fail to comprehend why an oath should make a difference.

Prior inconsistent statements made under oath are ubiquitous in litigation regardless of the forum in which they are made.  They occur in all sorts of settings—on deposition or in sworn answers to interrogatories in the case being litigated or in previous proceedings.  Prior inconsistent statements are the stuff of impeachment on cross-examination.  If made by a party, the party's adversary may introduce them into evidence as admissions.[162]

Striking a meritorious claim that has been pled as permitted by Rule 8— because the claimant previously swore that the claim did not exist—in order to

---

[161]  Fed. R. Civ. P. 8(d)(3); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims."); *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540–41 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency.").

The substance of Rule 8(d)(3) has been in effect since the adoption of the Federal Rules of Civil Procedure in 1937, when the then-current version provided that "[a] party may . . . state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both.  All statements shall be made subject to the obligations set forth in Rule 11."  Fed. R. Civ. P. 8(e)(2) (1937).

[162]  *See* Fed. R. Evid. 801(d)(2).

protect the integrity of the judicial process in the District Court is inconceivable to me.[163] I cannot imagine a District Judge dismissing a cognizable claim simply because the debtor previously stated under oath that the claim did not exist. The *Barger* Court, however, read *Burnes* as commanding District Judges to do just that, even though the claim no longer belongs to the debtor, but to the bankruptcy estate instead, and that the estate's trustee is pursuing the claim for the benefit of the creditors, who are innocent of the debtor's transgression.

In affirming the dismissal of the trustee's claims, the *Barger* Court acknowledged that the trustee was faultless,[164] and thus beyond sanction. The court also knew that the creditors would be bearing the loss of the claims' value, which the District Court's judgment would, by operation of law, transfer to the defendant as a pure windfall. The rationale for such a disposition is the one the

---

[163] Throughout this special concurrence, I am assuming that the claims that are estopped are at least potentially meritorious, in that they have withstood, or are capable of withstanding, a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). I am also assuming that the bankruptcy trustee (who has replaced the debtor, who lacks standing) is not subject to sanction under Rule 11 of the Federal Rules of Civil Procedure. After all, in order for the District Court to treat the debtor's position in the Bankruptcy Court as false, it must assume that debtor's position in the District Court litigation, which the trustee has endorsed, is true.

[164] *Barger*, 348 F.3d at 1296; *see supra* note 104. The court said this in response to the Bankruptcy Court's statement that the debtor "truthfully and voluntarily disclosed the existence of the Litigation to the Trustee, the person responsible for pursuing it, whether or not it had been scheduled," *In re Barger*, 279 B.R. 900, 908 (Bankr. N.D. Ga. 2002):

> The Court is not persuaded by the bankruptcy court's reasoning. The foremost responsibility in this matter was for Barger to fully disclose her assets. She did not satisfy her duty. Instead, she dissembled to the trustee and indicated that her discrimination claim had no monetary value. As such, the trustee can hardly be faulted for not further investigating Barger's discrimination suit.

*Barger*, 348 F.3d at 1296.

court borrowed from *Burnes*.  The trustee's claim must be dismissed in order to stimulate the "necessary incentive [of future debtors] to provide the bankruptcy court with a truthful disclosure of [their] assets."[165]  Presumably, once debtors realized the harm they will cause their creditors if they are caught hiding their assets, and the shame that may engender, they may think twice.  The loss of future relationship with some of their creditors will move debtors to make a truthful disclosure of their assets.

The Bankruptcy Court in *Barger* read *Burnes* as using judicial estoppel as a means of punishing oath-breaking.  In overruling the City's objection to the debtor's motion to reopen her Chapter 7 case, the court addressed the City's *Burnes*-based argument—that the debtor had to pay a penalty for concealing her claims—thusly:

> If there are adverse consequences that a debtor should suffer due to omission of a scheduled claim, there are *punishments* other than judicial estoppel that can be directed at a debtor, rather than the estate and creditors, such as sanctions under Fed. R. Bankr. P. 9011, revocation of the discharge, or denial of any exemption in the claim and its proceeds.[166]

*Burnes* and *Barger* imply that judicial estoppel's service is to stimulate the full disclosure, or deter the concealment, of debtors' assets, not to punish the debtor.  I agree with the Bankruptcy Court.  The doctrine's service is punishment.

---

[165]  *Id.* at 1297 (quoting *Burnes*, 291 F.3d at 1288).

[166]  *In re Barger*, 279 B.R. at 908 (emphasis added) (citing *In re Lewis*, 273 B.R. 739, 748 (Bankr. N.D. Ga. 2001)).

84

2.

Having described the subtle yet crucial shift in the motivating rationale behind judicial estoppel that occurred in *Burnes* and *Barger*, it should not be hard to understand why borrowing an equitable remedy specially fashioned for the preservation of the integrity of the judicial system to punish inconsistent pleadings will fail to achieve either the former or the latter.  Debtors will be prompted to make full disclosure of their assets, instead of hiding them, when they realize, on reflection, that if they are caught hiding them, they will be penalized.  The debtors in *Burnes* and *Barger* were caught, but were they penalized?  They gave up property that wasn't theirs.  But that was the extent of it.[167]

Standing alone, relieving a thief of stolen property is unlikely to deter theft.  If anything, it would encourage more theft.  Applying the equitable remedy of judicial estoppel—to the exclusion of the extensive, but apparently inadequate, range of criminal and civil legal remedies for oath-breaking—would guarantee that all that would happen to debtors who get caught prosecuting undisclosed claims would be that those claims get dismissed.  The only downside for the debtor, therefore, is the psychic cost to his conscience and the expense of bringing suit.

---

[167] The debtors in *Burnes* and *Barger* would, in fact, be penalized if their claims were sufficiently valuable to pay off their creditors with additional funds left over.  Future creditors might engage in a sort of cost–benefit analysis in deciding whether to conceal actionable claims for damages.

There is simply no deterrence for the cold and calculating litigant, who stands to gain much and lose nothing.

B.

Not only is the particular equitable remedy *Burnes* and *Barger* created ineffective, but resorting to an equitable remedy to punish oath-breaking debtors itself is inappropriate, given the extensive range of perfectly adequate criminal and civil legal remedies with which the logic and effect of judicial estoppel are at odds. I accept for the moment that the doctrine's objective is not to punish the debtor but to motivate debtors to make full disclosure of their assets[168] and turn to the effect *Barger*'s pursuit of that objective has on the Bankruptcy Court's application of the rules and statutory provisions, criminal as well as civil, Congress has set in place to achieve it.[169] I begin, in Part III.B.1., with Rule 1009 of the Federal Rules of

---

[168] Full disclosure is "crucial to the effective functioning of the federal bankruptcy system." *Burnes*, 291 F.3d at 1286 (quotation marks omitted). "[T]he importance of full and honest disclosure cannot be overstated." *Id.* (quotation marks omitted). Consider another highly technical area of the law in which voluntary compliance is critical: the federal income-tax regime. It would be quite strange indeed if the Internal Revenue Code provided for the "punishment" of taxpayers who fail to report the proceeds of meritorious lawsuits by doing nothing more than return the taxable portion of any recovery to the defendants in those suits. Such a rule would impose no deterrent on future tax evaders, do nothing to encourage reporting, fail to raise any revenue for the Government, and inappropriately lump together inadvertent or negligent taxpayers with the consciously recalcitrant despite the general policy of tolerance toward nonintentional noncompliance. *Cf. Ratzlaf v. United States*, 510 U.S. 135, 144–47, 114 S. Ct. 655, 660–62, 126 L. Ed. 2d 615 (1994); *Cheek v. United States*, 498 U.S. 192, 201–04, 111 S. Ct. 604, 610–12, 112 L. Ed. 2d 617 (1991). That an analogous equitable doctrine would be considered necessary in the context of bankruptcy law is at least an equally dubious proposition.

[169] I omit reference to *Burnes* in this discussion because, in *Burnes*, the appellant was the debtor, not the bankruptcy trustee. *Burnes*, 291 F.3d at 1284. The court was not faced with the question of whether the trustee's, i.e., the creditors' interests, should be taken into account in

86

Bankruptcy Procedure and 11 U.S.C. § 350 because their immediate purpose is to foster full disclosure of assets and thereby "secure the just, speedy, and inexpensive determination of every case and proceeding."[170]  Part III.B.2. next explains how *Barger* obstructs the Bankruptcy Court's ability to use Rule 1009 and § 350 and the other tools it has been provided to foster full disclosure.  And Part III.B.3. explains the intolerable dilemma *Barger* has created for the Bankruptcy Courts.

1.

The full and complete scheduling of a debtor's assets as required by the Bankruptcy Code does not always happen.  Omissions frequently occur in the Statement of Financial Affairs and Schedules of Assets and Liabilities a debtor files with his bankruptcy petition,[171] and they occur when, as in *Burnes*, the debtor amends his schedules as the bankruptcy estate is being administered.[172]  The Supreme Court, in proposing Rule 1009 to Congress, and Congress, in adopting it,[173] realized this, so Rule 1009 provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time

---

determining whether, as a matter of equitable discretion, judicial estoppel should be invoked.  In *Barger,* the trustee's interests were at stake and dealt with.  *Barger*, 348 F.3d at 1292–93.

[170]  Fed. R. Bankr. P. 1001.
[171]  *See* 11 U.S.C. § 521(a)(1)(B)(i), (iii); Fed. R. Bankr. P. 1007(b)(1)(A), (D).
[172]  *Burnes*, 291 F.3d at 1284.
[173]  *See* 28 U.S.C. § 2075.

87

before the case is closed."[174]  These filings may be amended to include an asset of

the bankruptcy estate whether the debtor's failure to list the asset earlier was

inadvertent or a mistake or was "calculated to make a mockery of the judicial

system."[175]

Sometimes a debtor's failure to disclose an asset of the estate is not

discovered until after the case is closed.  Since the asset had never been scheduled

and the bankruptcy trustee, obviously unaware of the asset, had not abandoned it,

the asset is still property of the bankruptcy estate.[176]  The asset is in limbo.  The

---

[174]  Fed. R. Bankr. P. 1009(a); *see supra* note 85.

[175]  *Burnes*, 291 F.3d at 1285.  The Supreme Court and Congress obviously had cases like *Burnes* in mind in providing without qualification that a debtor may amend his bankruptcy filings "as a matter of course at any time before the case is closed."  Fed. R. Bankr. P. 1009(a). The *Burnes* opinion does not mention Rule 1009 at all.  Nonetheless, I assume that *Burnes* would not preclude a debtor from amending his filings to list a cognizable claim for damages before his nondisclosure has been discovered.  It would appear, though, that if the party potentially liable on the claim discovers that the claim has not been scheduled and brings the matter to the bankruptcy trustee's attention, he thereby sets the stage for the application of judicial estoppel should the debtor amend his schedules and the trustee thereafter takes steps to recover on the claim.

[176]  *See* 11 U.S.C. § 541.  Section 541, "Property of the estate," provides, in pertinent part, that the filing of a voluntary petition for bankruptcy relief "creates an estate . . . comprised of . . . all  legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  "Even after the case is closed, the estate continues to retain its interest in unscheduled property."  5 Collier on Bankruptcy, ¶ 554.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Moreover, where the debtor fails to notify either the trustee or the creditors of a claim, the doctrine of abandonment does not apply.  *First Nat'l Bank of Jacksboro v. Lasater*, 196 U.S. 115, 119, 25 S. Ct. 206, 208 49 L. Ed. 408 (1905).  As the court put it in *In re Upshur*, 317 B.R. 446, 451–52 (Bankr. N.D. Ga. 2004):

Property that is not correctly scheduled remains property of the estate forever, until administered or formally abandoned by the trustee. Thus, in the case of an omitted cause of action, the trustee is the real party in interest and the correct defense is one of standing, i.e., the action is not being prosecuted by the real party in interest which is the trustee, not the debtor.  Cases like this must be reopened to permit the trustee to deal with the property of the estate.

debtor can't possess or otherwise realize it; neither can the trustee of the bankruptcy estate because he has been discharged.  Congress anticipated this situation.  In enacting 11 U.S.C. § 350, it gave the Bankruptcy Court discretion to reopen a closed case on "motion of the debtor or other party in interest,"[177] in order "to administer" for the benefit of the creditors an asset that had not been scheduled.[178]  The court may exercise such discretion whether or not the debtor's failure to schedule the asset was inadvertent or a mistake or was intentional.[179]

This is what happened in *Barger.*  Barger had not scheduled her claims for damages so she moved the Bankruptcy Court to reopen her Chapter 7 case to list them.[180]  The City objected, citing *Burnes*.[181]  If the City's objection to reopening Barger's case were an attempt to exercise control over Barger's claims, it could constitute a violation of the stay that had automatically been put in place by 11

_____

[177]  Fed. R. Bankr. P. 5010.

[178]  *See* 11 U.S.C. § 350(b) (providing that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.")  The Supreme Court and Congress surely contemplated that if the debtor were attempting  to manipulate the Bankruptcy Court, the court, at some point after reopening the case, would sanction the debtor, as the *In re Barger* Court suggested.  *In re Barger*, 279 B.R. 900, 908 (Bankr. N.D. Ga. 2002).

[179]  *See In re Barger*, 279 B.R. at 901; 3 Collier on Bankruptcy, ¶ 350.03[1] ("[T]he discovery of unadministered assets . . . continues to be a sufficient reason for the court to exercise its power [to reopen a case]. . . . [I]t is clear that assets that are not properly disclosed on the schedules are not abandoned and remain property of the estate that can be administered if the case is reopened.").

[180]  *In re Barger*, 279 B.R. at 901.

[181]  *See id.*

89

U.S.C. § 362(a)(3) the moment Barger filed her Chapter 7 petition.[182]  The court, however, did not view the objection in that way.  Instead, it treated the objection as the City framed it, an argument that Barger should be punished for falsifying her schedules.[183]  Accordingly, in ruling on the motion to reopen and the City's objection, the court treated the motion and the objection as raising mutually exclusive issues.[184]

The court reopened the case because reopening is ordinarily granted for the benefit of the creditors—to enable the administration of assets of the estate that were not scheduled or abandoned by the trustee.[185]  In the matter before it, the court said that "it [would be] incongruous to punish [Barger's] creditors and impair their prospects for a potential recovery . . . in order to improve the City's judicial estoppel argument in the District Court."[186]  It therefore granted the debtor's

---

[182]  *See* 11 U.S.C. § 362(a)(3) (providing that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.").  "One of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors."  *In re Prudential Lines Inc.*, 928 F.2d 565, 573–74 (2d Cir. 1991).  The court in *In re Barger* was obviously aware of this purpose of the stay and that sustaining the City's objection would remove property from the bankruptcy estate and injure the creditors.  *See In re Barger*, 279 B.R. at 908–09.

[183]  *In re Barger*, 279 B.R. at 908–09.

[184]  *See id.* at 904.

[185]  As the court in *In re Upshur* put it, "the court . . . has a duty to reopen the estate whenever there is proof that it has not been fully administered.  The proper focus is on the benefit to the creditors, so that if the action has any value, the case should be reopened."  317 B.R. at 451.

[186]  *In re Barger*, 279 B.R. at 909.

motion.[187]  The court left the issue of punishment for the District Court to decide.[188]

2.

*Barger* has obstructed the Bankruptcy Court's ability to use the tools Congress has provided to motivate debtor compliance with the disclosure requirements of 11 U.S.C. §§ 521(a)(1)(B)(i) and (iii) and Rule 1007 of the Federal Rules of Bankruptcy Procedure.[189]  And *Barger* did so not in an appeal, under 28 U.S.C. § 158(d)(1), from a District Court decision affirming or reversing on interlocutory appeal the Bankruptcy Court's decision to reopen under 11 U.S.C. § 350, but in an appeal, under 28 U.S.C. § 1291, of the District Court's decision estopping the trustee's claims on summary judgment.

*Barger* nevertheless appears to be a *de novo* review of the Bankruptcy Court's decision to reopen.  It also gives the appearance that this court was exercising its supervisory power[190] over the Bankruptcy Court, instructing the

---

[187]  *Id.*

[188]  The Bankruptcy Court's finding that Barger, in failing to amend her schedules, had not "operat[ed] with an intentional or manipulative disregard of the legal system or the bankruptcy processes in this Court," *id.* at 908, implies the conclusion that sanctions under the Bankruptcy Code were not called for.

[189]  *See supra* note 94.

[190]  The "supervisory power" refers to this court's inherent authority to oversee the procedures followed by the district courts and to "fashion[] procedures and remedies that ensure the judicial process remains a fair one." *Reynolds v. Roberts*, 207 F.3d 1288, 1301 n.25 (11th Cir. 2000) (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1145–46 (11th Cir. 1985)).  Relevant here, we have previously invoked the supervisory power to prevent "substantial prejudice" to innocent third parties whose interests were harmed by a debtor's failure to disclose contested property during bankruptcy proceedings. *See In re Furlong*, 885 F.2d 815, 818–19 (11th Cir.

court that, at bottom, it is to deny reopening in any case in which the debtor omitted to schedule a lawsuit he brought on a claim that belonged to the bankruptcy estate and filed a motion to reopen after the party he sued discovered the omission.

The District Court, following *Burnes*, estopped the estate's claims for damages because Barger's failure to schedule them after her complaint had been amended to seek damages against the City was neither inadvertent nor a mistake.[191] On appeal, the bankruptcy trustee argued that the Bankruptcy Court's decision to reopen should be reviewed under the abuse-of-discretion standard and therefore affirmed unless the facts supporting the decision were clearly erroneous. Treating the case as if it were an appeal under § 158(d)(1), the trustee submitted that the findings of fact set out in the Bankruptcy Court's order issued pursuant to Rule 52(a) of the Federal Rules of Civil Procedure were fully supported by the record

_____

1989); *id.* at 819 (Brown, J., concurring) (highlighting the "extreme importance" of protecting third parties and not allowing a debtor to "bargain away their rights" in bankruptcy proceedings).

     I note in passing that *In re Barger* was referred to the Bankruptcy Court under the umbrella of 28 U.S.C. § 157(a). Section 157(d), gives the District Court the authority to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." *Id.* § 157(d). In light of *Reynolds, Piambino*, and in particular, *In re Furlong,* one might posit that the relationship between this court and the district and bankruptcy courts could provide for the exercise of supervisory power with respect to a bankruptcy court's practices.

[191] Barger's failure to amend her schedules to reflect the pending litigation was undisputed. The Bankruptcy Court found that the failure was excusable, and moreover, that the schedules didn't need to be amended because the trustee knew about the lawsuit and the claims for damages. The District Court, in granting summary judgment, found that Barger's conduct was inexcusable because it was neither inadvertent nor a mistake. Thus the District Court effectively substituted its view of the evidence for the Bankruptcy Court's.

and justified the court's decision to reopen notwithstanding Barger's failure to amend her schedules and list the lawsuit pending against the City.[192]  The court found the failure irrelevant since the trustee knew about the litigation.  This court, essentially disregarding the Bankruptcy Court's findings and conclusions, found on the same record that Barger's failure to amend her schedules was intentional, not inadvertent or a mistake, and therefore was a calculated attempt to manipulate the judicial system.  *Burnes* required that the District Court's application of judicial estoppel be affirmed.

I translate the affirmance into a statement that the Bankruptcy Court abused its discretion in reopening Barger's case because it based its decision on an error of law.  This court held that the Bankruptcy Court erred in applying *Burnes*'s test for determining whether the debtor's failure to amend her schedules amounted to a calculated attempt to manipulate the judicial system.  That test, again, is whether the nondisclosure was inadvertent or a mistake.  If Barger was unaware of the lawsuit or had no motive for pursuing it, the nondisclosure would be inadvertent and thus could not be considered a calculated attempt to manipulate the judicial system.  But she failed the test:  Barger was plainly aware of the lawsuit and had a

---

[192]  I assume that the Bankruptcy Court complied with Rule 52(a) in anticipation of the possibility that the City might appeal to the District Court its decision to reopen.  This court, in effect, reviewed the Bankruptcy Court's Rule 52(a) findings and conclusions, which were issued after the District Court issued its order granting summary judgment to the City, in reaching its decision.  *See Barger*, 348 F.3d at 1292, 1294–97.

motive for pursuing it; she would reap the benefit of any recovery the lawsuit might yield.  Judicial estoppel accordingly applied as a matter of law.  Because it did, the reopening constituted an abuse of discretion.

That said, I sense that the *Barger* Court did not view its decision as a review of the Bankruptcy Court's decision to reopen.  If it did, the court would have discussed § 350 and Rule 1009 and the policies and the Congressional intent they implement.  But neither § 350 nor Rule 1009 was mentioned.  They didn't have to be.  All that mattered was that Barger failed to amend her schedules to disclose the claims in litigation.  The failure constituted a statement, under penalty of perjury, that she had no claims for damages pending against the City, a statement that Barger knew was false.  Because it was, Barger, in making it, intended to manipulate the bankruptcy system.

However one views the *Barger* Court's § 1291 decision—whether it constituted a review of the Bankruptcy Court's decision to reopen or punishment for the debtor's false schedules—its negative effect on the ability of the Bankruptcy Courts to use the tools Congress provided to enhance full disclosure of assets is clear.  As an initial matter, § 350 and Rule 1009, the primary tools for ensuring full disclosure, are for all practical purposes rendered inoperative.  If a case has been closed, reopening the case under § 350 to allow the debtor to amend his schedules pursuant to Rule 1009 and list a previously nonscheduled claim will

94

turn out to be a useless act once the party sued discovers the nondisclosure. The party will immediately move the District Court to dismiss the debtor from the case for lack of standing, and the court must grant the motion. If, after the debtor's schedules have been amended, the bankruptcy trustee persuades the District Court to vacate its dismissal and intervenes in place of the debtor or initiates an adversary proceeding in the Bankruptcy Court, the trustee will be confronted with judicial estoppel.

If a case remains open and the debtor amends his schedules to reveal the nondisclosed claim, the trustee will similarly be faced with judicial estoppel. Even if suit has not been filed, if the debtor's claim is cognizable (and ready for suit) and the defendant potentially liable learns of the claim and informs the bankruptcy trustee, the defendant will have set the stage for invoking judicial estoppel to bar the trustee's appearance in the District Court or before the Bankruptcy Court in an adversary proceeding.

Moreover, the secondary tools Congress has provided to enhance full disclosure of assets are also rendered practically inoperative.[193] The *In re Barger* Court opined that those tools, when used, are fully capable of deterring debtors from concealing their assets and that any deterrence judicial estoppel might provide would be problematic at best. Moreover, a full weighing of the equities—

---

[193] I describe these secondary tools below. *See infra* notes 210–212 and accompanying text.

the effect on the interests of creditors, the debtor, the City and the public—

counseled reopening the debtor's case.

3.

In addition to rendering all but inoperative the tools Congress has provided

to enhance the full disclosure of a debtor's assets, *Barger* has created a serious

dilemma for a Bankruptcy Court presented, as was the case in *Barger,* with a

debtor's motion to reopen in order to schedule an unscheduled claim after the

District Court has dismissed the claim because the debtor lacked standing to

prosecute it. The Bankruptcy Court has two choices. It can heed the dictates of

*Barger* and sustain the objection to reopening. Or it can disregard the dictates of

*Barger* and grant the debtor's motion to reopen. I consider in order the

consequences that result from the exercise of choices.

An immediate consequence of denying reopening is that the court may have

sanctioned the violation of the automatic stay.[194] How? The court has placed its

imprimatur on an "act[, i.e., the objection to reopening,] to exercise control over

---

[194] I would be remiss if I did not mention again an issue that was neither raised nor briefed in this appeal, which is whether the automatic stay, 11 U.S.C. § 362(c)(1), bars the District Court from granting the defendant summary judgment on a set of facts like those in *Barger*. *See supra* note 84. Judicial estoppel is not a true affirmative defense. The facts supporting the defense are provided by the debtor's post-petition behavior, not prepetition behavior relating to his claim and the defendant's defense to that claim. It is as if the defendant were asking the District Court to bar the trustee's claim because the debtor robbed a bank. The defense operates like a permissive counterclaim, and in the language of § 362(c)(1), it constitutes "an act against property of the estate."

96

property of the estate."[195]  Assuming that the denial would not violate the stay,

what happens to the asset, the claim?  The claim occupies the same status it was

occupying after the District Court dismissed the debtor's case.  The claim had

neither been scheduled nor abandoned.[196]  The claim "remains property of the

estate."[197]  And under 11 U.S.C. § 362(c)(1), the automatic "stay of an act against

[the unscheduled claim] continues until such property is no longer property of the

estate."[198]  In short, since the claim cannot be disturbed, it remains in limbo.

Because the claim is in limbo, the objecting party, who obtained the ruling he

sought, has received a windfall.  The windfall is an indefinite postponement of the

reopening of the debtor's bankruptcy case; following reopening it might be sued by

the trustee or named as a respondent in an adversary proceeding.  That is not likely

to occur unless the claim is very valuable and the creditors have gone hence

without day.

---

[195]  *See* 11 U.S.C. § 362(a)(3).

[196]  The Bankruptcy Court's order denying reopening could not be construed as the court's abandonment of the claim because it is generally the trustee's decision whether to abandon an asset of the bankruptcy estate.  *See* 11 U.S.C. § 554, *supra* note 140.

[197]  *See In re Dunning Bros. Co.*, 410 B.R. 877, 879, 887–88 (E.D. Cal. 2009) (citation and quotation marks omitted) ("In the context of unscheduled property, the question of whether the case should be reopened requires only a decision whether there may be unscheduled property that could be administered by a trustee.  It is not an appropriate occasion to consider or decide whether defenses could be established against the trustee.  So, for example, the equitable defense of laches is not relevant to the decision whether to reopen a case, even though it may later be raised as a defense in the litigation that may follow.").

[198]  11 U.S.C. § 362(c)(1) states, in pertinent part: "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate."  I suggest that, in a case like *In re Barger*, the stay would have the effect of tolling the statute of limitations on the claim in issue.

If the Bankruptcy Court disregards *Barger*'s dictates and reopens the case, the consequences are those that flow from a debtor's amendment of his schedules in a bankruptcy case that has not been closed.  The trustee can move the District Court to vacate the dismissal of the debtor's claim and obtain intervention or he can initiate an adversary proceeding in the Bankruptcy Court.  Assuming that granting judgment to the party the trustee is suing in order to punish the debtor for his post-petition conduct—filing false schedules—would not violate the automatic stay, the trustee will be estopped.

## C.

Despite this court's assertions to the contrary,[199] the supposedly equitable doctrine of judicial estoppel as formulated in *Burnes* and applied in *Barger*— supposedly a doctrine of inconsistent pleadings—is not a doctrine of inconsistent pleadings.  Nor is it an equitable doctrine.  Instead, it is a quasi-criminal sanction— created by this court and masked as judicial estoppel—to punish debtors who make false statements under oath about the existence of actionable claims they are prosecuting in the District Court.  The application of this doctrine is akin to abuse

---

[199] *See Barger*, 348 F.3d at 1293 ("Judicial estoppel is an equitable doctrine that precludes a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.' The doctrine exists 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" (citations omitted) (quoting *Burnes*, 291 F.3d at 1285).

of process, the common-law tort,[200] and thus impugns the integrity of the District

Court.  At the same time it blemishes the reputation of the Bankruptcy Court and

impedes its ability "to secure the just, speedy, and inexpensive determination of

every case and proceeding"[201] pending before it.

1.

The doctrine of judicial estoppel, as formulated first in *McKinnon v. Blue*

*Cross & Blue Shield of Alabama*[202] and later in *New Hampshire v. Maine*,[203]

focuses on the second of the litigant's two inconsistent pleadings or positions.  The

court strikes the second position, the one immediately before it, because the party

is trifling or playing "fast and loose" with the court.[204]  The *Burnes–Barger*

doctrine focuses on the litigant's position in the Bankruptcy Court, whether or not

---

[200]  At common law, using a process for which it was not designed is called "abuse of process."  "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."  Restatement (Second) of Torts § 682 (Am. Law Inst. 1977).  "The gravamen of the misconduct . . . is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  *Id.* § 682 cmt. a.   For example, an abuse of the criminal process would occur if a merchant had a person arrested for writing a bad check but dropped the charge the moment the person made good on his debt. The purpose of judicial estoppel, the doctrine of inconsistent pleadings, is to preserve the integrity of the judicial system, not to punish someone for lying under oath.  Using judicial estoppel to punish oath-breaking, in line with *Burnes* and *Barger*, is therefore analogous to abuse of process.

[201]  Fed. R. Bankr. P. 1001.

[202]  *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187 (11th Cir. 1999).

[203]  *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).

[204]  *See id.* at 750, 121 S. Ct. at 1814 (providing that "judicial estoppel prevents parties from playing fast and loose with the courts." (quotation marks omitted) (quoting *Scarano v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953))); *see also Burnes*, 291 F.3d at 1285 ("The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." (alteration omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (11th Cir. 1999))).

it is his second position.  The question is instead whether the litigant's position in the Bankruptcy Court is inconsistent with his position in the District Court.  If it is, the court strikes the position in the District Court.  That position is stricken because the position in the Bankruptcy Court, which the litigant took under oath, was false.

The position the litigant is pursuing in the District Court is a prepetition claim.  It existed before he petitioned the Bankruptcy Court for relief.  If he files suit before repairing to the Bankruptcy Court, that is his first position; he has a claim for damages.  If he then files for bankruptcy and denies the existence of the claim, that is his second position; he has no claim for damages.  Under the doctrine as formulated in *McKinnon,* the second position is rejected.  Under the *Burnes–Barger* doctrine, however, the first position is rejected.

If the litigant files for bankruptcy first and schedules no claim (because it does not then exist), and then files suit (because it does exist at some later point), the question becomes whether the claim was cognizable[205] when he filed for bankruptcy or became cognizable afterwards.  If the claim became cognizable afterwards, his first bankruptcy position—that the claim does not exist—was true.  Once the claim became cognizable and he filed suit, though, the litigant's first position became false because he did not update it, by amending his bankruptcy schedules, the moment the claim became cognizable.  The litigant's failure to

---

[205]  The question is whether the claim was capable of being tried in the District Court.

100

amend itself becomes his second position and is accepted by the court while his first position is rejected as false.

In sum, it doesn't matter which of the two inconsistent positions is the "second" position, that is, the one the divergent-sworn-positions-and-mockery-of-justice rule would reject, because the *Burnes–Barger* doctrine is not concerned with inconsistent pleadings.  All that matters is that the debtor falsified his bankruptcy position under oath, and that cannot be tolerated.

2.

The *Burnes–Barger* doctrine is not an equitable doctrine because its application produces at-least-inequitable results, if not manifestly unjust ones.  A debtor deprives his bankruptcy estate of an asset by concealing it.  Then the District Court, acting as a court of equity, furthers the deprivation by giving the asset to the defendant, who owes the claim's value to the bankruptcy estate, as a pure windfall.  The estate's creditors, who are totally innocent, provide the windfall.  The explicit rationale for doing this is that the deprivation deters future debtors from concealing assets of the bankruptcy estate.  The implicit rationale is that the bankruptcy courts are either unwilling or incapable of providing such deterrence.[206]

---

[206] I refer generally to the bankruptcy courts because the *Burnes–Barger* doctrine applies in all cases, regardless of the particular presiding judge.

All of this aside, I will assume that the *Burnes–Barger* doctrine is indeed an equitable doctrine and examine it in the light of the traditional maxims of equity.[207] I start with the parties whose interests the doctrine implicates.  There is the party asserting the doctrine, the defendant.  The defendant simply wants to avoid liability by having the estate's claim rejected.  The defendant's role is that of an informant. It informs the court that the debtor has lied under oath in the Bankruptcy Court in failing to disclose the litigation at hand.  Anyone aware of the debtor's bankruptcy proceedings could perform the same service.  The defendant, therefore, is simply not a party for purposes of weighing the equities.

The Bankruptcy Court, in contrast, is a party because the integrity of its processes and its reputation for competency are implicated.  Likewise, the trustee is a party because, as part of his fiduciary duties, he must marshal and administer the assets of the bankruptcy estate.  The trustee does that for the benefit of the creditors, so they, too, are parties.  The debtor was a party, but he has exited the stage because his claim has, by operation of law, been transferred to the

---

[207]  The following list includes many of the major traditional maxims of equity: (1) Equity does not suffer a wrong to go without a remedy.  (2) Equity regards substance rather than form.  (3) Equity regards as done that which ought to be done.  (4) Equality is equity.  (5) Where the equities are equal, the first in time will prevail.  (6) Where the equities are equal, the law will prevail.  (7) Equity follows the law.  (8) One who comes into equity must come with clean hands.  (9) One who seeks equity must do equity.  (10) Equity aids the vigilant not those who sleep on their rights.  (11) Delay defeats equity.  (12) Equitable remedies are given as a matter of grace or discretion, not of right.  (13) Equity acts in personam, not in rem.
1 Dan B. Dobbs, *Law of Remedies* § 2.3(4) n.7 (2d ed. 1993).

administration of his estate.  His interest is in obtaining a discharge of his debts, and that is a matter the Bankruptcy Court will handle.

The District Court is also a party, and it also has at stake its integrity. Inconsistent pleadings, however, whether or not under oath, are of no concern. Rule 8(d) of the Federal Rules of Civil Procedure permits inconsistent pleadings, and in my view, equity would not countenance a judge-made rule to negate that feature of Rule 8.  Neither is the fact that the trustee's likely key witness in the suit, the debtor, lied under oath.  Prior inconsistent statements, whether or not under oath, are grist for the litigation mill.

Additionally, applying judicial estoppel in the circumstances depicted in *Barger* and in the case at hand necessarily precludes the bankruptcy courts from exercising the case-specific discretion that Congress intended.  I focus on the situation in *Barger* because the Bankruptcy Court's interest in that case is a matter of record, as discussed in the *In re Barger* Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[208]  In a nutshell, the Bankruptcy Court reopened the debtor's Chapter 7 case because Barger's damages claims against the City had value and the creditors were entitled to the benefit of that value.

---

[208]  *See* Fed. R. Civ. P. 52(a)(1) (providing that, "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.").

The District Court in *Barger* nevertheless estopped the trustee's claims to punish Barger for failing to amend her schedules and list her claims against the City. But the Bankruptcy Court had already considered the matter of punishment. It was well aware of the sanctions the law provides—the criminal law and the bankruptcy law—and concluded that none applied. If the court had "reasonable grounds for believing" that Barger had committed perjury, it would have reported the matter to the U.S. Attorney, as required by 18 U.S.C. § 3057.[209] But no grounds were present.[210] The District Judge agreed with the Bankruptcy Judge. Otherwise, since § 3057 applies to a District Judge just as it applies to a Bankruptcy Judge, the District Judge would have reported the matter to the U.S. Attorney. Yet, this court agreed with the District Judge that the debtor's failure to amend her schedules constituted a false statement under oath, and that she had to

---

[209] Section 3057 provides, in relevant part,

*Any judge*, receiver, or trustee *having reasonable grounds for believing that any* violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, *shall report to the appropriate United States attorney all the facts and circumstances of the case*, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

11 U.S.C. § 3057(a) (emphasis added).

[210] Nor did the Bankruptcy Court see any basis for finding that the debtor had violated Rule 9011 of the Federal Rules of Bankruptcy Procedure, which mimics Rule 11 of the Federal Rules of Civil Procedure. *Compare* Fed. R. Bankr. P. 9011 *with* Fed. R. Civ. P. 11. The District Court and this court did not mention Rule 9011, so I assume that they saw no reason to invoke it.

104

be punished.  The punishment?  Not under the criminal law of perjury[211] or of contempt,[212] but under a judge-made rule that punishes innocent parties in the debtor's stead.

In the end, the parties with the most as stake, the Bankruptcy Court and the creditors, ask the District Court to withhold the judicial-estoppel remedy.  Rather than make them whole, it will cause them irreparable harm.  In applying the doctrine notwithstanding their request and against the clear thrust of governing law, the District Court undermines its own integrity in the eyes of the public and implies that the Bankruptcy Court is either unwilling or incapable of overseeing debtor compliance with the law.

The only solution to this unfortunate predicament is the en banc court.

---

[211] A debtor who files false bankruptcy schedules pursuant to 11 U.S.C. §§ 521(a)(1)(B)(i) and (iii) and Rule 1007 of the Federal Rules of Bankruptcy Procedure under penalty of perjury, *see* 28 U.S.C. § 1746, may have committed perjury in violation of 18 U.S.C. § 1621.

[212] *See* 18 U.S.C. § 401; Fed. R. Crim. P. 42.

APPENDIX I.



## Evolution of the Oath Requirement in the Eleventh Circuit[†]

† This visual aid should be read as follows.  The arrows show that the language in the case at the tail of the arrow was adopted in the case at the head of the arrow.  For example, *Johnson Service*'s "calculated assertion of divergent sworn positions" language was adopted in *Chrysler Credit*, indicating that two oaths were required for the application of judicial estoppel.  Similarly, *Johnson Service*'s "made under oath in a prior proceeding" language was adopted in *Salomon*, and *McKinnon*'s inheritance of the "calculated assertion of divergent sworn positions" language was adopted in *Salomon*, making it unclear whether one or two oaths were required.  The cases proceed in roughly chronological order from the top-left corner to the bottom-right corner.  The text inside each case box indicates whether there was federal-question or diversity jurisdiction in the case, whether it cited the language for one oath or for two oaths, and whether the case presented either a *Burnes* or a *New Hampshire* scenario.  *See* note 1 of the Timeline of Judicial Estoppel Cases in the Eleventh Circuit for a brief explanation of these scenarios.

106

## Timeline of Judicial Estoppel Cases in the Eleventh Circuit

| Case name | Citation | Date | Jurisdiction | *Burnes* or *NH*?[†] | One oath or two?[‡] |
|---|---|---|---|---|---|
| *Johnson Serv. Co. v. Transamerica Ins. Co.* | 485 F.2d 164 | 1973 | Diversity | *Burnes* | Either |
| *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.* | 710 F.2d 1528 | 1983 | Diversity | *NH* | Two |
| *Chrysler Credit Corp. v. Rebhan* | 842 F.2d 1257 | 1988 | Federal question | *NH* | Two |
| *McKinnon v. Blue Cross & Blue Shield of Ala.* | 935 F.2d 1186 | 1991 | Federal question | *NH* | Two |
| *Talavera v. School Bd. of Palm Beach Cty.* | 129 F.3d 1214 | 1995 | Federal question | *Burnes* | Two |
| *Taylor v. Food World, Inc.* | 133 F.3d 1419 | 1998 | Federal question | *Burnes* | Two |
| *Salomon Smith Barney, Inc. v. Harvey* | 260 F.3d 1302 | 2001 | Diversity | *NH* | Either |
| *Burnes v. Pemco Aeroplex, Inc.* | 291 F.3d 1282 | 2002 | Federal question | *Burnes* | Either |
| *Barger v. City of Cartersville* | 348 F.3d 1289 | 2003 | Federal question | *Burnes* | One |

[†] This column indicates whether the case presented a *Burnes* scenario, in which the party that is asserting judicial estoppel was not a party in the prior proceeding, or a *New Hampshire* scenario, in which the party that is asserting judicial estoppel was a party in the prior proceeding. As indicated in Part II.B. of the Special Concurrence, "prior proceeding" does not necessarily mean the lawsuit first filed. It has instead come to mean "another proceeding" where the violation of the oath occurs.

[‡] This column indicates whether the case cites the language requiring one statement under oath or the language requiring two statements under oath for the doctrine of judicial estoppel to apply. In some instances, the case cites both the language requiring one oath and two oaths, which is indicated by "Either."

APPENDIX II.

The following is a list of court of appeals, district court, and bankruptcy court decisions within the Eleventh Circuit that cite *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003), or both as of February 22, 2016.  I have included only cases that cite *Burnes* or *Barger* for judicial estoppel purposes.  The first four columns indicate the year the case was decided, the court that decided the case, the case name, and the case citation.  The last three columns are coded as follows.  For the "Application of JE" column, "C.A." indicates that the court cited and applied judicial estoppel, "C.N.A." indicates that the court cited and did not apply judicial estoppel, "C.D.A." indicates that the court cited the doctrine disapprovingly, but still applied judicial estoppel, and "C.D.N.A." means the court cited the doctrine disapprovingly and did not apply judicial estoppel.  For the "Burnes/Barger" column, entries with only "Burnes" or "Barger" mean that only that one case was cited, and an entry of "Burnes/Barger" means both cases were cited.  For the final, "Bankruptcy Context" column, "Yes" indicates that the case occurred in the bankruptcy context, and "No" indicates that the case did not occur in the bankruptcy context.

* Subsequent case history omitted from citation.

108

| | | **Eleventh Circuit Cases Citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) and/or *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003)** | | | | |
|---|---|---|---|---|---|---|
| **Year** | **Court** | **Case** | **Citation** | **Application of JE** | **Burnes/Barger** | **Bankruptcy Context** |
| 2016 | 11th Cir. | Hoefling v. City of Miami | No. 14-12482, slip op. (11th Cir. Jan. 25, 2016) | C.N.A. | Burnes | No |
| 2016 | 11th Cir. | Palmer Ranch Holdings Ltd. v. Comm'r. | No. 14-14167, slip op. (11th Cir. Feb. 5, 2016) | C.N.A. | Burnes | No |
| 2016 | DC | Ortega v. Bel Fuse, Inc. | No. 15-21229-CIV, 2016 WL 524220 (S.D. Fla. Feb. 10, 2016) | C.N.A. | Burnes | Yes |
| 2016 | DC | Shields v. Univ. of W. Ala. | No. 7:14-CV-02198-LSC, 2016 WL 192074 (N.D. Ala. Jan. 15, 2016) | C.A. | Burnes/Barger | Yes |
| 2016 | Bk | In re Guerra | No. 8:11-BK-15663-MGW, 2016 WL 350849 (Bankr. M.D. Fla. Jan. 28, 2016) | C.N.A. | Burnes | Yes |
| 2015 | 11th Cir. | Anderson v. Brown Inds. | 614 F. App'x 415 (11th Cir. 2015) | C.A. | Burnes | No |
| 2015 | 11th Cir. | D'Antignac v. Deere & Co. | 604 F. App'x 875 (11th Cir. 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | 11th Cir. | Ward v. AMS Servicing, LLC | 606 F. App'x 506 (11th Cir. 2015) | C.A. | Burnes | Yes |
| 2015 | DC | Advantus, Corp. v. Allen | No. 3:13-CV-1430-J-32PDB, 2015 WL 4429199 (M.D. Fla. July 20, 2015) | C.A. | Burnes | Yes |
| 2015 | DC | Allen v. Senior Home Care, Inc. | No. 14-81408-CIV, 2015 WL 1097408 (S.D. Fla. Mar. 11, 2015) | C.N.A. | Burnes | Yes |
| 2015 | DC | Banks v. Tanner Med. Ctr., Inc. | No. 1:12-CV-4450-RWS, 2015 WL 1481472 (N.D. Ga. Mar. 31, 2015) | C.A. | Burnes | Yes |
| 2015 | DC | Brown v. Winn-Dixie Stores, Inc. | No. CV 214-052, 2015 WL 3448614 (S.D. Ga. May 20, 2015) * | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Copeland v. Birmingham Nursing & Rehabilitation Center, LLC | No. 2:14-cv-1523-JHH, 2015 WL 4068647 (N.D. Ala. July 1, 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Ellis v. CB & T Bank of Middle Ga. | No. 5:14-CV-102 CAR, 2015 WL 1636822 (M.D. Ga. Apr. 13, 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Keeton v. Big Lots Stores, Inc. | 84 F. Supp. 3d 1290 (N.D. Ala. 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Lee v. Morgan | No. 2:14-CV-01204-RDP, 2015 WL 1958800 (N.D. Ala. May 1, 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Marshall v. Sandersville R.R. Co. | No. 5:12-CV-425 MTT, 2015 WL 3648603 (M.D. Ga. June 10, 2015) | C.N.A. | Burnes/Barger | Yes |
| 2015 | DC | Moorer v. Rooms to Go Ala. Corp. | No. 2:13-cv-2199-SLB, 2015 WL 4426085 (N.D. Ala. July 20, 2015) | C.N.A. | Burnes/Barger | Yes |
| 2015 | DC | MTJ Trucking, Inc. v. Progressive Mountain Ins. Co. | No. 1:14-CV-02915-RWS, 2015 WL 4077747 (N.D. Ga. July 6, 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Nichols v. Ala. State Bar | No. 2:15-cv-179-WMA, 2015 WL 3823929 (N.D. Ala. June 19, 2015) | C.N.A | Burnes | No |
| 2015 | DC | Perez v. Anastasia M. Garcia, P.A. | No. 15-20615-CIV, 2015 WL 5050548 (S.D. Fla. Aug. 26, 2015) | C.N.A. | Burnes/Barger | No |
| 2015 | DC | Pharma Supply, Inc. v. Stein | No. 14-80374-CIV, 2015 WL 328228 (S.D. Fla. Jan. 26, 2015) | C.N.A. | Burnes | No |
| 2015 | DC | Phillips v. Ocwen Loan Servicing, LLC | 92 F. Supp. 3d 1255 (N.D. Ga. 2015) * | C.N.A. | Burnes | Yes |
| 2015 | DC | Prison Legal News v. Jones | No. 4:12cv239-MW/CAS, 2015 WL 5047957 (N.D. Fla. Aug. 27, 2015) * | C.N.A. | Burnes | No |
| 2015 | DC | Smith v. Haynes & Haynes PC | No. 2:14-CV-1334-RDP, 2015 WL 4173024 (N.D. Ala. July 10, 2015) | C.A. | Burnes/Barger | Yes |
| 2015 | DC | Ussery v. Allstate Fire and Cas. Ins. Co. | No. 5:13-CV-83 LJA, --- F. Supp. 3d ---, 2015 WL 8773291 (M.D. Ga. Dec. 14, 2015) | C.N.A. | Burnes/Barger | Yes |
| 2015 | Bk | In re Buckley | No. 12-65335-MHM, 2015 WL 798535 (Bankr. N.D. Ga. Feb. 17, 2015) | C.N.A. | Barger | Yes |
| 2015 | Bk | In re Fundamental Long Term Care, Inc. | 542 B.R. 299 (Bankr. M.D. Fla. 2015) | C.A. | Burnes | Yes |
| 2015 | Bk | In re Kimrow, Inc. | 534 B.R. 219 (Bankr. M.D. Ga. 2015) | C.N.A. | Burnes/Barger | Yes |
| 2015 | Bk | In re Kourogenis | 539 B.R. 625 (Bankr. S.D. Fla. 2015) | C.N.A. | Burnes | Yes |
| 2015 | Bk | In re S & Shack, LLC | No. 09-67151-MGD, 09-68410-MGD, 2015 WL 1523635 (Bankr. N.D. Ga. Feb. 13, 2015) | C.A. | Burnes | Yes |
| 2015 | Bk | In re Trigeant Holdings, Ltd. | 523 B.R. 273 (Bankr. S.D. Fla. 2015) | C.N.A. | Burnes | Yes |
| 2015 | Bk | In re Wells | No 13-13309-BKC-RBR, 2015 WL 8928332 (Bankr. S.D. Fla. Nov. 3, 2015) | C.A. | Burnes | Yes |
| 2014 | 11th Cir. | Baloco v. Drummond Co., Inc. | 767 F.3d 1229 (11th Cir. 2014) | C.A. | Burnes | No |
| 2014 | 11th Cir. | Dunn v. Advanced Med. Specialities, Inc. | 556 F. App'x 785 (11th Cir. 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | 11th Cir. | Marable v. Marion Military Inst. | 595 F. App'x 921 (11th Cir. 2014) | C.A. | Burnes | Yes |
| 2014 | DC | Banks v. Tanner Med. Ctr., Inc. | No. 1:12-CV-4450-RWS, 2014 WL 8391889 (N.D. Ga. Sept. 10, 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | DC | Batdorf v. Athens Archery, Inc. | No. 13-0316-CG-B, 2014 WL 1826617 (S.D. Ala. May 8, 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | DC | EMCASCO Ins. Co. v. Knight | No. CV-12-S-1890-NW, 2014 WL 5020044 (N.D. Ala. Oct. 7, 2014) | C.A. | Burnes | Yes |
| 2014 | DC | Fletcher v. Supreme Beverage Co. | No. 2:11-cv-0056-MHH, 2014 WL 5518294 (N.D. Ala. Oct. 31, 2014) | C.N.A. | Burnes | Yes |
| 2014 | DC | Job v. AirTran Airways, Inc. | No. 1:13-CV-2061-TWT, 2014 WL 414224 (N.D. Ga. Feb. 4, 2014) | C.N.A. | Burnes | Yes |
| 2014 | DC | Kunstmann v. Aaron Rents, Inc. | No. 2:08-cv-01969-KOB, 2014 WL 1388387 (N.D. Ala. Apr. 9, 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | DC | Milian v. Wells Fargo & Co. | 507 B.R. 386 (S.D. Fla. 2014) * | C.A. | Burnes/Barger | Yes |
| 2014 | DC | Norman v. Norman | No. CV-12-J-2136-S, 2014 WL 457710 (N.D. Ala. Feb. 4, 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | DC | Pringle v. Family Dollar Stores of Ga., Inc. | No. cv-112-044, 2014 WL 4926386 (S.D. Ga. Sept. 30, 2014) | C.N.A. | Burnes | Yes |
| 2014 | DC | Rambeault v. Accurate Mach. & Tool, LLC | No. 14-CIV-20136, 302 F.R.D. 675 (S.D. Fla. Oct. 2, 2014) | C.N.A. | Burnes | No |
| 2014 | DC | Smith v. Werner Enters., Inc. | 65 F.Supp.3d 1305 (S.D. Ala. 2014) | C.N.A. | Burnes/Barger | Yes |
| 2014 | DC | Summersill v. Kelly | No. 5:12-CV-667-OC-10PRL, 2014 WL 1333206 (M.D. Fla. Apr. 3, 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | DC | Tuten v. Target Corp. | No. 4:14-cv-3, 2014 WL 6908866 (S.D. Ga. Dec. 8, 2014) | C.N.A. | Burnes | Yes |
| 2014 | DC | Vignoli v. Clifton Apartments, Inc. | No. 12-CV-24508, 2014 WL 6850778 (S.D. Fla. Dec. 3, 2014) | C.N.A. | Burnes/Barger | No |
| 2014 | DC | Welker v. Orkin, LLC | No. 5:13-CV-126 MTT, 2014 WL 1572535 (M.D. Ga. Apr. 17, 2014) | C.A. | Burnes/Barger | Yes |
| 2014 | DC | Young v. City of Mobile | No. CIV.A. 13-00586-KD-B, 2014 WL 3870716 (S.D. Ala. Aug. 7, 2014) | C.N.A. | Burnes | Yes |
| 2014 | Bk | In re Fist Foliage, L.C. | No. 10-27532-BKC-LMI, 2014 WL 2616618 (Bankr. S.D. Fla. June 11, 2014) | C.N.A. | Burnes | Yes |
| 2014 | Bk | In re Gregg | No. 11-40125JTL, 2014 WL 3339595 (Bankr. M.D. Ga. July 7, 2014) | C.A. | Barger | Yes |
| 2014 | Bk | In re McDaniel | 523 B.R. 895 (Bankr. M.D. Ga. 2014) | C.N.A. | Burnes/Barger | Yes |
| 2014 | Bk | In re PMF Enters., Inc. | 517 B.R. 350 (Bankr. M.D. Ga. 2014) | C.N.A. | Burnes | Yes |
| 2014 | Bk | In re Presta | No. 3:09-bk-1222-JAF, 2014 WL 2448444 (Bankr. M.D. Fla. May 28, 2014) | C.A. | Burnes | Yes |
| 2013 | DC | Antietam Inds., Inc. v. Morgan Keegan & Co., Inc. | No. 6:12-cv-1250-Orl-36TBS, 2013 WL 1213059 (M.D. Fla. Mar. 25, 2013) | C.N.A. | Burnes | No |
| 2013 | DC | Apotex, Inc. v. UCB, Inc. | 970 F. Supp. 2d 1297 (S.D. Fla. 2013) | C.A. | Burnes | No |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2013 | DC | Brothers v. Bojangles' Rests., Inc. | No. CV-12-BE-2212-E, 2013 WL 6145332 (N.D. Ala. Nov. 21, 2013) | C.A. | Burnes/Barger | Yes |
| 2013 | DC | D'Antignac v. Deere & Co. | No. CV 110-116, 2013 WL 6383113 (S.D. Ga. Dec. 5, 2013) * | C.A. | Burnes/Barger | Yes |
| 2013 | DC | Drakes v. Glenwood, Inc. | No. 2:10-CV-2659-VEH, 2013 WL 3356944 (N.D. Ala. June 28, 2013) | C.N.A. | Burnes/Barger | Yes |
| 2013 | DC | Helton v. Token, Inc. | No. 6:11-cv-02846-LSC, 2013 WL 1767831 (N.D. Ala. Apr. 23, 2013) | C.A. | Burnes | Yes |
| 2013 | DC | Pate v. Infirmary Health Sys., Inc. | No. CIV.A. 12-00513-KD-C, 2013 WL 5234312 (S.D. Ala. Sept. 17, 2013) | C.A. | Burnes/Barger | Yes |
| 2013 | DC | Perkins v. Berg Spiral Pipe Corp. | No. CIV.A. 12-0468-CG-N, 2013 WL 489164 (S.D. Ala. Feb. 7, 2013) | C.A. | Burnes/Barger | Yes |
| 2013 | DC | Stuart v. Resurgens Risk Mgmt., Inc. | No. 1:11-cv-04251-RWS, 2013 WL 2903571 (N.D. Ga. June 12, 2013) | C.N.A. | Burnes/Barger | Yes |
| 2013 | DC | Taylor v. Novartis Pharm. Corp. | 506 B.R. 157 (S.D. Fla. 2013) | C.A. | Burnes/Barger | Yes |
| 2013 | DC | Thompson v. EarthLink Shared Servs., LLC | 956 F.Supp.2d 1317 (N.D. Ala. 2013) | C.N.A. | Burnes/Barger | Yes |
| 2013 | DC | Willis v. Homesite Ins. Co. of the Midwest | No. CV 4:10-1933-RBP, 2013 WL 4013477 (N.D. Ala. Aug. 6, 2013) | C.A. | Burnes/Barger | Yes |
| 2013 | DC | Wolfe v. Solomon Law Grp., P.A. | No. 8:09-cv-1207-T-17AEP, 2013 WL 4719343 (M.D. Fla. 2013) | C.N.A. | Burnes | Yes |
| 2013 | Bk | In re D'Antignac | No. 05-10620, 2013 WL 1084214 (Bankr. S.D. Ga. Feb. 19, 2013) | C.N.A. | Barger | Yes |
| 2013 | Bk | In re Dig. Comm. Networks, Inc. | 496 B.R. 243 (Bankr. M.D. Fla. 2013) | C.N.A. | Barger | Yes |
| 2013 | Bk | In re Fields | No. 11-06065-BGC-12, 12-00122, 2013 WL 1136923 (Bankr. Mar. 19, 2013) | C.N.A. | Burnes | Yes |
| 2013 | Bk | In re Foster | No. 11-30021, 2013 WL 5376040 (Bankr. S.D. Ga. Sept. 24, 2013) | C.A. | Burnes | Yes |
| 2013 | Bk | In re Inv'rs Lending Grp., LLC | No. 11-41963 (Bankr. S.D. Ga. Jan. 9, 2013) | C.A. | Burnes | Yes |
| 2013 | Bk | In re James | 487 B.R. 587 (Bankr. N.D. Ga. 2013) | C.N.A. | Burnes | Yes |
| 2013 | Bk | In re Mixon | No. 11-41568 (Bankr. S.D. Ga. 2013) | C.A. | Burnes | Yes |
| 2013 | Bk | In re Mouttet | 493 B.R. 640 (Bankr. S.D. Fla. 2013) | C.N.A. | Burnes | Yes |
| 2013 | Bk | In re Palm Beach Fin. Partners, L.P. | 517 B.R. 310 (Bankr. S.D. Fla. 2013) | C.N.A. | Burnes | Yes |
| 2013 | Bk | Riggins v. Ambrose | 500 B.R. 190 (Bankr. N.D. Ga. 2013) | C.N.A. | Burnes/Barger | Yes |
| 2012 | 11th Cir. | Jones v. United States | 467 F. App'x 815 (11th Cir. 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd. | No. 8:11-cv-1468-T-33TBM, 2012 WL 4077505 (M.D. Fla. July 18, 2012) | C.N.A. | Burnes/Barger | No |
| 2012 | DC | Burch v. AmerOnc, Inc. | No. 7:11-CV-2342-RDP, 2012 WL 1566155 (N.D. Ala. Apr. 25, 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Cain v. Hyundai Motor Mfg. Alabama LLC | No. 2:11CV363-CSC, 2012 WL 1161443 (M.D. Ala. Apr. 6, 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Carter v. Hartford Fire Ins. Co. | No. 1:11-cv-04008-TWT-GGB, 2012 WL 4888533 (N.D. Ga. Sept. 17, 2012) | C.A. | Barger | Yes |
| 2012 | DC | Cashatt v. Merrimac Assocs., Inc. | 853 F. Supp. 2d 1244 (N.D. Ga. 2012) | C.N.A. | Burnes | Yes |
| 2012 | DC | Evans v. Books-A-Million | 907 F. Supp. 2d 1284 (N.D. Ala. 2012) | C.A. | Burnes | No |
| 2012 | DC | Huff v. Macon Behavioral Health Treatment | No. 5:11-CV-455 MTT, 2012 WL 1344355 (M.D. Ga. Apr. 18, 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Lay v. Hixon | No. 09-0075-WS-M, 2012 WL 1946346 (S.D. Ala. May 20, 2012) | C.N.A. | Burnes | No |
| 2012 | DC | Likes v. DHL Exp. (USA), Inc. | No. 2:08-cv-00428-AKK, 2012 WL 8499732 (N.D. Ala. Mar. 7, 2012) | C.N.A. | Burnes | Yes |
| 2012 | DC | Lopez v. F.D.I.C. | No. 2:10-CV-00158-RWS, 2012 WL 1898798 (N.D. Ala. May 23, 2012) | C.A. | Burnes | Yes |
| 2012 | DC | Marable v. Marion Military Inst. | 906 F. Supp. 2d 1237 (S.D. Ala. 2012) aff'd, 595 F. App'x 921 (11th Cir. 2014) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Morton v. Bank of Am. Corp. | No. 5:12-CV-188 CAR, 2012 WL 3901749 (M.D. Ga. Sept. 7, 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Reynolds v. Ala. Dep't of Transp. | No. 2:85CV665-MHT, 2012 WL 1110121 (M.D. Ala. Apr. 3, 2012) | C.N.A. | Burnes/Barger | Yes |
| 2012 | DC | Slater v. U.S. Steel Corp. | No. CV-09-BE-1732-S, 2012 WL 4478981 (N.D. Ala. Sept. 25, 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Smith v. Wayne Farms, L.L.C. | No. CV-11-S-3590-NE, 2012 WL 1746857 (N.D. Ala. May 16, 2012) | C.A. | Burnes/Barger | Yes |
| 2012 | DC | Terrell v. Rathman | No. 1:11-cv-00199-WMA-HGD, 2012 WL 4953128 (N.D. Ala. Sept. 13, 2013) | C.A. | Burnes | No |
| 2012 | DC | U.S. ex rel. Bibby v. Wells Fargo Bank, N.A. | 906 F.Supp.2d 1288 (N.D. Ga. 2012) | C.N.A. | Burnes/Barger | Yes |
| 2012 | Bk | In re SOL, LLC | No. 09-12684-BKC-AJC, 2012 WL 2673254 (Bankr. S.D. Fla. 2012) | C.N.A. | Burnes | Yes |
| 2012 | Bk | In re Tinney | No. 07-42020-JJR13, 2012 WL 2742457 (Bankr. N.D. Ala. July 9, 2012) | C.N.A. | Burnes | Yes |
| 2011 | 11th Cir. | Warfield v. Stewart | 434 F. App'x 777 (11th Cir. 2011) | C.N.A. | Burnes | No |
| 2011 | DC | Alvarez v. Royal Atl. Developers, Inc. | 854 F. Supp. 2d 1219 (S.D. Fla. 2011) | C.A. | Burnes/Barger | Yes |
| 2011 | DC | Bennett v. Flagstar Bank | No. CV 210-181, 2011 WL 6152940 (S.D. Ga. Dec. 8, 2011) | C.N.A. | Burnes/Barger | Yes |
| 2011 | DC | Daniels v. Tucker | No. 5:09cv328/RS/EMT, 2011 WL 7153921 (N.D. Fla. Nov. 22, 2011) | C.N.A. | Burnes | No |
| 2011 | DC | Farr v. Hall Cty. | No. 2:11-CV-00074-RWS, 2011 WL 5921462 (N.D. Ga. Nov. 28, 2011) | C.N.A. | Burnes/Barger | Yes |
| 2011 | DC | Mac v. Brooks | No. 3:11cv313-WHA, 2011 WL 3794683 (M.D. Ala. Aug. 25, 2011) | C.N.A. | Burnes | No |
| 2011 | DC | Mason v. Mitchell's Contracting Serv., LLC | 816 F. Supp. 2d 1178 (S.D. Ala. 2011) | C.A. | Burnes/Barger | Yes |
| 2011 | DC | Matheus v. Wagner & Hunt, P.A. | No. 10-61596-CIV, 2011 WL 1878582 (S.D. Fla. May 17, 2011) | C.N.A. | Burnes | Yes |
| 2011 | DC | Nettles v. State Farm Fire & Cas. Co. | No. 4:10-CV-106 CDL, 2011 WL 2462556 (M.D. Ga. June 17, 2011) | C.N.A. | Burnes/Barger | Yes |
| 2011 | DC | Pace v. Hurst Boiler & Welding Co. | No. 7:10-CV-116 HL, 2011 WL 97244 (M.D. Ga. Jan. 12, 2011) | C.A. | Burnes/Barger | Yes |
| 2011 | DC | Reynolds v. Ala. Dep't of Transp. | No. 2:85CV665-MHT, 2011 WL 2650244 (M.D. Ala. July 6, 2011) | C.A. | Burnes/Barger | Yes |
| 2011 | DC | Schreiber v. Ocwen Loan Servicing, LLC | No. 5:11-CV-211-OC-32TBS, 2011 WL 6055417 (M.D. Fla. Dec. 6, 2011) | C.N.A. | Burnes/Barger | Yes |
| 2011 | DC | United States v. All Funds in the Account of Prop. Futures, Inc. | 820 F. Supp. 2d 1305 (S.D. Fla. 2011) | C.N.A. | Burnes | No |
| 2011 | Bk | In re Aum Shree of Tampa, LLC | 449 B.R. 584 (Bankr. M.D. Fla. 2011) | C.N.A. | Burnes | Yes |
| 2010 | 11th Cir. | Hamilton v. Sec'y, DOC | 410 F. App'x 216 (11th Cir. 2014) | C.N.A. | Burnes | No |
| 2010 | 11th Cir. | Robinson v. Tyson Foods, Inc. | 595 F.3d 1269 (11th Cir. 2010) | C.A. (majority); C.D.A. (concurrence) | Burnes/Barger | Yes |
| 2010 | DC | Counts v. Red Coats, Inc. | No. 1:09-CV-3038-TWT-ECS, 2010 WL 2674423 (N.D. Ga. May 28, 2010) | C.N.A. | Burnes | Yes |
| 2010 | DC | Fla. Farm Bureau Gen. Ins. Co. v. Concille Jerigan | No. 3:09CV145/MCR/EMT, 2010 WL 3927816 (N.D. Fla. Sept. 30, 2010) | C.N.A. | Burnes | No |
| 2010 | DC | Hands v. Winn-Dixie Stores, Inc. | No. CIV.A. 09-0619-WS N, 2010 WL 4496798 (S.D. Ala. Nov. 1, 2010) | C.A. | Burnes/Barger | Yes |
| 2010 | DC | In re Tyson Foods, Inc. | 732 F.Supp.2d 1363 (M.D. Ga. 2010) | C.A. | Burnes/Barger | Yes |

| Year | Court | Case Name | Citation | | | |
|---|---|---|---|---|---|---|
| 2010 | DC | Peyovich v. World Mortg. Co. | No. 6:08-cv-404-Orl-28KRS, 2010 WL 3516721 (M.D. Fla. July 29, 2010) | C.N.A. | Burnes | No |
| 2010 | DC | Reynolds v. Ala. Dep't of Transp. | No. CIVA 2:85CV665-MHT, 2010 WL 1658284 (M.D. Ala. Apr. 21, 2010) | C.A. | Burnes/Barger | Yes |
| 2010 | DC | Solomon Tech., Inc. v. Toyota Motor Corp. | No. 8:05-cv-1702-T-MAP, 2010 WL 715243 (M.D. Fla. Jan. 26, 2010) | C.A. | Burnes | No |
| 2010 | DC | State Farm Fire and Cas. Co. v. Billingsley | No. 09-0267-KD-C, 2010 WL 1511560 (S.D. Ala. Apr. 14, 2010) | C.N.A. | Burnes | Yes |
| 2010 | DC | Wesley v. Nat'l Mentor Healthcare, LLC | No. CIV.A.109-CV-978-TWT, 2010 WL 520759 (N.D. Ga. Feb. 8, 2010) | C.N.A. | Barger | Yes |
| 2010 | DC | Yerk v. People for the Ethical Treatment of Animals | No. 209CV537FTM29SPC, 2010 WL 3746815 (M.D. Fla. Sept. 21, 2010) | C.N.A. | Burnes/Barger | Yes |
| 2010 | Bk | In re Boston | No. 6:98-bk-08958-KSJ, 2010 WL 4117450 (Bankr. M.D. Fla. Oct. 18, 2010) | C.N.A. | Burnes | Yes |
| 2010 | Bk | In re Justo | No. 09-12516-BKC-AJC, 2010 WL 5018353 (Bankr. Dec. 3, 2010) | C.N.A. | Burnes | Yes |
| 2010 | Bk | In re Sandlin | No. 06-03792-TOM-13, 2010 WL 1416699 (Bankr. N.D. Ala. Apr. 8, 2010) | C.N.A. | Barger | Yes |
| 2010 | Bk | In re Shelton | No. 07-81534-JAC-7, 2010 WL 1743210 (Bankr. N.D. Ala. Apr. 26, 2010) | C.A. | Burnes/Barger | Yes |
| 2010 | Bk | In re Vasko | No. 09-79334-MGD, 2010 WL 4638600 (Bankr. N.D. Ga. Aug. 9, 2010) | C.A. | Burnes | Yes |
| 2009 | DC | Bender v. Tropic Star Seafood, Inc. | No. 4:07-CV-438-SPM, 2009 WL 903351 (N.D. Fla. Apr. 1, 2009) | C.N.A. | Burnes | Yes |
| 2009 | DC | Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co. | 597 F. Supp. 2d 1354 (M.D. Ga. 2009) | C.A. | Burnes | No |
| 2009 | DC | Coppedge v. Suntrust Banks, Inc. | No. CIV.A. 3:08-CV-23(HL) 2009 WL 111639 (M.D. Ga. Jan. 14, 2009) | C.A. | Burnes/Barger | Yes |
| 2009 | DC | Evans v. Potter | No. 1:08-CV-1687-TWT, 2009 WL 529599 (N.D. Ga. Feb. 27, 2009) | C.N.A. | Burnes | Yes |
| 2009 | DC | Great Lakes Reinsurance (UK) PLC. v. Roca | No. 07-23322-CIV, 2009 WL 200257 (S.D. Fla. Jan. 23, 2009) | C.N.A. | Burnes | No |
| 2009 | DC | Melton v. Nat'l Dairy Holdings, L.P. | No. CIV.A. 1:08CV174-TFM, 2009 WL 653024 (M.D. Ala. Mar. 10, 2009) | C.N.A. | Burnes/Barger | Yes |
| 2009 | DC | Reynolds v. Ala. Dep't of Transp. | No. 2:85cv665-MHT, 2009 WL 4456339 (M.D. Ala. Nov. 24, 2009) | C.A. | Burnes | Yes |
| 2009 | DC | Roots v. Morehouse Sch. of Med., Inc. | No. CIVA1:07-CV-00112JOF, 2009 WL 4798217 (N.D. Ga. Dec. 8, 2009) | C.N.A. | Burnes/Barger | Yes |
| 2009 | DC | Russell v. Promove, LLC | No. 1.06-CV-00659RWS, 2009 WL 1285885 (N.D. Ga. May 5, 2009) | C.N.A. | Burnes/Barger | Yes |
| 2009 | DC | Welt v. Amerisourcebergen Drug Corp. | No. 08-80287-CIV, 2009 WL 2730167 (S.D. Fla. Aug. 25, 2009) | C.N.A. | Burnes/Barger | Yes |
| 2009 | Bk | In re Grelier | 400 B.R. 826 (Bankr. N.D. Ala. 2009) | C.A. | Burnes/Barger | Yes |
| 2009 | Bk | In re Vann | No. 08-11824-DHW, 2009 WL 1311592 (Bankr. M.D. Ala. May 11, 2009) | C.N.A. | Burnes | Yes |
| 2009 | Bk | In re Webb | No. 96-74639, 2009 WL 6499125 (Bankr. N.D. Ga. Aug. 26, 2009) | C.N.A. | Burnes | Yes |
| 2008 | 11th Cir. | Betancur v. U.S. Atty. Gen. | 261 F. App'x 218 (11th Cir. 2008) | C.N.A. | Burnes | No |
| 2008 | DC | Ameritox, Ltd. v. Aegis Servs. Corp. | No. 07-80498-CIV, 2008 WL 4540063 (S.D. Fla. Oct. 10, 2008) | C.N.A. | Burnes | No |
| 2008 | DC | Geico Cas. Co. v. Beauford | No. 8:05-cv-697-T-24 EAJ, 2008 WL 2600861 (M.D. Fla. June 30, 2008) | C.A. | Burnes | No |
| 2008 | DC | Jackson v. Advanced Disposal Servs. | No. 307-CV-773-J-33TEM, 2008 WL 958110 (M.D. Fla. Apr. 8, 2008) | C.N.A. | Burnes/Barger | Yes |
| 2008 | DC | Mark v. Labar | No. 08-80646-CIV, 2008 WL 4753745 (S.D. Fla. Oct. 27, 2008) | C.N.A. | Burnes | Yes |
| 2008 | DC | Oldfield v. Dolgencorp, Inc. | No. 3:08CV317/RS-EMT, 2008 WL 5191688 (N.D. Fla. Dec. 10, 2008) | C.A. | Burnes/Barger | Yes |
| 2008 | DC | Pendlebury v. Starbucks Coffee Co. | No. 04-80521-CIV, 2008 WL 763213 (S.D. Fla. Mar. 13, 2008) | C.N.A. | Burnes | No |
| 2008 | DC | Wood v. Green | No. 3:07CV95/MCR/EMT, 2008 WL 3200659 (N.D. Fla. Aug. 4, 2008) | C.N.A. | Burnes/Barger | Yes |
| 2008 | Bk | In re Brooks | No. 06-81704-JAC-7, 2008 WL 1721876 (Bankr. N.D. Ala. Apr. 10, 2008) | C.A. | Barger | Yes |
| 2008 | Bk | In re Hackney | No. 07-40952-JJR-11, 2008 WL 4830040 (Bankr. N.D. Ala. Oct. 10, 2008) | C.A. | Burnes | Yes |
| 2008 | Bk | In re Sholar | No. 07-12927-WHD, 2008 WL 7874791 (Bankr. N.D. Ga. Sept. 4, 2008) | C.N.A. | Burnes/Barger | Yes |
| 2008 | Bk | Thompson v. Quarles | 392 B.R. 517 (Bankr. S.D. Ga. 2008) | C.D.N.A. | Burnes/Barger | Yes |
| 2007 | 11th Cir. | Casanova v. Pre Sols., Inc. | 228 F. App'x 837 (11th Cir. 2008) | C.A. | Burnes/Barger | Yes |
| 2007 | 11th Cir. | Pavlov v. Ingles Mkts., Inc. | 236 F. App'x 549 (11th Cir. 2008) | C.A. | Burnes | Yes |
| 2007 | 11th Cir. | State Farm Fire and Cas. Co. v. Simmons | 217 F. App'x 851 (11th Cir. 2007) | C.A. | Burnes | Yes |
| 2007 | DC | Brown v. Brock | No. 5:04-CV-339 (CAR), 2007 WL 2128191 (M.D. Ga. July 25, 2007) | C.A. | Burnes/Barger | Yes |
| 2007 | DC | Crosby v. Mobile Cty. | No. CIV.A.04-0144CG-M, 2007 WL 4125895 (S.D. Ala. Nov. 14, 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | DC | Isaac v. Am. Intercontinental Univ. | No. 1:05-CV-2839-JEC, 2007 WL 1959201 (N.D. Ga June 28, 2007) | C.A. | Burnes/Barger | Yes |
| 2007 | DC | Kuehn v. Cadle Co. | No. 5:04CV432 OC10GRJ, 2007 WL 809656 (M.D. Fla. Mar. 15, 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | DC | McKenzie v. Citation Corp., LLC | No. CIV.A. 05-0138-CG-C, 2007 WL 1424555 (S.D. Ala. May 11, 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | DC | SFM Holdings, Ltd. v. Banc Of Am. Sec., LLC | No. 06-80652-CIV-RYSKAMP, 2007 WL 7124464 (S.D. Fla. Feb. 12, 2007) * | C.N.A. | Burnes/Barger | No |
| 2007 | DC | Tedford v. United States | No. 8:05CV1017-T-30TGW, 2007 WL 1098506 (M.D. Fla. Apr. 12, 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | DC | The Coca-Cola Co. v. Pepsi-Cola Co. | 500 F. Supp. 2d 1364 (N.D. Ga. 2007) | C.A. | Burnes | No |
| 2007 | Bk | In re Engelbrecht | 368 B.R. 898 (Bankr. M.D. Fla. 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | Bk | In re Foreman | 378 B.R. 717 (Bank. S.D. Ga. 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | Bk | In re Jones | 381 B.R. 555 (Bankr. M.D. Fla. 2007) | C.N.A. | Burnes/Barger | Yes |
| 2007 | Bk | In re Lentek Int'l | 377 B.R. 396 (Bankr. M.D. Fla. 2007) | C.N.A. | Burnes | Yes |
| 2007 | Bk | In re Leto | No. 06-12939-BKC-PGH, 2007 WL 4117271 (Bankr. S.D. Fla. Nov. 15, 2007) | C.A. | Burnes | Yes |
| 2007 | Bk | In re Pace Tr. of Pace Irreocvable Tr. | 376 B.R. 334 (Bankr. M.D. Fla. 2007) | C.N.A. | Burnes | Yes |
| 2007 | Bk | In re Reed | No. 04-13062, 2007 WL 274322 (Bankr. S.D. Ala. Jan. 26, 2007) | C.N.A. | Burnes | Yes |
| 2007 | Bk | In re Tarver | No. 05-12028-DHW, 2007 WL 1876369 (Bankr. M.D. Ala. June 28, 2007) | C.N.A. | Burnes | Yes |
| 2007 | Bk | In re Taylor | 363 B.R. 303 (Bankr. M.D. Fla. 2007) | C.N.A. | Burnes/Barger | Yes |
| 2006 | 11th Cir. | Ajaka v. BrooksAmerica Mortg. Corp. | 453 F.3d 1339 (11th Cir. 2006) | C.N.A. | Burnes | Yes |
| 2006 | 11th Cir. | Bridge Capital Inv'rs, II v. Susquehanna Radio Corp. | 458 F.3d 1212 (11th Cir. 2006) | C.N.A. | Burnes | Yes |
| 2006 | 11th Cir. | Strauss v. Rent-A-Ctr., Inc. | 192 F. App'x 821 (11th Cir. 2006) | C.N.A. | Burnes/Barger | Yes |
| 2006 | 11th Cir. | United States v. Campa | 459 F.3d 1121 (11th Cir. 2006) | C.N.A. | Burnes | No |
| 2006 | DC | Belnavis v. Nicholson | No. 8:05-CV-778-T-23TGW, 2006 WL 3359684 (M.D. Fla. Nov. 20, 2006) | C.A. | Burnes/Barger | Yes |
| 2006 | DC | Carroll v. Henry Cty. | 336 B.R. 578 (N.D. Ga. 2006) | C.N.A. | Burnes | Yes |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2006 | DC | Casanova v. Pre Sols., Inc. | No. 1:04-CV-2053-RLV, 2006 WL 5451193 (N.D. Ga. Mar. 29, 2006) | C.A. | Burnes | Yes |
| 2006 | DC | Franklin v. Blue Cross & Blue Shield of Fla., Inc., Short Term Disability Pla | No. 306CV101J32TEM, 2006 WL 2792893 (M.D. Fla. Sept. 27, 2006) | C.N.A. | Barger | No |
| 2006 | DC | Helson v. Nuvell Fin. Servs. Corp. | No. 8:05-CIV1788T17MAP, 2006 WL 1804583 (M.D. Fla. June 27, 2006) | C.A. | Burnes | Yes |
| 2006 | DC | Jones v. Comm. Newpapers, Inc. | No. 3:05-cv-240-J-16MMH, 2006 WL 2507610 (M.D. Fla. Aug. 28, 2006) | C.N.A. | Burnes | Yes |
| 2006 | DC | Kennedy v. Jim's Formal Wear Co. | No. CIVA1:05CV1280JEC, 2006 WL 2661264 (N.D. Ga. Sept. 14, 2006) | C.N.A. | Burnes/Barger | Yes |
| 2006 | DC | Lett v. Reliable Ruskin | No. 1:05CV479-WHA, 2006 WL 2056582 (M.D. Ala. July 24, 2006) | C.A. | Burnes/Barger | Yes |
| 2006 | DC | Marshall v. Electrolux Home Prods., Inc. | No. 605CV-1587ORL-18KRS, 2006 WL 3756574 (M.D. Fla. Dec. 19, 2006) | C.A. | Burnes/Barger | Yes |
| 2006 | DC | Moore v. Fred's Stores of Tenn., Inc. | No. 4:05CV133 CDL, 2006 WL 2374768 (M.D. Ga. Aug. 16, 2006) | C.A. | Burnes/Barger | Yes |
| 2006 | DC | Pavlov v. Ingles Mkts., Inc | No. CIV.A. 1:03CV1647JOF, 2006 WL 949934 (N.D. Ga. Apr. 11, 2006) * | C.A. | Burnes/Barger | Yes |
| 2006 | DC | Smith v. Scales Express, Inc. | No. Civ.A. 05-0331-BH-B, 2006 WL 2190575 (S.D. Ala. Sept. 7, 2006) | C.N.A. | Burnes | Yes |
| 2006 | DC | Smith v. Scales Express, Inc. | No. 05-331-BH-B, 2006 WL 2190575 (S.D. Ala. Aug. 2. 2006) | C.N.A. | Burnes | Yes |
| 2006 | DC | Snowden v. Fred's Stores of Tenn., Inc. | 419 F. Supp. 2d 1367 (M.D. Ala. 2006) | C.N.A. | Burnes/Barger | Yes |
| 2006 | DC | Stephens v. Hoffmann-La Roche, Inc. | No. 8:04 CV 2643 T 30TBM, 2006 WL 3694644 (M.D. Fla. Dec. 13, 2006) | C.N.A. | Burnes/Barger | Yes |
| 2006 | DC | Wheeler v. Fla. Dep't. of Corrections | No. 3:04-cv-1147-J-32MCR, 2006 WL 2321114 (M.D. Fla. Aug. 9, 2006) | C.N.A. | Burnes/Barger | Yes |
| 2006 | Bk | In re Full Gospel Assembly of Delray Beach, Inc. | No. 05-23067-BKC-JKO, 2006 WL 3922110 (Bankr. S.D. Fla. Dec. 14, 2006) | C.N.A. | Burnes | Yes |
| 2006 | Bk | In re Parker | 351 B.R. 790 (Bankr. N.D. Ga. 2006) | C.A. | Barger | Yes |
| 2006 | Bk | In re Sudderth | No. BKR. 04-63227, 2006 WL 6591618 (Bankr. N.D. Ga. Apr. 4, 2006) | C.N.A. | Barger | Yes |
| 2005 | 11th Cir. | Muse v. Accord Human Res., Inc. | 129 F. App'x 487 (11th Cir. 2005) | C.N.A. | Burnes | Yes |
| 2005 | 11th Cir. | Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc. | 404 F.3d 1297 (11th Cir. 2005) | C.N.A. | Burnes | No |
| 2005 | 11th Cir. | Transamerica Leasing, Inc. v. Inst. of London Underwriters | 430 F.3d 1326 (11th Cir. 2005) | C.N.A. | Burnes | No |
| 2005 | DC | Ajaka v. BrooksAmerica Mortg. Corp. | No. CIVA103CV0977BBM, 2005 WL 6075374 (N.D. Ga. Mar. 16, 2005) * | C.A. | Burnes/Barger | Yes |
| 2005 | DC | Allapattah Servs., Inc. v. Exxon Corp. | 372 F. Supp. 2d 1344 (S.D. Fla. 2005) | C.A. | Burnes | No |
| 2005 | DC | Arlaine & Gina Rockey, Inc. v. Cordis Corp. | No. 02-22555-CIV, 2005 WL 6111611 (S.D. Fla. Jan. 26, 2005) | C.N.A. | Barger | No |
| 2005 | DC | Brown v. Brock | No. 5:04CV339DF, 2005 WL 1429756 (M.D. Ga. June 13, 2005) * | C.A. | Burnes | Yes |
| 2005 | DC | Davis v. Valley Hosp. Servs., LLC. | 372 F. Supp. 2d 641 (M.D. Ga. 2005) * | C.N.A. | Barger | Yes |
| 2005 | DC | DePaola v. Nissan Hosp. Am., Inc. | No. Civ.A. 1:04CV267-W, 2005 WL 2122265 (M.D. Ala. Jan. 28, 2005) | C.N.A. | Burnes | Yes |
| 2005 | DC | Gipson v. Cross Country Bank | 354 F. Supp. 2d 1278 (M.D. Ala. 2005) | C.N.A | Burnes | No |
| 2005 | DC | Killebrew v. CSX Transp., Inc. | Nos. Civ.A. 203CV0943D, Civ.A. 203CV1284D, Civ.A. 204CV960D, 2005 WL 1705636 (M.D. Ala. July 19, 2005) | C.N.A. | Burnes/Barger | Yes |
| 2005 | DC | Spann v. DynCorp. Tech. Servs., LLC | 403 F. Supp. 2d 1082 (M.D. Ala. 2005) | C.N.A | Burnes | Yes |
| 2005 | DC | Strauss v. Rent-A-Center, Inc. | No. 6:04-cv-1133ORL22KRS, 2005 WL 2647893 (M.D. Fla. Oct. 17, 2005) | C.A. | Burnes/Barger | Yes |
| 2005 | Bk | In re Farmer | 324 B.R. 918 (Bankr. M.D. Ga. 2005) | C.N.A. | Burnes | Yes |
| 2005 | Bk | In re Heidkamp | 334 B.R. 713 (Bankr. M.D. Fla. 2005) | C.N.A. | Burnes | Yes |
| 2005 | Bk | In re Phelps | 329 B.R. 904 (Bankr. M.D. Ga. 2005) | C.N.A. | Burnes | Yes |
| 2005 | Bk | In re Transit Grp., Inc | 332 B.R. 45 (Bankr. M.D. Fla. 2005) | C.N.A. | Burnes/Barger | Yes |
| 2004 | 11th Cir. | Parker v. Wendy's Intern., Inc. | 365 F.3d 1268 (11th Cir. 2004) | C.N.A. | Burnes/Barger | Yes |
| 2004 | Bk | In re Baldwin | 307 B.R. 251 (Bankr. M.D. Ala. 2004) | C.N.A. | Burnes/Barger | Yes |
| 2004 | Bk | In re Moore | 312 B.R. 902 (Bankr. N.D. Ala. 2004) | C.N.A. | Burnes/Barger | Yes |
| 2004 | Bk | In re Rochester | 308 B.R. 596 (Bankr. N.D. Ala. 2004) | C.N.A. | Burnes/Barger | Yes |
| 2004 | Bk | In re Williams | 310 B.R. 442 (Bankr. N.D. Ala. 2004) | C.A. | Burnes/Barger | Yes |
| 2003 | 11th Cir. | Barger v. City of Cartersville, Ga. | 348 F.3d 1289 (11th Cir. 2003) | C.A. (majority); C.N.A. (dissent) | Burnes | Yes |
| 2003 | 11th Cir. | De Leon v. Comcar Inds., Inc. | 321 F.3d 1289 (11th Cir. 2003) | C.A. | Burnes | Yes |
| 2003 | 11th Cir. | In re Cox | 338 F.3d 1238 (11th Cir. 2003) | C.A. | Burnes | Yes |
| 2003 | DC | Kroll v. Home Depot U.S.A., Inc. | No. Civ.A. CV202-113, 2003 WL 23332905 (S.D. Ga. Aug. 20, 2003) | C.A. | Burnes | Yes |
| 2003 | DC | Walton v. Life Ins. Co. of Ga. | No. Civ.A. 1:02-CV3489TWT, 2003 WL 22053116 (N.D. Ga. Aug. 22, 2003) | C.A. | Burnes | Yes |
| 2003 | Bk | In re Bercu | 293 B.R. 806 (Bankr. M.D. Fla. 2003) | C.N.A. | Burnes | Yes |
| 2003 | Bk | In re Galbreath | No. 99-60517, 2003 WL 26119288 (Bankr. S.D. Ga. Aug. 27, 2003) | C.N.A. | Burnes | Yes |
| 2003 | Bk | In re Haskett | 297 B.R. 637 (Bankr. N.D. Ala. 2003) | C.N.A. | Burnes/Barger | Yes |
| 2003 | Bk | In re Henderson | 297 B.R. 875 (Bankr. M.D. Fla. 2003) | C.N.A. | Burnes | Yes |
| 2003 | Bk | In re Huggins | 305 B.R. 63 (Bankr. N.D. Ala. 2003) | C.A. | Barger | Yes |
| 2002 | DC | Gonzalez v. M/V DESTINY | No. 00-1690-CIV, 2002 WL 31962167 (S.D. Fla. Sept. 30, 2002) | C.A. | Burnes | No |
| 2002 | DC | Lane v. Health Options, Inc. | 221 F. Supp. 2d 1301 (S.D. Fla. 2002) | C.N.A. | Burnes | Yes |
| 2002 | DC | Walker v. Delta Air Lines, Inc. | No. Civ.A. 100CV0558-TWT, 2002 WL 32136202 (N.D. Ga. 2002) | C.A. | Burnes | Yes |
| 2002 | Bk | In re Barger | 279 B.R. 900 (Bankr. N.D. Ga. 2002) | C.N.A. | Burnes | Yes |
| 2002 | Bk | In re Old Naples Secs., Inc. | 311 B.R. 607 (Bankr. M.D. Fla. 2002) | C.A. | Burnes | Yes |
| 2002 | Bk | In re Peagler | 307 B.R. 270 (Bankr. M.D. Ala. 2002) | C.N.A. | Burnes | Yes |